MEAGHAN VERGOW (*admitted pro hac vice*)
mvergow@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone:    (202) 383-5300
Facsimile:    (202) 383-5414

MOLLY LENS (S.B. #283867)
mlens@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone:    (310) 553-6700
Facsimile:    (310) 246-6779

SUSANNAH K. HOWARD (S.B.#291326)
showard@omm.com
KRISTIN MACDONNELL (S.B. #307124)
kmacdonnell@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

Attorneys for Defendants
Aetna Inc. and Aetna Life Insurance
Company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MARA BERTON, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AETNA INC. and AETNA LIFE INSURANCE COMPANY, <br><br> Defendants. | Case No. 4:23-cv-01849-HSG <br><br> **DEFENDANTS AETNA INC. AND AETNA LIFE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing Date**: October 12, 2023 <br> **Time**: 2:00 p.m. <br> **Location**: Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, CA 94612 Courtroom 2, 4th Floor |

## <u>NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT</u>

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on October 12, 2023 at 2:00 p.m. or as soon thereafter as the matter may be heard, Defendants Aetna Inc. and Aetna Life Insurance Company (together, "Aetna" or "Defendants"), by and through their counsel, will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) for an order dismissing Plaintiff Mara Berton's Complaint for Damages and Injunctive Relief with prejudice.  Defendants' Motion is made on several independent bases.

First, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff does not plausibly allege intentional discrimination on the basis of sex or sexual orientation.  Indeed, Plaintiff fails to plausibly allege that the denial of Plaintiff's requested treatment was discriminatory at all, since the coverage terms Plaintiff challenges apply in equal fashion to individuals outside the claimed protected class.

Second, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join her health plan's sponsor and plan administrator as a necessary party.

Third, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) because the Employee Retirement Income Security Act of 1974 ("ERISA") provides the exclusive remedy for individuals who, as here, assert a claim for improper denial of benefits under an ERISA-governed health plan.

Fourth and finally, Aetna Inc. is not a proper party to this lawsuit because it does not provide health insurance and had no involvement with administering the benefit plan at issue in this litigation.  It should be dismissed.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities; the Declarations of Craig Allocca, Robert Goldbeck, and Donna Lynch; any oral argument the Court may permit; and all pleadings and papers on file with the Court in this action and on such other matters as may be presented to the Court at or before the hearing of this Motion.

Respectfully submitted,

Dated:  July 24, 2023                    **O'MELVENY & MYERS LLP**

                                                   */s/ Susannah K. Howard*
                                                   Susannah K. Howard
                                                   Two Embarcadero Center, 28th Floor
                                                   San Francisco, CA 94111
                                                   Telephone:  (415) 984-8700
                                                   Facsimile:  (415) 984-8701
                                                   E-mail: showard@omm.com

                                                   *Attorneys for Defendant Aetna Inc. and Aetna Life*
                                                   *Insurance Company*

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

      A.    The Parties ................................................................................................ 3

      B.    The Encore Plan and Relationship Between Encore and Aetna ................ 3

      C.    Infertility Benefits Under the Plan ........................................................... 4

      D.    Plaintiff's Request for IUI Coverage ....................................................... 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ........................................................................................................................... 9

    I.    PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION ON THE BASIS OF SEX UNDER SECTION 1557. ................................................ 9

    II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(7) BECAUSE PLAINTIFF EXCLUDES AN INDISPENSABLE PARTY FROM HER NATIONWIDE CLASS ACTION. ......................................................... 13

      A.    Encore Is a Necessary Party.................................................................... 14

      B.    Encore Cannot Be Feasibly Joined. ........................................................ 15

      C.    Encore Is An Indispensable Party. .......................................................... 16

    III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1557 BECAUSE ERISA PROVIDES THE EXCLUSIVE REMEDY FOR THE RELIEF PLAINTIFF SEEKS. ................................................................................. 19

    IV.    AETNA INC. SHOULD BE DISMISSED BECAUSE IT IS A HOLDING COMPANY THAT DOES NOT PROVIDE HEALTH INSURANCE. ............... 20

CONCLUSION ........................................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A10 Networks, Inc. v. Brocade Commc'ns Sys., Inc.*,
2012 WL 1932878 (N.D. Cal. May 29, 2012) .......................................................... 17

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .................................................................................................. 19

*AirWair Int'l Ltd. v. Schultz*,
73 F. Supp. 3d 1225 (N.D. Cal. 2014) ................................................................ 15, 16

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal. 2015) ...................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 7, 8, 10

*Austin v. Univ. of Oregon*,
925 F.3d 1133 (9th Cir. 2019) ............................................................................... 8, 9

*Baird v. Blackrock Institutional Tr. Co., N.A.*,
2020 WL 7389772 (N.D. Cal. Feb. 11, 2020) .......................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 7, 8, 10

*Biggins v. Wells Fargo & Co.*,
266 F.R.D. 399 (N.D. Cal. 2009) .............................................................................. 21

*Briscoe v. Health Care Serv. Corp.*,
281 F. Supp. 3d 725 (N.D. Ill. 2017) .................................................................. 11, 12

*Camacho v. Major League Baseball*,
297 F.R.D. 457 (S.D. Cal. 2013) ......................................................................... 14, 16

*Condry v. UnitedHealth Grp., Inc.*,
2018 WL 3203046 (N.D. Cal. June 27, 2018), *vacated in part on other
grounds*, 2021 WL 4225536 (9th Cir. Sep. 16, 2021) .............................................. 11

*Cuevas v. Joint Benefit Tr.*,
2013 WL 3578496 (N.D. Cal. July 12, 2013) ........................................................... 18

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
142 S. Ct. 1562 (2022) .............................................................................................. 11

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) .................................................................................................... 15

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
526 U.S. 629 (1999) .................................................................................................. 10

*Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) .................................................................................... 14

*Doe One v. CVS Pharmacy, Inc.*,
348 F. Supp. 3d 967 (N.D. Cal. 2018), *vacated in part on other grounds*, 982
F.3d at 1204, *cert. dismissed*, 142 S. Ct. 480 ........................................................... 8

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020), *cert. dismissed*, 142 S. Ct. 480 (2021) .................................. 8

*Doe v. Regents of Univ. of Cal.*,
    2017 WL 4618591 (C.D. Cal. 2017) *rev'd on other grounds*, 891 F.3d 1147
    (9th Cir. 2018) .......................................................................................................................... 8

*E.E.O.C. v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ........................................................................................... 15, 17

*Esonwune v. Regents of Univ. of Cal.*,
    2017 WL 4025209 (N.D. Cal. Sept. 13, 2017) ................................................................... 8, 10

*FMC Corp. v. Holliday*,
    498 U.S. 52 (1990) .................................................................................................................. 15

*Franklin v. Gwinnett Cty. Pub. Schs.*,
    503 U.S. 60 (1992) .................................................................................................................. 11

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ................................................................................................................ 10

*Goidel v. Aetna Life Insurance Company*,
    No. 1:21-cv-07619 (S.D.N.Y. filed Sept. 13, 2021) ............................................................... 12

*Hammons v. Wells Fargo Bank, N.A.*,
    2015 WL 9258092 (N.D. Cal. Dec. 18, 2015) ....................................................................... 18

*In re Lowenschuss*,
    171 F.3d 673 (9th Cir. 1999) ................................................................................................... 17

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) .................................................................................................................. 8

*Kermanshah v. Kermanshah*,
    2010 WL 1904135 (S.D.N.Y. May 11, 2010) ......................................................................... 17

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..................................................................................................... 3

*Knuttel v. Omaze, Inc.*,
    572 F. Supp. 3d 866 (N.D. Cal. 2021) .................................................................................... 16

*Lea v. Republic Airlines, Inc.*,
    903 F.2d 624 (9th Cir. 1990) ................................................................................................... 19

*Lomayaktewa v. Hathaway*,
    520 F.2d 1324 (9th Cir. 1975) ................................................................................................. 17

*Lopez v. Regents of Univ. of Cal.*,
    5 F. Supp. 3d 1106 (N.D. Cal. 2013) ................................................................................. 10, 13

*Massey v. Biola Univ., Inc.*,
    2020 WL 5898804 (C.D. Cal. Aug. 21, 2020) ..................................................................... 8, 10

*McShan v. Sherrill*,
    283 F.2d 462 (9th Cir. 1960) ..................................................................................................... 3

## <u>TABLE OF AUTHORITIES</u>
(Continued)

**Page(s)**

*Oona R.-S. by Kate S. v. Santa Rosa City Sch.*,
   890 F. Supp. 1452 (N.D. Cal. 1995) ................................................................................. 8, 9

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ............................................................................................................... 19

*Polonczyk v. Anthem BlueCross and BlueShield*,
   586 F. Supp. 3d 648 (E.D. Ky. 2022) ................................................................................ 12

*Potter v. Chevron Prods. Co.*,
   2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ...................................................................... 3

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
   672 F.3d 1176 (9th Cir. 2012) ..................................................................................... passim

*Scott v. St. Louis Univ. Hosp.*,
   600 F. Supp. 3d 956 (E.D. Mo. 2022) ............................................................................... 20

*Sypher v. Aetna Insurance Co.*,
   2014 WL 1230028 (E.D. Mich. Mar. 25, 2014) ........................................................... 18, 19

*Takeda v. Northwestern National Life Insurance Co.*,
   765 F. 2d 815 (9th Cir. 1985) ............................................................................................ 18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................. 3

*Toomey v. Arizona*,
   2019 WL 7172144 (D. Ariz. Dec. 23, 2019) ...................................................................... 20

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
   546 F.3d 620 (9th Cir. 2008) ............................................................................................. 17

*Weinreb v. Xerox Business Services, LLC Health and Welfare Plan*,
   323 F. Supp. 3d 501 (S.D.N.Y. 2018) ............................................................................... 12

*Weiss v. Perez*,
   602 F. Supp. 3d 1279 (N.D. Cal. 2022) ............................................................................. 18

*Whitaker v. LL S. S.F., L.P.*,
   2021 WL 2291848 (N.D. Cal. June 4, 2021) ....................................................................... 3

*White v. Univ. of Cal.*,
   2012 WL 12335354 (N.D. Cal. Oct. 9, 2012) .................................................................... 17

*Williby v. Aetna Life Ins. Co.*,
   867 F.3d 1129 (9th Cir. 2017) ........................................................................................... 15

*Zurich Am. Ins. Co. v. Elecs. For Imaging, Inc.*,
   2009 WL 2252098 (N.D. Cal. July 28, 2009) ........................................................... 9, 14, 19

**Statutes**

29 U.S.C. § 1002(16)(a) ............................................................................................................ 15

29 U.S.C. § 1002(16)(b) ............................................................................................................ 15

29 U.S.C. § 1132(a)(1)(B) ......................................................................................................... 19

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

**Other Authorities**

*Clinical Policy Bulletin No. 0327*,
    Aetna (effective May 20, 1999),
    https://www.aetna.com/cpb/medical/data/300_399/0327.html....................................... 5

*Clinical Policy Bulletins*,
    Aetna, https://www.aetna.com/health-care-professionals/clinical-policy-
    bulletins.html............................................................................................................. 5

*Infertility Resources*,
    Am. Soc'y for Reproductive Med., https://www.reproductivefacts.org/browse-
    all-topics/infertility-topic/ (last accessed June 22, 2023)........................................... 5

*Infertility*,
    World Health Org. (Apr. 3, 2023), https://www.who.int/news-room/fact-
    sheets/detail/infertility............................................................................................. 5

*Treating Infertility Frequently Asked Questions*,
    Am. Coll. Of Obstetricians and Gynecologists (2023),
    https://www.acog.org/womens-health/faqs/treating-infertility ................................... 5

**Rules**

Fed. R. Civ. P. 19(a)(1)(A)-(B)........................................................................................ 15

Fed. R. Civ. P. 19(b) ...................................................................................................... 17

Fed. R. Civ. P. 19(b)(1)-(2)............................................................................................ 17

1

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### PRELIMINARY STATEMENT

3        Defendant Aetna Life Insurance Company ("Aetna") serves as a claims administrator for

4    employee health benefit plans that offer benefits of the plan sponsor's choosing.  The sponsor of

5    Plaintiff's health plan (the "Plan") elected to include a benefit to treat medical infertility through

6    intrauterine insemination ("IUI").  At the time Plaintiff was attempting to conceive, the Plan

7    required all members seeking the benefit to confirm a diagnosis of medical infertility by showing

8    that they unsuccessfully tried to conceive for a specific, age-related period of time through

9    egg/sperm contact.  Plaintiff is in a same-sex relationship and sought coverage for donor

10   insemination through IUI without first establishing that she met the Plan's medical necessity

11   criteria for infertility treatments.  Her benefit claim was denied as a result.  Plaintiff asserts that

12   her Plan's "requirement" that she establish her medical infertility by paying out of pocket for

13   multiple rounds of IUI violates Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a)

14   ("Section 1557"), by imposing on same-sex couples costs that opposite-sex couples may avoid by

15   attempting to conceive through heterosexual sex.  Plaintiff's claim fails as a matter of law.

16       First, the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff does not

17   plausibly allege a violation of Section 1557's antidiscrimination protections.  Section 1557

18   follows standards developed under Title IX of the Education Amendments of 1972, 20 U.S.C. §

19   1681 *et seq.* ("Title IX").  To survive a motion to dismiss, Plaintiff must therefore plausibly allege

20   intentional discrimination; she cannot proceed on a theory that a facially neutral policy has a

21   disparate impact on a protected group.  But the Plan term Plaintiff challenges was not

22   discriminatory at all: The sponsor of Plaintiff's Plan elected to offer a benefit for the treatment of

23   ***medical*** infertility, and the Plan's definition of medical infertility applied to all members,

24   regardless of their relationship status or their sexual orientation.  Women who were unable to

25   attempt conception through heterosexual sex for ***any*** reason would, like Plaintiff, have had to

26   establish medical infertility through unsuccessful insemination attempts before qualifying for this

27   benefit.  The Plan did not deny Plaintiff this benefit because she is in a same-sex relationship, but

28

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

rather because she did not meet the Plan's definition of medical infertility. And if that facially neutral policy adversely affected Plaintiff, the Complaint does not plausibly allege that the adverse effect was an intentional effort to discriminate against one protected group. While the Complaint liberally uses the term "intentional discrimination," Plaintiff does not include any allegations of *fact* permitting the inference that the Plan intentionally discriminated against women in same-sex relationships, nor does she plausibly allege that her Plan, in any way, treated them differently from heterosexual women who were not in a position to achieve sperm-egg contact through heterosexual intercourse.

Second, Plaintiff has failed to sue an entity that is indispensable to her claim of intentional discrimination: the Plan's sponsor and administrator, Plaintiff's wife's employer, which chose this benefit and oversaw the Plan itself. The Plan sponsor is not simply a necessary party—it is contractually the party responsible for the benefit design decisions that Plaintiff claims effected impermissible discrimination, and its plan benefit design cannot be condemned or altered without prejudice to the Plan sponsor. Plaintiff has not joined that necessary party, and could never join the innumerable other health plan sponsors (with their myriad variations in plan design) implicated by her overbroad class definitions. The Complaint should therefore be dismissed pursuant to Rule 12(b)(7).

Third, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) because the Employee Retirement Income Security Act of 1974 ("ERISA") provides the exclusive remedy for Plan members who assert a claim for improper denial of benefit payments under the Plan. To the extent that Plaintiff contends her Plan should be construed to cover IUI treatments irrespective of whether the member had been diagnosed with medical infertility, that claim must be asserted through an ERISA claim for benefits.

Fourth and finally, Aetna Inc. is not a proper party to this lawsuit and should be dismissed. Aetna Inc. is a holding company that has no insurance operations or products, is not licensed to sell insurance, and had no involvement with or responsibility for administering Plaintiff's benefit Plan. Plaintiff's Complaint makes no independent allegations against Aetna Inc. and fails to state

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1    a claim against it pursuant to Rule 12(b)(6).

2          For all these reasons, and as explained in detail below, Aetna respectfully requests that the

3    Court grant this Motion and dismiss Plaintiff's Complaint in its entirety.[1]

4                                   **STATEMENT OF FACTS**

5    **A.      The Parties**

6          Plaintiff is a 32-year-old woman in a same-sex relationship.  Compl. ¶ 13 & n.2.  Since

7    September 2021, Plaintiff has been enrolled in an employee health benefit plan sponsored by her

8    wife's employer, Encore Group USA LLC ("Encore").  *Id.* ¶ 52.  Defendant Aetna Life Insurance

9    Company serves as third-party administrator of the Plan.  Defendant Aetna Inc. is a holding

10   company that has no insurance operations or products and is a parent company of Aetna Life

11   Insurance Company.  Declaration of C. Allocca i/s/o Defendants' Mot. to Dismiss Complaint,

12   dated July 20, 2023 ("Allocca Decl.") ¶ 4; *see also* ECF No. 30.

13   **B.      The Encore Plan and Relationship Between Encore and Aetna[2]**

14         The Encore Plan is a self-insured plan governed by ERISA.  Compl. ¶ 52.  Pursuant to the

15   Master Services Agreement between Encore and Aetna Life Insurance Company, Encore is the

16   Plan administrator and Plan fiduciary under ERISA.  Ex. A to the Declaration of Robert Goldbeck

17   i/s/o Defendants' Mot. to Dismiss, dated July 24, 2023 ("Goldbeck Decl."), Master Services

18   _____

19   [1] Aetna recognizes that not all women have uteruses.  For brevity and clarity, Aetna uses the term
     here as a proxy for individuals who are biologically capable of bearing children.

20   [2] The Court may consider the documents incorporated into the Complaint in connection with
     Aetna's motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts.,*

21   *Ltd.*, 551 U.S. 308, 322 (2007); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th
     Cir. 2018) (recognizing incorporation-by-reference doctrine); *Whitaker v. LL S. S.F., L.P.*, 2021

22   WL 2291848, at *3 (N.D. Cal. June 4, 2021) (on motion to dismiss, court may consider
     documents that "plaintiff refers extensively to" or that "form[] the basis of plaintiff's claims").

23   Here, that includes the Master Services Agreement, the Summary Plan Description, the relevant
     Clinical Policy Bulletin, and benefit claim discussed in the Complaint.  *See* Compl. ¶¶ 28, 30

24   (citing language in infertility-related Clinical Policy Bulletin); *id.* ¶ 52 (discussing Plaintiff's
     enrollment in the "Aetna-administered Encore Group Policy"); *id.* ¶¶ 57-63 (discussing Plaintiff's

25   request for preauthorization of IUI cycles and subsequent denial and appeals).  The Court may
     also consider extrinsic evidence in evaluating a Rule 12(b)(7) motion to dismiss.  *See Potter v.*

26   *Chevron Prods. Co.*, 2018 WL 4053448, at *4 (N.D. Cal. Aug. 24, 2018) ("[T]he court may
     consider evidence outside of the pleadings" on a Rule 12(b)(7) motion to dismiss) (citing *McShan*

27   *v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960)).

28

     DEFENDANTS' NOTICE OF MOTION AND
     MOTION TO DISMISS COMPLAINT
     CASE NO. 4:23-CV-01849-HSG

Agreement (referred to herein as the "MSA") Ex. A Art. 3.01; *see also id.* Art. 1 (defining "Plan Administrator" as Encore and stating "[t]his term will never refer to Aetna under this Agreement"; defining "Plan Fiduciary" as Encore and stating that Encore "bears ultimate responsibility and liability for the health plan under ERISA . . ."). Encore is also the Plan sponsor, and the MSA specifically provides that in no event shall Aetna be considered the named fiduciary of the Plan or its sponsor. *Id.* Art. 3.02. The MSA further provides that:

> ***It is understood and agreed that [Encore], as Plan Administrator, retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder***, and that Aetna is empowered to act on behalf of [Encore] in connection with the Plan only to the extent expressly stated in this Agreement or as agreed to in writing by Aetna and [Encore].

*Id.* Art. 3.01 (emphasis added). In brief, Encore has sole authority to set the terms of the Plan and determine who is eligible for benefits under it.

Aetna Life Insurance Company provides third party claims administration services to the Plan. *Id.* Art. 1; *Id.* Art. 3.02. Pursuant to the MSA, Encore has delegated discretionary authority to Aetna "to determine initial entitlement to benefits under the applicable Plan documents for each claim received" and to "review[] denied claims under the Plan." *Id.* Art. 3.02. Aetna is responsible for "reviewing denied claims under the Plan." *Id.* In discharging these services, Aetna is required to act "in a manner consistent with the documents and instruments governing the Plan." *Id.*

## C.    Infertility Benefits Under the Plan

Because Plaintiff sought benefits in February 2022, the plan document that governed the determination of her benefit claim was the Encore Plan Summary Plan Description ("SPD") effective January 2022.[3]

The Plan generally provides coverage for "medically necessary" services, *see* SPD at 34, and specifically provides coverage for certain infertility treatments: (1) "Ovulation induction cycle(s) while on injectable medication to stimulate the ovaries"; and (2)  "Artificial

---

[3] This version of the Plan updates an SPD adopted in 2019; plan sponsors may periodically update the benefits, including infertility benefits, they opt to include in their plans. *See* Ex. B to the Goldbeck Decl. (referred to herein as the "SPD") at 14.

insemination, which includes intrauterine (IUI)/intracervical (ICI) insemination." *Id.* at 10.  The Plan excludes from coverage several other types of infertility treatment, including in vitro fertilization (IVF), costs associated with gestational carrier or surrogacy arrangements, and the purchase of donor embryos, donor eggs, or donor sperm.  *Id.* at 11.

A Plan member is eligible for covered infertility services when the member or their partner has been medically diagnosed with the disease of infertility.  *Id.*  Under the Plan's definition of "infertility," any individual may demonstrate medical infertility by attempting conception for the requisite period through egg/sperm contact, whether through unprotected sexual intercourse or through donor insemination, and (for females) by meeting certain hormonal testing criteria defined in the Plan.[4]  *Id.*[5]

In its role as claims administrator of self-insured benefits plans like the Encore Plan, Aetna may develop "clinical policy bulletins" or "CPBs" that aid physician reviewers in the application of plan terms to individual benefit claims.  SPD at 36; *Clinical Policy Bulletins*, Aetna, https://www.aetna.com/health-care-professionals/clinical-policy-bulletins.html.  One such bulletin aids reviewers in the application of the definition of medical infertility employed in certain Aetna-administered plans.  *Clinical Policy Bulletin No. 0327*, Aetna (effective May 20, 1999), https://www.aetna.com/cpb/medical/data/300_399/0327.html.  The bulletin in effect at the time Plaintiff submitted her claim for benefits in 2022 (Clinical Policy Bulletin 0327, or "CPB 327") tracked the definition of infertility in the Encore Plan, providing as follows:

[A] member is considered infertile if he or she is unable to conceive or produce

---

[4] The period of attempted conception through egg/sperm contact varies by age: 12 months for females under age 35, 6 months for females above it.  SPD at 57-58.

[5] This definition comports with definitions of infertility established by professional medical organizations.  The American College of Obstetricians and Gynecologists (ACOG), the World Health Organization (WHO), and the American Society for Reproductive Medicine (ASRM) define infertility as the failure to achieve a pregnancy after 1 year (or 6 months for individuals over the age of 35) of regular unprotected sexual intercourse.  *See Treating Infertility Frequently Asked Questions*, Am. Coll. Of Obstetricians and Gynecologists (2023), https://www.acog.org/womens-health/faqs/treating-infertility; *Infertility*, World Health Org. (Apr. 3, 2023), https://www.who.int/news-room/fact-sheets/detail/infertility; *Infertility Resources*, Am. Soc'y for Reproductive Med., https://www.reproductivefacts.org/browse-all-topics/infertility-topic/ (last accessed June 22, 2023).

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

conception after 1 year of frequent, unprotected heterosexual sexual intercourse, or 6 months of frequent, unprotected heterosexual sexual intercourse if the female partner is 35 years of age or older.  Alternately, a woman without a male partner may be considered infertile if she is unable to conceive or produce conception after at least 12 cycles of donor insemination (6 cycles for women 35 years of age or older).

Compl. ¶ 28.[6]  Plaintiff refers to this CPB as Aetna's "Infertility Policy," *id.* ¶ 25; the CPB implements the Plan terms outlined above.  Under the Plan and the implementing CPB, egg-sperm contact can be achieved by frequent sexual intercourse or through monthly cycles of timed sperm insemination (intrauterine, intracervical, or intravaginal).  This definition applies to all individuals regardless of sexual orientation or the presence/availability of a reproductive partner.

### D.    Plaintiff's Request for IUI Coverage

In January 2022, Plaintiff and her wife decided to try to have children by having Plaintiff, who was 30 years old at the time, become pregnant using IUI with donor sperm.  Compl. ¶ 57.  In February 2022, Plaintiff's fertility clinic submitted a claim to Aetna for preauthorization for up to six IUI cycles.  *Id.* ¶ 58.  Plaintiff does not allege that she had been diagnosed with medical infertility at the time she requested this benefit.  On February 21, 2022, Aetna informed Plaintiff via letter that the request for IUI coverage was denied because she did not meet the Plan definition of infertility.  Ex. A to the Declaration of Donna Lynch i/s/o Defendants.' Mot. to Dismiss, dated July 24, 2023 ("Lynch Decl.").  The letter explained that the denial "was based on the terms of [Plaintiff's] benefit plan document" and referred Plaintiff to "the description of infertility benefits in the section of the plan document that talks about what the plan covers."  *Id.*

Plaintiff appealed that benefit determination in June 2022.  Compl. ¶ 61; Ex. B to the Lynch Decl.  In the appeal, Plaintiff claimed the definition of "infertility" in the Encore Plan and in the applicable CPB discriminated against her.  Dr. Andrea Jones, a medical director at Aetna and board-certified OB/GYN, reviewed Plaintiff's file and determined the coverage denial should be upheld because Plaintiff did not meet the Plan's definition of medical "infertility."  Ex. F to the

---

[6] In January 2023, Aetna revised the pertinent CPB to provide as follows: "[A] person is considered infertile if unable to conceive or produce conception after 1 year of egg-sperm contact when the female attempting conception is under 35 years of age, or after 6 months [of] egg-sperm contact when the female attempting conception is 35 years of age or older."  Compl. ¶ 30.

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

Lynch Decl. at 4-5.  On June 30, 2022, Aetna issued a letter to Plaintiff explaining its decision to uphold the denial of coverage based on the Plan's definition of infertility and because the requested IUI cycles did not meet the definition of "medical necessity" under the Plan SPD.  *Id.* Ex. C.

In August 2022, Plaintiff filed a Level-2 appeal of the benefits determination.  Compl. ¶ 63; Ex. D to the Lynch Decl.  In September 2022, Dr. Lara Fisher, a medical director at Aetna and board-certified OB/GYN, reviewed Plaintiff's file and determined the coverage denial should be upheld because Plaintiff had not been diagnosed with medical infertility and did not meet the definition of medical "infertility" set forth in the Plan.  Ex. E to the Lynch Decl.; Ex. F to the Lynch Decl. at 7.

Plaintiff filed her Complaint in this Court on April 17, 2023.  The Complaint alleges a single cause of action against Aetna Inc. and Aetna Life Insurance Company for discrimination in healthcare on the basis of sex under Section 1557.  Compl. ¶¶ 95-102.  Plaintiff seeks to bring this claim on behalf of two putative classes:

1. A "National Injunctive Relief Class" under Federal Rules of Civil Procedure 23(b)(2), defined as "All LGBTQ individuals with uteruses who are or will be Members of an Aetna health plan in the United States that includes fertility benefits and incorporates the Infertility Policy."[7]

2. A "California Damages Class" under Federal Rules of Civil Procedure 23(b)(3), defined as "All LGBTQ individuals with uteruses who, at any time in the last four years, are or were Members of an Aetna health plan in California that included fertility benefits and incorporated Aetna's Infertility Policy, and who incurred out-of-pocket expenses and/or other compensable damages as a result of Aetna's Infertility Policy."

*Id.* ¶¶ 76-78.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[7] Plaintiff defines the "Infertility Policy" to mean Aetna's description of "infertility" in Clinical Policy Bulletin No. 0327.  Compl. ¶ 25.

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1   (internal quotations and citations omitted).  To survive a motion to dismiss, a plaintiff must allege

2   sufficient facts to make her claim plausible.  *Twombly*, 550 U.S. at 555, 570 (complaint must

3   offer "more than labels and conclusions, and a formulaic recitation of the elements"); *Iqbal*, 556

4   U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows

5   the court to draw the reasonable inference that the defendant is liable for the misconduct

6   alleged.").

7           Section 1557 incorporates and follows the legal standards developed under Title IX for

8   claims alleging discrimination on the basis of sex.  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204,

9   1210 (9th Cir. 2020), *cert. dismissed*, 142 S. Ct. 480 (2021).  Under those standards, to state a

10  claim for discrimination on the basis of sex under Section 1557, Plaintiff must adequately allege

11  that the discrimination at issue was intentional—the statutory prohibition does not reach activities

12  that merely have a disparate impact on a protected group.  *Jackson v. Birmingham Bd. of Educ.*,

13  544 U.S. 167, 173 (2005) (explaining that Title IX prohibits "intentional sex discrimination," and

14  discussing cases elaborating that standard).[8]  Conclusory allegations of intentional

15  discrimination—such as merely labeling discrimination as "intentional"—are insufficient to

16  survive a motion to dismiss.  *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) ("A

17  recitation of facts without plausible connection to gender is not cured by labels and conclusory

18  statements about sex discrimination").[9]  To adequately plead intentional discrimination, a party

19  must assert "nonconclusory allegations" that "plausibly link[]" the alleged discrimination to the

20  ───────────────

21  [8] *See also Oona R.-S. by Kate S. v. Santa Rosa City Sch.*, 890 F. Supp. 1452, 1466 & n.8 (N.D. Cal. 1995) (recognizing that "intentional discrimination is an element of a Title IX claim"

22  alleging discriminatory treatment); *Doe v. Regents of Univ. of Cal.*, 2017 WL 4618591, at *14 (C.D. Cal. 2017) ("A claim under Title IX cannot be premised on the disparate impact a policy

23  has with respect to a protected group"), *rev'd on other grounds*, 891 F.3d 1147 (9th Cir. 2018).
    [9] *See also Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 989 (N.D. Cal. 2018) (plaintiffs'

24  allegations that defendants' "intentionally discriminatory actions" denied them full and equal enjoyment of certain health benefits insufficient to survive motion to dismiss), *vacated in part on*

25  *other grounds*, 982 F.3d at 1204, *cert. dismissed*, 142 S. Ct. 480; *Esonwune v. Regents of Univ. of Cal.*, 2017 WL 4025209, at *5-6 (N.D. Cal. Sept. 13, 2017) (allegations that university treated

26  plaintiff differently in school disciplinary proceedings and exhibited "deliberate indifference" to allegedly discriminatory impact insufficient to survive motion to dismiss); *Massey v. Biola Univ.,*

27  *Inc.*, 2020 WL 5898804, at *6 (C.D. Cal. Aug. 21, 2020) (dismissing Title IX claim for failure to assert non-conclusory allegations of discrimination).

28                                                           DEFENDANTS' NOTICE OF MOTION AND
                                                             MOTION TO DISMISS COMPLAINT
                                                             CASE NO. 4:23-CV-01849-HSG

1   protected characteristic.  *Austin*, 925 F.3d at 1138.

2         Rule 12(b)(7) requires dismissal for "failure to join a party under Rule 19."  Analyzing a

3   Rule 12(b)(7) motion involves three successive inquiries: (1) is the absent party necessary (i.e.,

4   required to be joined if feasible) under Rule 19(a); (2) if so, whether it is feasible to order that

5   absent party to be joined; and (3) if joinder is not feasible, whether the case can proceed without

6   the absent party, or whether the absent party is indispensable such that the action must be

7   dismissed.  *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179

8   (9th Cir. 2012); *Zurich Am. Ins. Co. v. Elecs. For Imaging, Inc.*, 2009 WL 2252098, at *4-5 (N.D.

9   Cal. July 28, 2009) (granting Rule 12(b)(7) motion to dismiss for failure to join necessary and

10  indispensable parties).

**ARGUMENT**

**I.    PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION ON THE BASIS OF SEX UNDER SECTION 1557.**

13         Plaintiff's Section 1557 claim fails because Plaintiff has not alleged (and cannot allege)

14  that the Plan term and implementing CPB under which she was denied coverage for IUI violated

15  Section 1557.  Plaintiff does not plausibly allege that the denial of IUI amounted to intentional

16  discrimination.  Indeed, Plaintiff fails to allege that denial was based on her membership in a

17  protected group at all.  As explained in detail below, these critical defects require dismissal.

18         To state a claim of discrimination under Section 1557, Plaintiff must satisfy the pleading

19  standard for intentional discrimination under Title IX.  *Supra* at p.8.  As an initial matter, a Title

20  IX plaintiff must plead, and eventually prove, that the defendant's alleged intentional

21  discrimination was "because of her sex[.]"  *Oona*, 890 F. Supp. at 1466 n.12; *Austin*, 925 F.3d at

22  1138.  Sex discrimination is "intentional" under Title IX when differential treatment is motivated

23  by discriminatory animus toward the protected group, or, in limited, specific circumstances, when

24  a defendant is deliberately indifferent to a third-party's discriminatory conduct.  *See, e.g.*, *Austin*,

25  925 F.3d at 1137-38; *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1120 (N.D. Cal.

26

27

28

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1   2013).[10]  To survive a motion to dismiss, it is not enough for Plaintiff merely to label the alleged

2   discrimination she experienced as "intentional."  *Esonwune*, 2017 WL 4025209, at *5-6; *Massey*,

3   2020 WL 5898804, at *6.  Rather, Plaintiff must allege ***facts*** that plausibly support a theory of

4   intentional discrimination.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

5           Here, Plaintiff cannot point to ***any*** differential treatment "because of" sex or sexual

6   orientation, let alone ***intentional*** mistreatment.  The Plan's definition of infertility treats all

7   persons seeking infertility treatments the same—they all must satisfy the definition of medical

8   infertility, which requires a showing of unsuccessful conception through sperm/egg contact over a

9   period of time.  That term applies irrespective of the relationship, if any, a person is in.  And it is

10  not just women in same-sex relationships who may be unable to attempt sperm/egg contact

11  through heterosexual sex.  Single heterosexual women who wish to become parents on their own;

12  heterosexual couples (including men and women) with conditions which make intercourse

13  physically or medically impossible for the purpose of achieving a pregnancy; and heterosexual

14  individuals (again, men or women) who wish to co-parent in a platonic relationship—under the

15  Plan term in effect at the time Plaintiff sought coverage, all of these individuals would have had

16  to demonstrate medical infertility through means other than attempts at conception through

17  heterosexual intercourse.  Put another way, Plaintiff does not (and cannot) plausibly allege she

18  was ***singled out*** for different treatment, when other individuals—including deployed military

19  personnel, single women, and persons with conditions precluding heterosexual intercourse, as

20  examples—must meet the conditions for coverage the same way.  Under the terms of the Encore

21  Plan, ***any*** woman who pursued IUI treatment without first meeting the medical infertility criteria

22  in the Plan would be denied coverage for infertility treatment, just as Plaintiff was.  Given this

23  entirely neutral policy, Plaintiff cannot plausibly allege that the Plan's definition of "infertility"

24

25  [10] "Deliberate indifference" is not an alternative to intent, but rather a form of intentional
    discrimination that occurs when a federal funding recipient fails to remedy discriminatory
26  conduct of which it has actual notice.  *See, e.g.*, *Davis Next Friend LaShonda D. v. Monroe Cty.
    Bd. of Educ.*, 526 U.S. 629, 642-43 (1999) (explaining that the "deliberate indifference" standard
27  imposes liability for "effectively 'caus[ing]' the discrimination" by another (quoting *Gebser v.
    Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998)).

28

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

imposes a unique burden specifically on women in same-sex relationships, because any person, regardless of sexual orientation, may need to incur costs under some circumstances in order to establish medical infertility.

Plaintiff's contention that this Plan term imposes burdens on women in same-sex relationships is at best a ***disparate impact*** theory of discrimination, which is insufficient to state a claim under Section 1557 or Title IX.  *Condry v. UnitedHealth Grp., Inc.*, 2018 WL 3203046, at *4 (N.D. Cal. June 27, 2018) ("[D]isparate impact claims on the basis of sex are not cognizable under section 1557."), *vacated in part on other grounds*, 2021 WL 4225536 (9th Cir. Sep. 16, 2021); *see also Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 739 (N.D. Ill. 2017) (holding "Plaintiffs cannot proceed with a disparate-impact claim under § 1557, which incorporates Title IX's enforcement mechanism for sex discrimination claims").[11]  And Plaintiff does not plausibly allege that Aetna administered this Plan term out of animus to women in same-sex relationships (or knowing deliberate indifference to the sponsor's selection of the Plan term out of animus).  Plaintiff does not contend that an unsuccessful period of sperm/egg contact is itself an unreasonable means of diagnosing medical infertility.  Nor does she challenge her Plan's exclusion of the cost of donor sperm or other ancillary charges, which are also inherent costs to accomplishing conception through means other than intercourse.  Plaintiff does not challenge the notion that this is a Plan term grounded in conventional medical criteria and that applies equally to all Plan members.  Furthermore, the Complaint alleges no facts permitting the conclusion that the Plan term was adopted in order to single out women who are in same-sex relationships.

In the absence of factual allegations that Aetna administered this Plan term out of animus or in a manner that was knowingly deliberately indifferent to animus, Plaintiff is left to allege that "Aetna has received countless complaints and criticisms of its Infertility Policy, and when

---

[11] Disparate impact (i.e., unintentional) theories of discrimination are not cognizable under Title IX in part because statutes enacted pursuant to the Spending Clause "operate[] based on consent," *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1570 (2022), and a federal funding recipient is incapable of "consenting" to avoid unintentional discrimination.  *See Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 74 (1992) ("The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award.").

accused of discrimination, it has continued to treat Class Members unequally." Compl. ¶ 8. But a policy does not acquire discriminatory animus simply because someone has accused it of being unlawful.[12] A plan term adopted to implement medically appropriate clinical criteria (here, a showing of unsuccessful egg-sperm contact to diagnose medical infertility) **still has that same purpose** even when it is attacked as having a disparate impact. Other courts have rejected this kind of "bootstrapping" in the Section 1557 context, and this Court should too.

For example, in *Polonczyk v. Anthem BlueCross and BlueShield*, 586 F. Supp. 3d 648, 656 (E.D. Ky. 2022), the court dismissed a Section 1557 claim because the plaintiff had not adequately alleged intentional discrimination. As relevant here, the plaintiff attempted to plead intent by claiming that "she repeatedly informed Anthem of the discriminatory consequences that she was suffering as a direct result of Anthem's denials," and that Anthem "completely ignored the discriminatory effects" its decision imposed. *Id.* at 656 (alterations omitted). The court concluded that these allegations were insufficient in the absence of any additional "documents or actions" indicating animus. *Id.* Similarly, in *Weinreb v. Xerox Business Services, LLC Health and Welfare Plan*, 323 F. Supp. 3d 501, 505 (S.D.N.Y. 2018), the court considered a Section 1557 claim challenging the failure to cover off-label fentanyl use to treat a rare disease, Global Diffuse Adenomyosis ("GDA"), that affects only women. The court found the plaintiff's allegations that the health plan's coverage exclusion "discriminates against females who, as opposed to males, can suffer from GDA" and that the exclusion "provides inferior coverage to women than to men" insufficient to state a claim under Section 1557 because they were only "conclusory assertions" that "speak nothing of Defendants' intentions to interpret and apply the guidelines in a discriminatory way." *Id.* at 520-21; *see also Briscoe*, 281 F. Supp. 3d at 737-39 (dismissing Section 1557 sex discrimination claim where plaintiffs alleged that their health plan unlawfully failed to cover lactation counseling services, resulting in "disparate levels of health

---

[12] This is particularly salient here, in that the attorneys bringing the present action were responsible for filing a virtually identical suit in at least one other jurisdiction, *Goidel v. Aetna Life Insurance Company*, No. 1:21-cv-07619 (S.D.N.Y. filed Sept. 13, 2021), which has been accompanied by ongoing media campaigns.

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1    benefits . . . for breastfeeding and lactating women."). These cases follow similar precedents in

2    the Title IX context, where courts have held that allegations a school official was merely notified

3    of potentially discriminatory conduct and failed to take action is insufficient to state a claim. *See,*

4    *e.g., Lopez*, 5 F. Supp. 3d at 1123 (finding plaintiff's allegation that she "telephoned" school

5    official and sent him an email "concerning" allegedly discriminatory incident insufficient to state

6    a claim under Title IX because such allegations "plead no facts which explain the nature or scope

7    of information the U.C. Regents possessed.").

8         The same is true here. While Plaintiff repeats the word "intentional" throughout her

9    Complaint, she offers no factual allegations indicating actual discriminatory animus on Aetna's

10   part. Plaintiff does not allege that Aetna (or the Plan sponsor that actually implemented this Plan

11   term) was motivated by an intent to discriminate against same-sex couples in administering the

12   criterion of a period of unsuccessful egg/sperm contact to diagnose medical infertility. At the end

13   of the day, Plaintiff's complaint is that her Plan limits its benefits to the treatment of medical

14   infertility, and does not include an additional benefit for same-sex couples to receive IUI without

15   a diagnosis of medical infertility. But this generally applicable benefit does not discriminate on

16   any protected ground and is not plausibly alleged to derive from any animus against same-sex

17   couples or deliberate indifference to the Plan sponsor's animus. Simply averring that "others

18   have also complained" does not carry Plaintiff's pleading burden. Plaintiff has therefore not

19   adequately alleged discrimination on the basis of sex or sexual orientation, and her Section 1557

20   claim should be dismissed.

21   **II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(7)**
22   **BECAUSE PLAINTIFF EXCLUDES AN INDISPENSABLE PARTY FROM HER**
     **NATIONWIDE CLASS ACTION.**

23        Plaintiff's Complaint should also be dismissed pursuant to Rule 12(b)(7) because Plaintiff

24   does not and cannot join Encore, who is the self-funded plan sponsor and plan administrator of

25   Plaintiff's Plan and the entity that selected the benefit term now claimed to be discriminatory.

26        Under Rule 12(b)(7), a claim or action must be dismissed where the plaintiff fails to join a

27   necessary party under Rule 19. To determine whether a case may proceed without an absent

28

1    party, the court must analyze: (1) whether the absent party is necessary (i.e., required to be joined

2    if feasible) under Rule 19(a); (2) if so, whether it is feasible to order that absent party to be

3    joined; and (3) if joinder is not feasible, whether the case can proceed without the absent party, or

4    whether the absent party is indispensable such that the action must be dismissed. *Salt River*, 672

5    F.3d at 1179.  Here, that analysis leads straight to the conclusion that Encore is an indispensable

6    party.  Plaintiff is challenging a benefit term that was implemented by Encore.  If she were to

7    demonstrate that she is entitled to the remedies she seeks—payment of costs for medical services

8    and a forward-looking change to the Plan—she could not obtain them without Encore's

9    participation in this case.  And Encore, for its part, would be prejudiced by being excluded from

10   an action that not only could affect the scope of its plan and expose it to monetary liability, but

11   also would impugn its motives in designing its health benefit plan.  But Encore is not subject to

12   jurisdiction in this district, and thus cannot feasibly be joined.  Plaintiff has an available avenue

13   for relief: a suit against Encore in a district in which it may be found.  Plaintiff's Section 1557

14   claim here should be dismissed. *Zurich*, 2009 WL 2252098, at *4-5.

15            **A.      Encore Is a Necessary Party.**

16            The first inquiry under Rule 12(b)(7) is whether a nonparty should be joined under Rule

17   19(a) as a "necessary" party.  A party is necessary if: (1) complete relief cannot be granted in the

18   party's absence; or (2) the court determines the absent party's participation "is necessary to

19   protect its legally cognizable interests or to protect other parties from a substantial risk of

20   incurring multiple or inconsistent obligations because of those interests." *Camacho v. Major*

21   *League Baseball*, 297 F.R.D. 457, 461 (S.D. Cal. 2013) (quoting *Disabled Rts. Action Comm. v.*

22   *Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004)).  Both criteria are present here.

23   Encore is a necessary party to Plaintiff's Section 1557 claim because the relief Plaintiff seeks—a

24   declaratory judgment reforming the Encore Plan and requiring it to pay additional benefits, *see*

25   *generally* Compl., Prayer for Relief—should not and cannot be achieved in its absence.

26            Aetna is the Plan's third-party administrator.  But the Encore Plan, set by Encore,

27   determines the health benefits to which Plaintiff is entitled.  Under its agreement with Aetna,

28

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1   Encore "[r]etains complete authority and responsibility for the Plan, its operation, and the benefits

2   provided thereunder."  MSA Art. 3.01.  While Plaintiff attributes her denial of benefits to Aetna's

3   CPB, Compl. ¶ 25, it is the Plan document (not the CPB) that governs the Plan terms selected by

4   the Plan sponsor.  *See* SPD at 36.  Aetna has no power to change the Plan definition of

5   "infertility" that led to Plaintiff's benefits claim being denied.  Moreover, the Encore Plan is self-

6   funded, meaning it covers the cost of benefit claims itself and simply relies on its third-party

7   administrator, Aetna, to process those claims and payments.[13]  *Williby v. Aetna Life Ins. Co.*, 867

8   F.3d 1129, 1131 (9th Cir. 2017); *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (describing self-

9   funded plans).  Any claim seeking additional benefits necessarily implicates Encore's purse.

10          Because Plaintiff seeks relief that would rewrite the terms of the Encore Plan and/or

11   require payment of specific benefits under the Plan, without joining Encore, "the court cannot

12   accord complete relief among existing parties" and proceeding without Encore "may . . . as a

13   practical matter impair or impede [their] ability to protect" its legal interests.  *See* Fed. R. Civ. P.

14   19(a)(1)(A)-(B).  This is a textbook case for the application of Rule 19.  Plaintiff has not simply

15   failed to join a necessary party to her Complaint—she has failed to join the ***only*** party who has

16   authority to make the decisions put at issue in Plaintiff's case.

17          **B.      Encore Cannot Be Feasibly Joined.**

18          The second Rule 12(b)(7) inquiry is whether it is feasible for the absent necessary party to

19   be joined.  *Salt River*, 672 F.3d at 1179.  Joinder is not feasible when venue is improper or when

20   the absent party is not subject to personal jurisdiction.  *E.E.O.C. v. Peabody W. Coal Co.*, 610

21   F.3d 1070, 1078 (9th Cir. 2010).  Here, joinder of Encore is not feasible because Plaintiff cannot

22   establish that Encore is subject to personal jurisdiction or venue in this district.  *AirWair Int'l Ltd.*

23   *v. Schultz*, 73 F. Supp. 3d 1225, 1232 (N.D. Cal. 2014) (a court may exercise personal jurisdiction

---

[13] In the context of an ERISA self-funded plan, the plan "sponsor," which ERISA generally
defines as "the employer," *see* 29 U.S.C. § 1002(16)(b), is the party that establishes or maintains
the ERISA plan and its terms.  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78-79
(1995).  The self-funded "plan administrator" (distinct from a claims administrator) is the entity
so designated by the ERISA plan; and if the plan fails to designate one, it is the plan sponsor by
default.  29 U.S.C. § 1002(16)(a).  Here the plan sponsor and plan administrator is Encore.  MSA
Art. 1; *id.* Art. 3.01.

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1  over a non-resident defendant only when (1) the defendant has minimum contacts with the state

2  sufficient to justify the court's exercise of jurisdiction; and (2) exercising jurisdiction comports

3  with traditional notions of fair play and substantial justice); *Knuttel v. Omaze, Inc.*, 572 F. Supp.

4  3d 866, 869 (N.D. Cal. 2021) (venue is proper in the district where "a substantial part of the

5  events or omissions giving rise to the claim occurred," and this inquiry focuses on the "relevant

6  activities of the defendant, not of the plaintiff." (quotations omitted)).

7      Encore is registered in Delaware and maintains its primary office in Illinois.  The self-

8  funded Encore Plan was created in Illinois (where Encore is located) and therefore, the Plan is

9  funded and all benefits are presumptively paid through Encore's operations in Illinois.  The MSA

10  which establishes the relationship between Encore and Aetna and pursuant to which the Plan was

11  created specifies that "sole and exclusive venue" shall lie in Delaware.  MSA Art. 32.13.  There

12  are no facts before the Court permitting the conclusion that Encore is subject to either personal

13  jurisdiction or venue for a Section 1557 claim in the Northern District of California.  *See AirWair*,

14  73 F. Supp. 3d at 1232; *Knuttel*, 572 F. Supp. 3d at 869.[14]

15      **C.    Encore Is An Indispensable Party.**

16      The third and final inquiry under Rule 12(b)(7) is whether the case can proceed without

17  the absent party, or whether the absent party is "indispensable" such that the action must be

18  dismissed.  *Salt River*, 672 F.3d at 1179.  Under Rule 19(b), indispensable parties are parties

19  "who not only have an interest in the controversy, but an interest of such a nature that a final

20  decree cannot be made without either affecting that interest, or leaving the controversy in such a

21  condition that its final termination may be wholly inconsistent with equity and good conscience."

22  *Camacho*, 297 F.R.D. at 463 (quotations omitted).  Courts weigh four factors in determining

23  whether a party is indispensable: (1) the extent to which a judgment rendered in the party's

24

25  _____

   [14] If Encore were subject to suit in this District, it would have to be joined to this litigation—but
26  Aetna would still have to be dismissed, because it is not the party responsible for adopting the
   Plan term alleged to be discriminatory, as discussed in the text.  And if Plaintiff's class claim
27  were to proceed, she would never be able to feasibly join the multitude of other plan sponsors
   encompassed by her overbroad putative classes, whose interests would equally be implicated by
28  her attempt to reform plan terms and impose monetary liability in a broadside attack on Aetna.

1    absence might prejudice that party or the existing parties; (2) the extent to which any prejudice

2    could be lessened or avoided; (3) whether a judgment in the party's absence would be adequate;

3    and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for

4    non-joinder. *White v. Univ. of Cal.*, 2012 WL 12335354, at *10 (N.D. Cal. Oct. 9, 2012) (citing

5    Fed. R. Civ. P. 19(b)).

6           Here, as explained, the relief Plaintiff seeks cannot be meaningfully awarded without

7    Encore's participation, since Encore has sole and complete authority over the Plan.  Encore

8    cannot be ordered to reform the terms of its Plan without being party to this case.  ERISA-

9    covered health benefits plans such as the Encore Plan are contracts which courts interpret

10   "[b]ased on general rules of contract interpretation." *Vaught v. Scottsdale Healthcare Corp.*

11   *Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008).  No "procedural principle is more deeply

12   imbedded in the common law than that, in an action to set aside a lease or a contract, all parties

13   who may be affected by the determination of the action are indispensable." *Lomayaktewa v.*

14   *Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975); *see also Peabody W. Coal Co.*, 610 F.3d at

15   1081-82; *Kermanshah v. Kermanshah,* 2010 WL 1904135, at *3 (S.D.N.Y. May 11, 2010)

16   (noting that where equitable relief is sought in addition to money damages, "the presence of all

17   parties is necessary").  This Court has specifically recognized that "independent plan fiduciaries

18   are likely indispensable parties to an action that would affect their agreements." *Baird v.*

19   *Blackrock Institutional Tr. Co., N.A.*, 2020 WL 7389772, at *11 n.15 (N.D. Cal. Feb. 11, 2020);

20   *see also In re Lowenschuss*, 171 F.3d 673, 677–78 (9th Cir. 1999) (allowing pension plan trustee

21   to intervene in action that "directly affect[ed] the potential obligations and liabilities of the

22   Pension Plan Trustee.").

23          As a party who cannot be feasibly joined, Encore would also be prejudiced by being

24   unable to defend its interests in this case.  *See* Fed. R. Civ. P. 19(b)(1)-(2).[15]  Encore must have

_____

[15] Nor can Encore be required to waive legitimate objections to personal jurisdiction or venue in
order to mitigate this prejudice.  *See A10 Networks, Inc. v. Brocade Commc'ns Sys., Inc.*, 2012
WL 1932878, at *10 (N.D. Cal. May 29, 2012) (rejecting plaintiffs' contention that absent parties
over whom the court's basis for personal jurisdiction was "questionable" could simply "waive
any objections as to personal jurisdiction" to permit joinder).

the opportunity to defend the Plan terms it adopted, or modify them if it chooses.  Since Encore is

responsible for all payments under the Plan, it must have the opportunity to offer its own defense

against Plaintiff's claims for compensatory damages from plan assets.  This is especially true

where, as here, a plaintiff seeks forward-looking equitable relief.  Indeed, however this action

resolves, Encore faces the risk of follow-on litigation based on rulings in this case.  Courts in this

district have dismissed actions under Rule 19 for this exact reason.  *See Weiss v. Perez*, 602 F.

Supp. 3d 1279, 1297 (N.D. Cal. 2022) (granting motion to dismiss for failing to join Native

American tribe as indispensable party, and noting tribe could face subsequent litigation regarding

the subject matter of the lawsuit); *Hammons v. Wells Fargo Bank, N.A.*, 2015 WL 9258092, at *7

(N.D. Cal. Dec. 18, 2015) (granting motion to dismiss for failure to join co-signor to loan

agreement as an indispensable party in part because co-signor's "absence creates a significant risk

of repeated litigation." (alterations and quotations omitted)).

In all, this case is similar to *Takeda v. Northwestern National Life Insurance Co.*, 765 F.

2d 815 (9th Cir. 1985), where the court held that the employer–administrator of a self-funded

health plan was a necessary and indispensable party.  The court reasoned that (1) the employer

had final authority to determine whether to allow a claim, and thus complete relief might not be

possible without it, and (2) there was a risk of prejudice if the employer was not joined because

there was a risk that it could be collaterally estopped from relitigating issues decided against it.

*Id.* at 819-21; *see also Cuevas v. Joint Benefit Tr.*, 2013 WL 3578496, at *3 (N.D. Cal. July 12,

2013) ("That a plaintiff may assert an ERISA claim against parties other than … the plan

administrator in no way precludes a finding that … [the] administrator is a necessary party….");

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1153

(C.D. Cal. 2015) ("[F]ormally designated and de facto plan administrators are proper defendants

in an ERISA benefits action.").

In another similar case, *Sypher v. Aetna Insurance Co.*, 2014 WL 1230028 (E.D. Mich.

Mar. 25, 2014), the plaintiff (like Plaintiff here) sued only the claims administrator, but not the

plan sponsor or plan administrator, under her ERISA-governed plan.  The court held that the plan

sponsor/administrator was an indispensable party under Rule 19: "Aetna [as claims administrator] … is not the Plan Administrator, and it does not pay the claims. Rather, Federal Express is self-insured, and it, not Aetna, both funds the Plan and pays benefits. Federal Express is designated as the Plan Administrator under the explicit terms of the Plan." *Id.* at *4. The plaintiff's failure to join the plan administrator necessitated dismissal of the suit: "Plaintiff has not joined Federal Express, the Plan Administrator, as a party. Because Plaintiff seeks benefits, and because those benefits would be paid by Federal Express, (1) the Court cannot grant complete relief in the absence of Federal Express, and (2) Federal Express cannot protect its interests in the absence of joinder. Thus, Federal Express is a necessary party under Rule 19, and Plaintiff's failure to join Federal Express necessitates dismissal under Rule 12(b)(7)." *Id.* at *5.

In sum, Plaintiff has failed to join Encore as a necessary and indispensable party to her claim, and there is no practical way to join that party to this case or afford complete relief on Plaintiff's claim against Aetna alone. Plaintiff's Complaint should be dismissed. *Salt River*, 672 F.3d at 1179; *Zurich*, 2009 WL 2252098, at *4-5.

## III. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1557 BECAUSE ERISA PROVIDES THE EXCLUSIVE REMEDY FOR THE RELIEF PLAINTIFF SEEKS.

Plaintiff's Section 1557 claim should also be dismissed because it is not the proper vehicle to seek an award of benefits dollars under the Encore Plan. For ERISA-covered plans like the Encore Plan, ERISA's civil enforcement provisions provide the exclusive remedies for plan members who assert claims for improper processing of benefits. 29 U.S.C. § 1132(a)(1)(B); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (noting "clear congressional intent to make the ERISA remedy exclusive"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 42 (1987) ("The language and structure [of ERISA's civil enforcement] provisions support the conclusion that they were intended to provide exclusive remedies for ERISA-plan participants and beneficiaries asserting improper processing of benefit claims."); *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 632 (9th Cir. 1990) ("Claims relating to ERISA plans must [] invoke the specific remedies of ERISA.").

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

Aetna is aware that in the context of gender-affirming care, some courts have permitted Section 1557 claims to proceed past the pleadings stage absent an ERISA claim for benefits. *See, e.g.*, *Scott v. St. Louis Univ. Hosp.,* 600 F. Supp. 3d 956, 960 (E.D. Mo. 2022); *Toomey v. Arizona*, 2019 WL 7172144, at *3 (D. Ariz. Dec. 23, 2019). But these cases are distinguishable because the health plans there contained blanket exclusions on gender-affirming care and, accordingly, the plaintiffs were "not seeking to recover on the Plan." *Toomey*, 2019 WL 7172144, at *3[16]; *Scott*, 600 F. Supp. 3d at 960 (noting plaintiff was not "seeking to enforce her rights under an ERISA plan" because "the Plan expressly excludes coverage for sex transition . . . ."). Here, by contrast, Plaintiff is seeking to recover benefits that she alleges are covered by the Plan. *See* Compl. ¶ 7 ("Class Members suffer the indignity of being told they are denied authorization for treatments covered by their plans…"); ¶ 72 ("Mara will be denied coverage again when she attempts to have a second child . . .").[17] To the extent that Plaintiff's claim is that she has been denied benefits covered by her Plan, it is an ERISA claim for benefits and should be vindicated through a claim brought under ERISA § 502(a)(1)(B).

## IV.    AETNA INC. SHOULD BE DISMISSED BECAUSE IT IS A HOLDING COMPANY THAT DOES NOT PROVIDE HEALTH INSURANCE.

Aetna Inc. is a holding company that has no insurance operations or products, is not licensed to sell insurance, and has no role in the administration of Aetna health insurance plans. Allocca Decl. ¶¶ 4, 10-12. The Plan documents and MSA between Encore and Aetna make clear that Encore is the Plan administrator and Plan fiduciary. MSA at 8-9; *id.* Ex. B. Aetna Inc. has no involvement with the daily insurance operations of Aetna Life Insurance Company and had no responsibility for or involvement with operations of the Encore Plan or the services provided by Encore as Plan Administrator. Allocca Decl. ¶¶ 6, 12.

Plaintiff's Complaint makes no allegations against Aetna Inc. except to say that Aetna Life Insurance Company is its wholly-owned subsidiary. Compl. ¶ 15. Plaintiff does not allege

---

[16] *Toomey* involved a non-ERISA plan.

[17] Plaintiff's assertion that she will be denied coverage when she attempts to conceive again is facially speculative, insofar as health benefits plans may make changes to their terms year-over-year, and Plaintiff simply assumes Encore's plan terms will remain the same.

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG

1   that Aetna Inc. had anything at all to do with the Encore Plan.  That Aetna Inc. is a parent

2   company of Aetna Life Insurance Company does not, by itself, make Aetna Inc. a proper party to

3   this action.  "It is a general principle of corporate law deeply ingrained in our economic and legal

4   systems that a parent corporation (so-called because of control through ownership of another

5   corporation's stock) is not liable for the acts of its subsidiaries."  *Biggins v. Wells Fargo & Co.*,

6   266 F.R.D. 399, 413-14 (N.D. Cal. 2009) (citation and internal quotations omitted).

7          Aetna Inc. is not a proper party and should be dismissed pursuant to Rule 12(b)(6).

8                                              **CONCLUSION**

9          For the reasons stated herein, Aetna respectfully requests that the Court grant this Motion

10  and dismiss Plaintiff's Complaint in its entirety.

11  Respectfully submitted,

12  Dated:  July 24, 2023                          **O'MELVENY & MYERS LLP**

13
                                                   */s/ Susannah K. Howard*
14                                                 Susannah K. Howard
                                                   Two Embarcadero Center, 28th Floor
15                                                 San Francisco, CA 94111
                                                   Telephone:  (415) 984-8700
16                                                 Facsimile:  (415) 984-8701
                                                   E-mail: showard@omm.com
17
                                                   *Attorneys for Defendant Aetna Inc. and Aetna Life*
18                                                 *Insurance Inc.*

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT
CASE NO. 4:23-CV-01849-HSG