Rebecca Peterson-Fisher (SBN 255359)
Jennifer L. Liu (SBN 279370)
C. Leah Kennedy (SBN 346306)
**LIU PETERSON-FISHER LLP**
1204 Burlingame Ave., Suite 3
Burlingame, CA 94010
Tel: 650.461.9000
Fax: 650.460.6967
Email: rpf@liupetersonfisher.com
jliu@liupetersonfisher.com
lkennedy@liupetersonfisher.com

Barbara J. Chisholm (SBN 224656)
Danielle E. Leonard (SBN 208201)
Connie K. Chan (SBN 284230)
Robin S. Tholin (SBN 344845)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: 415.421.7151
Fax: 415.362.8064
E-mail: bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com
cchan@altshulerberzon.com
rtholin@altshulerberzon.com

Michelle Banker (admitted *pro hac vice*)
Alison Tanner (admitted *pro hac vice*)
Noel León (admitted *pro hac vice*)
Sudria Twyman (admitted *pro hac vice*)
**NATIONAL WOMEN'S LAW CENTER**
1350 I Street NW, Suite 700
Washington, DC 20005
Tel: 202.588.5180
Email: mbanker@nwlc.org
atanner@nwlc.org
nleon@nwlc.org
stwyman@nwlc.org

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARA BERTON, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AETNA INC. and AETNA LIFE INSURANCE COMPANY, <br><br> Defendants. | CASE NO.: 4:23-cv-01849-HSG <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date: October 12, 2023 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 2, 4th Floor <br> Judge: Hon. Haywood S. Gilliam <br><br> REDACTED VERSION FOR PUBLIC FILING |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................... iv

INTRODUCTION ...................................................................................................... 3

STATEMENT OF FACTS ......................................................................................... 3

   A. Aetna Designs Markets, Sells, and Administers Health Plans Nationwide
      that Incorporate Aetna's Own Clinical Policy Bulletin on Infertility ..................... 3

   B. Aetna's Infertility Policy Imposes More Burdensome and Costly Eligibility
      Requirements on LGBTQ Members in Same-Sex Relationships Than on
      Members in Heterosexual Relationships ............................................................ 3

   C. Aetna Denied Plaintiff's Benefits Claim Based on Its Own Infertility Policy ...... 5

   D. Plaintiff Filed This Action Alleging a Section 1557 Claim ................................. 5

LEGAL STANDARD ................................................................................................. 6

ARGUMENT ............................................................................................................. 6

   I. Plaintiff Properly Pleads a Section 1557 Claim for Intentional Discrimination .... 6

     A. Aetna's Infertility Policy Is Facially Discriminatory ....................................... 9

     B. Aetna's Enforcement of Its Policy Intentionally Discriminates Against
        LGBTQ Members ....................................................................................... 13

   II. Aetna's Rule 12(b)(7) Motion Should be Denied Because Encore Is Not a
     Necessary Party, Let Alone an Indispensible One .......................................... 15

     A. Encore Is Not a Necessary Party Under Rule 19(a) ....................................... 15

       1. Encore Is Not Necessary to Afford Plaintiff Complete Relief for Her
          Claims Against Aetna Under Section 1557 ............................................... 15

       2. Encore Has Not Claimed Any Interest in This Litigation, Nor Has
          Aetna Identified Any Legally Protected Interest Encore Could Claim ....... 18

     B. Even If Encore Were a Necessary Party, Dismissal Would Be Improper
       Because Encore Can Feasibly Be Joined ....................................................... 21

     C. Even If Joinder of Encore Were Not Feasible, Equity and Good
       Conscience Preclude Dismissal Under Rule 19(b) ......................................... 22

ii

III. ERISA Does Not Preempt Plaintiff's Section 1557 Claim ...................................................24

IV. Defendants' Attempt to Dismiss Aetna Inc. Under Rule 12(b)(6)
      Is Improper ........................................................................................................................25

CONCLUSION ...................................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
  542 U.S. 200 (2004)................................................................................................25

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.,*
  99 F.Supp.3d 1110 (C.D. Cal. 2015) .....................................................................23

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.,*
  No. CV 14-3053-MWF, 2018 WL 11241771 (C.D. Cal. Apr. 11, 2018)................19

*Alto v. Black,*
  738 F.3d 1111 (9th Cir. 2013) ......................................................................2, 15, 21

*Am. Greyhound Racing, Inc. v. Hull,*
  305 F.3d 1015 (9th Cir. 2002) ................................................................................23

*Ariz. Dream Act Coal. v. Brewer,*
  855 F.3d 957 (9th Cir. 2017) ..................................................................................14

*Austin v. Univ. of Or.,*
  925 F.3d 1133 (9th Cir. 2019) ..........................................................................13, 14

*Baird v. Blackrock Institutional Tr. Co., N.A.,*
  No. 17-CV-01892-HSG, 2020 WL 7389772 (N.D. Cal. Feb. 11, 2020)................23

*Bostock v. Clayton County,*
  140 S.Ct. 1731 (2020)....................................................................................... *passim*

*Boyden v. Conlin,*
  341 F.Supp.3d 979 (W.D. Wisc. 2018).................................................................7, 10

*Briscoe v. Health Care Serv. Corp.,*
  281 F.Supp.3d 725 (N.D. Ill. 2017) .......................................................................10

*C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.,*
  No. 3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) .............7, 17, 24

*Cachil Dehe Band of Wintun Indians v. California,*
  547 F.3d 962 (9th Cir. 2008) ..................................................................................15

*Carr v. United Healthcare Servs. Inc.,*
  No. C15-1105-MJP, 2016 WL 7716060 (W.D. Wash. May 31, 2016)................16, 18

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings v. Martinez,*
  561 U.S. 661 (2010)................................................................................................11

iv

*City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*,
   880 F.Supp.2d 1045 (N.D. Cal. 2012) ....................................................................25

*Columbus Bd. of Educ. v. Penick*,
   443 U.S. 449 (1979) ..................................................................................................14

*Comm. Concerning Cmty. Improvement v. City of Modesto*,
   583 F.3d 690 (9th Cir. 2009) ....................................................................................14

*Conner v. Burford*,
   848 F.2d 1441 (9th Cir. 1998) ..................................................................................24

*Cuevas v. Joint Benefit Tr.*,
   No. 13-CV-00045-JST, 2013 WL 3578496 (N.D. Cal. July 12, 2013)...................23

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   142 S.Ct. 1562 (2022)...............................................................................................16

*Davis v. Guam*,
   932 F.3d 822 (9th Cir. 2019) ...............................................................................1, 10

*Disabled Rts. Action Cmty. v. Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) ............................................................................ *passim*

*Doe v. Snyder*,
   28 F.4th 103 (9th Cir. 2022) ..............................................................................1, 7, 8

*Fain v. Crouch*,
   618 F.Supp.3d 313 (S.D.W. Va. 2022) .................................................................7, 11

*Fossen v. Blue Cross & Blue Shield of Mont., Inc.*,
   660 F.3d 1102 (9th Cir. 2011) ..................................................................................25

*Frank v. United Airlines, Inc.*,
   216 F.3d 845 (9th Cir. 2000) .................................................................................8, 10

*Frappied v. Affinity Gaming Black Hawk, LLC*,
   966 F.3d 1038 (10th Cir. 2020) ................................................................................12

*Gerdom v. Cont'l Airlines, Inc.*,
   692 F.2d 602 (9th Cir. 1982) (en banc) ..................................................................2, 8

*Hammons v. Univ. of Md. Med. Sys. Corp.*,
   -- F.Supp.3d --, 2023 WL 121741 (D. Md. Jan. 6, 2023) .....................................7, 10

*Hammons v. Wells Fargo Bank, N.A.*,
   No. 15-CV-04897-RS, 2015 WL 9258092 (N.D. Cal. Dec. 18, 2015)....................20

*Hecox v. Little*,
   No. 20-35813, -- F.4th --, 2023 WL 5283127 (9th Cir. Aug. 17, 2023)..............1, 11

*Kermanshah v. Kermanshah*,
  No. 08-CV-409, 2010 WL 1904135 (S.D.N.Y. May 11, 2010) ..............................23

*Kescoli v. Babbitt*,
  101 F.3d 1304 (9th Cir. 1996) ...............................................................22, 23, 24

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..............................................................................6, 25

*Koala v. Khosla*,
  931 F.3d 887 (9th Cir. 2019) ...............................................................................6

*Lawrence v. Texas*,
  539 U.S. 558 (2003)...............................................................................................11

*Lea v. Republic Airlines, Inc.*,
  903 F.2d 624 (9th Cir. 1990) ...............................................................................25

*Lewis v. Clarke*,
  581 U.S. 155 (2017)...............................................................................................16

*Lomayaktewa v. Hathaway*,
  520 F.2d 1324 (9th Cir. 1975) .............................................................................23

*Los Angeles Dept. of Water & Power v. Manhart*,
  435 U.S. 702 (1978)...............................................................................................13

*Loving v. Virginia*,
  388 U.S. 1 (1967)....................................................................................................8

*In re Lowenschuss*,
  171 F.3d 673 (9th Cir. 1999) ...............................................................................23

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) ...............................................................6, 19, 22, 23

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) .............................................................................6

*McGinest v. GTE Serv. Corp.*,
  360 F.3d 1103 (9th Cir. 2004) .............................................................................8

*Mewawalla v. Middleman*,
  601 F.Supp.3d 574 (N.D. Cal. 2022) ..................................................................22

*U.S. ex rel. Morongo Band of Mission Indians v. Rose*,
  34 F.3d 901 (9th Cir. 1994) .................................................................................19

*Northrop Corp. v. McDonnell Douglas Corp.*,
  705 F.2d 1030 (9th Cir. 1983) .............................................................................19

vi

*Pac. Shores Props., LLC v. City of Newport Beach,*
   730 F.3d 1142 (9th Cir. 2013) ............................................................11, 12, 13

*Paiute-Shoshone Indians of Bishop Cmty. v. City of Los Angeles,*
   637 F.3d 993 (9th Cir. 2011) ...................................................................6, 16

*Parr v. Woodmen of the World Life Ins. Co.,*
   791 F.2d 888 (11th Cir. 1986) ........................................................................8

*Phillips v. Martin Marietta Corp.,*
   400 U.S. 542 (1971) (per curiam)...................................................................12

*Physics, Materials & Applied Mathematics Rsch. LLC v. Yeak,*
   No. CV-20-00379-TUC-JCH, 2022 WL 3286585 (D. Ariz. Aug. 11, 2022)...................18, 19

*Pilot Life Ins. Co. v. Dedeaux,*
   481 U.S. 41 (1987)...........................................................................................25

*Polonczyk v. Anthem BlueCross & BlueShield,*
   586 F.Supp.3d 648 (E.D. Ky. 2022) ..............................................................10

*Price Waterhouse v. Hopkins,*
   490 U.S. 228 (1989)..........................................................................................8

*Rice v. Cayetano,*
   528 U.S. 495 (2000)...................................................................................12, 13

*Roberts v. City of Fairbanks,*
   947 F.3d 1191 (9th Cir. 2020) ......................................................................19

*Salt River Project Agr. Imp. & Power Dist. v. Lee,*
   672 F.3d 1176 (9th Cir. 2012) ......................................................................18

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ........................................................................21

*Scott v. St. Louis Univ. Hosp.,*
   600 F.Supp.3d 956 (E.D. Mo. 2022).............................................................25

*Sher v. Johnson,*
   911 F.2d 1357 (9th Cir. 1990) ......................................................................22

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ........................................................................6

*Sypher v. Aetna Ins. Co.,*
   No. 13-10007, 2014 WL 1230028 (E.D. Mich. Mar. 25, 2014)...........................23

*Takeda v. Northwestern National Life Insurance Co.,*
   765 F.2d 815 (9th Cir. 1985) ...................................................................21, 23

*Taylor v. Accredited Home Lenders, Inc.*,
    580 F.Supp.2d 1062 (S.D. Cal. 2008) .......................................................................25

*Tovar v. Essentia Health*,
    342 F.Supp.3d 947 (D. Minn. 2018) ...................................................8, 16, 17, 25

*Tovar v. Essentia Health*,
    857 F.3d 771 (8th Cir. 2017) .................................................................16, 17

*UAW v. Johnson Controls, Inc.*,
    499 U.S. 187 (1991)...................................................................................8, 12

*United States v. Bowen*,
    172 F.3d 682 (9th Cir. 1999) ...............................................................2, 18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977).......................................................................................14

*Ward v. Apple Inc.*,
    791 F.3d 1041 (9th Cir. 2015) ................................................2, 16, 19

*Weinreb v. Xerox Business Services*,
    323 F.Supp.3d 501 (S.D.N.Y. 2018).......................................................10

*Weiss v. Perez*,
    602 F.Supp.3d 1279 (N.D. Cal. 2022) .......................................................20

*Wilson v. Metals USA, Inc.*,
    No. CIV S-12-0568 LKK, 2012 WL 5932990 (E.D. Cal. Nov. 27, 2012) ...........................22

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886)...............................................................................14

*Zarda v. Altitude Express, Inc.*,
    883 F.3d 100 (2d Cir. 2018) (en banc).....................................................8

**Statutes**

20 U.S.C. §1681 ...............................................................................................7

28 U.S.C. §1391(b)(2) .......................................................................................22

29 U.S.C. §1104(a)(1)(D) ...................................................................................24

29 U.S.C. §1132(a)(1)(B) .............................................................................15, 24

29 U.S.C. §1132(a)(3) .......................................................................................16

29 U.S.C. §1144(d) ...........................................................................................24

42 U.S.C. §18116(a) ......................................................................................1, 7

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) .........................................................................................21

Fed. R. Civ. P. 19 ............................................................................................... *passim*

Fed. R. Civ. P. 56(d) .................................................................................................25

7 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* §1609 (3d
    ed. 2015) ..............................................................................................................6

Lisette Johnson, Ins. Circular Letter No. 3, *Health Insurance Coverage of
    Infertility Treatments Regardless of Sexual Orientation or Gender Identity*,
    N.Y .....................................................................................................................14

*Notice of Proposed Rulemaking, Nondiscrimination in Health Programs and
    Activities*, 87 Fed. Reg. 47,824, 47,825 (Aug. 4, 2022)........................................24

# INTRODUCTION

Plaintiff Mara Berton ("Plaintiff") brings this lawsuit to hold Defendants Aetna Life Insurance Company and Aetna Inc. (together, "Aetna" or "Defendants") accountable under Section 1557 of the Affordable Care Act, 42 U.S.C. §18116(a) ("Section 1557") for designing, marketing, selling, and administering health benefit plans that facially discriminate on the basis of sexual orientation and/or gender identity in the provision of fertility benefits coverage. Aetna-designed and -administered health plans, like the one Plaintiff and her wife are members of, allow members who engage in "heterosexual sexual intercourse" to establish their "infertility" (as defined by Aetna) and access covered fertility benefits simply by representing that they have been unable to conceive after one year of frequent intercourse with their partner. But for Plaintiff and other LGBTQ members seeking fertility benefits who are unable to get pregnant through intercourse with their partner due to their sexual orientation and/or gender identity, Aetna imposes vastly more onerous and expensive eligibility criteria. Specifically, Aetna requires LGBTQ members to prove their "infertility" (as defined by Aetna) by paying for and undergoing 12 cycles of artificial insemination treatments—a process that takes longer than 12 months, often costs members thousands of dollars out of pocket, and generally is more cycles than is medically advised. Aetna's "Infertility Policy" thus on its face treats LGBTQ members like Plaintiff worse than similarly situated members in heterosexual relationships, in plain violation of Section 1557. *See Doe v. Snyder*, 28 F.4th 103, 113–14 (9th Cir. 2022).

Despite Plaintiff's clear allegations of facial discrimination, Aetna moves to dismiss under Rule 12(b)(6). Aetna's argument is based on a gross mischaracterization of Aetna's Infertility Policy as "facially neutral" and a misstatement of the law as requiring proof of animus, which it does not. By imposing different burdens based on whether a member engages in "heterosexual sexual intercourse"—a "proxy" for sexual orientation—the Policy on its face treats Plaintiff worse than similarly situated members in heterosexual relationships, based on her sexual orientation. *See Hecox v. Little*, No. 20-35813, -- F.4th --, 2023 WL 5283127, at *10 (9th Cir. Aug. 17, 2023); *Davis v. Guam*, 932 F.3d 822, 837 (9th Cir. 2019). Simply put, if Plaintiff's partner were a man rather than a woman, she would have a cost-free path to access fertility

benefits, instead of having to pay thousands of dollars out of pocket and having to undergo medically unnecessary treatments that could harm her health. *See Bostock v. Clayton County*, 140 S.Ct. 1731 (2020). Because the Policy discriminates on its face, no separate proof of animus is required. *See Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 608 (9th Cir. 1982) (en banc).

In a further attempt to shield itself from having to face suit for its own conduct in designing, marketing, selling, and administering discriminatory health plans, Aetna also seeks dismissal pursuant to Rule 12(b)(7), arguing that Plaintiff's wife's employer Encore Group USA LLC ("Encore"), the plan sponsor to whom Aetna sold its discriminatory health plan design, is an "indispensable" party that cannot be joined. Aetna's misuse of Rule 19 fails at every turn. First, Encore is not a necessary party because Plaintiff can obtain complete relief from Aetna for her Section 1557 claim. *See* Fed. R. Civ. P. 19(a)(1)(A). Aetna mischaracterizes Plaintiff's claim as an ERISA one, but Plaintiff does not contend that Aetna incorrectly administered the Plan; rather, she claims that Aetna's discriminatory Plan design denies her and class members equal access to Plan benefits. Plaintiff does not seek payment of benefits owed under the Plan or equitable relief pursuant to ERISA, but rather damages and an injunction against Aetna alone pursuant to Section 1557. Even if Encore may be separately liable under other legal theories, "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *E.g.*, *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). Second, Encore has not claimed *any* interest in this action, let alone a "legally protected" one. *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999); Fed. R. Civ. P. 19(a)(1)(B). Aetna's motion therefore fails "at step one" of the Rule 19 analysis. *See Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013); *Disabled Rts. Action Cmty. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883 (9th Cir. 2004). Moreover, even if Encore were necessary, dismissal would be improper because Encore may feasibly be joined. Further, equity and good conscience and the public interest preclude dismissal.

Finally, ERISA does not preempt *federal* claims like Section 1557, and Aetna Inc.'s motion for dismissal improperly rests on extraneous materials not incorporated into the complaint. Aetna's motion should be denied in full.

# STATEMENT OF FACTS

### A.  Aetna Designs, Markets, Sells, and Administers Health Plans Nationwide that Incorporate Aetna's Own Clinical Policy Bulletin on Infertility.

Aetna is a nationwide company that provides health coverage products, including fully-insured and self-funded health benefit plans. Compl. ¶¶14–15.[1] For self-funded plans, Aetna designs and markets plans that it offers for sale to employers and other plan sponsors, for which Aetna then acts as a third-party administrator ("TPA"). *Id.* ¶18. For all health plans that Aetna designs, markets, sells, supplies, issues, and administers, Aetna by default incorporates a series of "Clinical Policy Bulletins" ("CPBs") it develops and publishes, and in general Aetna requires those buying its TPA services to agree to the terms set forth therein. *Id.* ¶¶22, 26. Aetna claims full responsibility for the content of these CPBs, which "express Aetna's determination of whether certain services or supplies are medically necessary, experimental and investigational, or cosmetic," and which Aetna applies when making coverage eligibility determinations. *Id.* ¶¶23–24; *see id.* ¶¶22, 26; Dkt. 40-2, Exh. B to the Decl. of Robert Goldbeck, Encore Group Policy Summary Plan Document ("SPD") at 36; Dkt. 40-3, Exh. A to the Decl. of Donna Lynch. For Aetna-designed and -administered health plans that provide coverage for infertility treatments, Aetna by default incorporates into those plans Clinical Policy Bulletin No. 0327—Infertility (referred to herein as the "Infertility Policy" or "Policy"), which Aetna designed specifically to govern its determination of members' eligibility for fertility benefits. Compl. ¶¶25–27.

### B.  Aetna's Infertility Policy Imposes More Burdensome and Costly Eligibility Requirements on LGBTQ Members in Same-Sex Relationships Than on Members in Heterosexual Relationships.

Prior to January 2023, Aetna's Infertility Policy stated, in relevant part:

> For purposes of this policy, a member is considered infertile if he or she is unable to conceive or produce conception after **1 year of frequent, unprotected heterosexual sexual intercourse,** or **6 months of frequent, unprotected heterosexual sexual intercourse** if the female partner is 35 years of age or older. **Alternately, a woman without a male partner** may be considered infertile if she is unable to conceive or produce conception after **at least 12 cycles of donor insemination** (6 cycles for women 35 years of age or older).

---

[1] In a fully insured plan, the plan sponsor purchases insurance that is underwritten by an issuer like Aetna. In a self-funded plan, the claims are paid by the plan sponsor, but a self-funded plan will often contract with a third-party claims administrator like Aetna to administer the plan.

*Id.* ¶28; Mot. at 5–6. Under the express terms of this Policy, a member in a heterosexual relationship could meet Aetna's definition of infertility by engaging in *either* (1) "1 year of frequent, unprotected heterosexual sexual intercourse" *or* (2) 12 cycles of "donor insemination";[2] but only the latter option was available to a member in a same-sex relationship.[3] Compl. ¶29.

In January 2023, Aetna altered the language but not the substance of its definition of "infertile" in its Infertility Policy to state, in relevant part:

> For purposes of this policy, a person is considered infertile if unable to conceive or produce conception after **1 year of egg-sperm contact** when the female attempting conception is under 35 years of age, **or after 6 months [of] egg-sperm contact** when the female attempting conception is 35 years of age or older. **Egg-sperm contact can be achieved by frequent sexual intercourse or through monthly cycles of timed sperm insemination (intrauterine, intracervical, or intravaginal).** This definition applies to all individuals regardless of sexual orientation or the presence/availability of a reproductive partner.

*Id.* ¶30. Under both versions of the Infertility Policy, people in heterosexual relationships can establish their eligibility for fertility benefits simply by representing that they have been unable to conceive after one year of "frequent" sexual intercourse. Compl. ¶33. The Policy does not define "frequent," nor does it require documentation of the timing of intercourse. *Id.* ¶¶33–35.

By contrast, Aetna's Policy requires members in non-heterosexual relationships to pay thousands of dollars out of pocket for fertility treatments, because IUI—the most common method of donor insemination—costs at least hundreds of dollars per cycle. *Id.* ¶41. Moreover, Aetna's Policy necessitates greater delays before access to covered treatment is granted for LGBTQ couples because undergoing 12 cycles of donor insemination takes longer than 12 months. *Id.* ¶¶38–42. And Aetna's Policy requires plan members in LGBTQ relationships to undergo procedures that may be contrary to medical advice. *Id.* ¶¶43–44. For affected members who do not have the funds to pay out of pocket for fertility treatment before qualifying for coverage, Aetna's requirement blocks access to needed benefits entirely. *Id.* ¶¶47–48.

---

[2] For members over 35, these requirements are reduced to six months of frequent, unprotected heterosexual sexual intercourse or six cycles of donor insemination. Compl. ¶29.

[3] As the Policy uses the term "woman," Plaintiff at times refers to members who wish to get pregnant as "women" and to the relationships of those whose partners are considered female under the Policy as "same-sex relationships," but Plaintiff recognizes that putative class members and their partners hold a range of gender identities and may not be of the same sex.

4

**C.  Aetna Denied Plaintiff's Benefits Claim Based on Its Own Infertility Policy.**

Plaintiff is a 32-year-old woman married to a woman. Compl. ¶¶13, 52. Since September 10, 2021, Plaintiff has been enrolled in a health plan sponsored by her wife's employer, Encore ("Plan")—a plan that Aetna designed, marketed, and sold to Encore, and that Aetna administers. *Id.* ¶¶52, 55. The Plan generally provides coverage for the diagnosis and treatment of infertility as well as "[c]omprehensive infertility services," including "artificial insemination, which includes intrauterine (IUI)/intracervical (ICI) insemination." *Id.* ¶¶54–55; SPD at 10–11. The Plan provides that members are eligible for covered infertility treatments if they "have met the requirement for the number of months trying to conceive through egg and sperm contact" or meet the Plan's definition of "infertility"—which precisely tracks the definition of "infertility" in Aetna's Infertility Policy. SPD at 11, 57–58.

Plaintiff and her wife want a family with at least two children. *Id.* ¶56. In January 2022, they decided to start pursuing fertility treatments for Plaintiff, because they cannot become pregnant through sexual intercourse. *Id.* ¶57. Plaintiff's physician advised IUI, and her clinic submitted a claim to Aetna for preauthorization of that treatment. *Id.* ¶¶57–58. Aetna denied coverage. *Id.* ¶59. Plaintiff appealed that denial, explaining, "I am unable to engage in 'frequent, unprotected heterosexual sexual intercourse' because I am a woman married to a woman." *Id.* ¶61. Aetna denied Plaintiff's appeal, explaining that Aetna did not consider her "infertile," using language from Aetna's Infertility Policy:

> *We consider an individual infertile* if the individual is unable to conceive or produce conception after one (1) year of frequent, unprotected heterosexual sexual intercourse, or six (6) months of frequent, unprotected heterosexual sexual intercourse if the female partner is 35 years of age or older. Alternately, a woman without a male partner may be considered infertile if she is unable to conceive or produce conception after at least twelve (12) cycles of donor insemination (six (6) cycles for women 35 years of age or older). Meeting the definition of infertility is a requirement of the member's insurance plan. Our records don't show the member meet [sic] these criteria.

Compl. ¶62 (emphasis added); Lynch Decl., Exh. C. Plaintiff filed a second appeal of this determination, which Aetna also denied on the same basis. Compl. ¶63.

**D.  Plaintiff Filed This Action Alleging a Section 1557 Claim.**

Plaintiff filed this action on April 17, 2023, alleging Aetna's facially discriminatory

Policy violates Section 1557 of the ACA. Compl. ¶¶66–69, 95–102. Plaintiff seeks relief on behalf of a National Injunctive Relief Class and a California Damages Class. *Id.* ¶¶76–78.

## LEGAL STANDARD

In adjudicating a motion to dismiss under Rule 12(b)(6), the court "accept[s] the complaint's well-pleaded factual allegations as true, and construe[s] all inferences in the plaintiff's favor." *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (citation omitted). No materials may be considered other than the factual allegations in the complaint and documents incorporated therein by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).[4] If the complaint states a plausible case, it "survives a motion to dismiss" even if defendant asserts alternative explanations that are also "plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Rule 12(b)(6) motions are generally disfavored and are "especially disfavored" when a complaint alleges a legal theory "that can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004).

In ruling on a Rule 12(b)(7) motion, the Court likewise must "accept as true the allegations in Plaintiff's complaint and draw all reasonable inferences in Plaintiff's favor." *Paiute-Shoshone Indians of Bishop Cmty. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011). "The moving party has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Courts are "extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." 7 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* §1609 (3d ed. 2015).

## ARGUMENT

### I. Plaintiff Properly Pleads a Section 1557 Claim for Intentional Discrimination.

Section 1557 of the ACA provides that "an individual shall not, on the ground prohibited

---

[4] Documents are incorporated only "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). Aetna asserts without citation that its Master Services Agreement with Encore ("MSA") is incorporated into the Complaint. Mot. at 3, n.2. In reality, the Complaint does not refer to the MSA at all, let alone extensively, nor does the MSA form the basis of Plaintiff's claim. The MSA and related declarations thus can be considered only for Rule 12(b)(7), not Rule 12(b)(6).

6

under … title IX of the Education Amendments of 1972 … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. §18116(a).[5] Title IX prohibits discrimination "on the basis of sex," 20 U.S.C. §1681, and courts "construe Title IX's protections consistently with those of Title VII," including in Section 1557 claims. *Snyder*, 28 F.4th at 114. Accordingly, just as discrimination based on sexual orientation or gender identity is unlawful under Title VII, *see Bostock*, 140 S.Ct. 1731,[6] so too is it unlawful under Title IX and Section 1557, which Aetna does not dispute. *Snyder*, 28 F.4th at 114 (*Bostock* analysis applies to sex discrimination claims under Title IX and Section 1557); *see also Hammons v. Univ. of Md. Med. Sys. Corp.*, -- F.Supp.3d --, 2023 WL 121741, at *7–10 (D. Md. Jan. 6, 2023); *Pritchard*, 2022 WL 17788148, at *6; *Fain v. Crouch*, 618 F.Supp.3d 313, 335 (S.D.W. Va. 2022); *Boyden v. Conlin*, 341 F.Supp.3d 979, 995–97 (W.D. Wisc. 2018).

Plaintiff plausibly alleges that Aetna discriminated and continues to discriminate against her and putative class members on the basis of sexual orientation and gender identity by designing, marketing, selling, and/or administering health plans that incorporate Aetna's Infertility Policy, which imposes significantly more burdensome requirements on LGBTQ members in same-sex partnerships seeking fertility benefits than it does on cisgender members in opposite-sex relationships. Compl. ¶¶1–7, 21–46, 52–65, 98. If Plaintiff were heterosexual and married to a man instead of a woman, Aetna's Policy would afford her a cost-free avenue to coverage for fertility treatment—namely, representing that she was unable to conceive after one year of frequent heterosexual intercourse. *Id.* Instead, because Plaintiff is married to a woman, Aetna's Policy requires her to spend thousands of dollars out of pocket to undergo 12 cycles of artificial insemination (against medical advice) simply to establish eligibility for IUI coverage. *Id.* ¶¶58–63. Aetna's Policy thus treats Plaintiff "worse than others who are similarly situated,"

---

[5] Aetna does not dispute that it is a covered entity under Section 1557, including with respect to its TPA services. *See* Compl. ¶¶16, 69, 97; *C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, No. 3:20-CV-06145-RJB, 2022 WL 17788148, at *8 (W.D. Wash. Dec. 19, 2022).

[6] *Bostock* recognized that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 140 S.Ct. at 1741.

*Bostock*, 140 S.Ct. at 1740, meeting the straightforward definition of discrimination under Title VII and, in turn, Title IX and Section 1557. *See Snyder*, 28 F.4th at 114.[7]

Aetna's Rule 12(b)(6) motion to dismiss Plaintiff's Section 1557 claim simply ignores Plaintiff's allegations and the applicable law. Instead, Aetna pretends that a plaintiff cannot state a claim for sex discrimination under Section 1557 unless she alleges either "differential treatment [that] is motivated by discriminatory animus toward the protected group" or deliberate indifference "to a third-party's discriminatory conduct." Mot. at 9. But Aetna erroneously conflates intentional discrimination and animus.[8] "Where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender," the law is clear that "the plaintiff need not otherwise establish the presence of discriminatory intent," because the policy itself provides sufficient evidence of intent. *Gerdom*, 692 F.2d at 608; *see UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect."). Here, because Aetna's Infertility Policy on its face imposes greater burdens on LGBTQ members seeking to get pregnant with their same-sex partner than it does on similarly situated cisgender members in opposite-sex relationships, Plaintiff need not separately allege that Aetna acted "out of animus to women in same-sex relationships," Mot. at 11. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000). Even if Aetna's Infertility Policy could somehow be

---

[7] Even if one were to characterize the discrimination here as based on the sex of Plaintiff's spouse, Aetna's Infertility Policy would still violate Section 1557. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 124–25 (2d Cir. 2018) (en banc) (Title VII prohibits "associational discrimination," including on the basis of sex), *aff'd sub nom. Bostock*, 140 S.Ct. 1731. Title VII's prohibition of associational discrimination based on race has long been established. *See, e.g.*, *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1118 (9th Cir. 2004) (Title VII "protect[s] against adverse employment actions taken because of the employee's close association with black friends or coworkers") (citations omitted); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) ("Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race."); *Zarda*, 883 F.3d at 124–25 (collecting cases); *cf. Loving v. Virginia*, 388 U.S. 1 (1967). Title VII "on its face treats each of the enumerated categories exactly the same," so principles applying to race discrimination apply with equal force to sex discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 243 n.9 (1989) (plurality opinion); *see Zarda*, 883 F.3d at 125.

[8] Where, as here, a Section 1557 plaintiff alleges that a plan is facially discriminatory, the defendant already has actual notice, and a plaintiff need not allege facts showing deliberate indifference. *See Tovar v. Essentia Health*, 342 F.Supp.3d 947, 953–54 (D. Minn. 2018).

construed as facially neutral (it cannot), Plaintiff adequately alleges that Aetna's enforcement of the Policy intentionally discriminates against LGBTQ members seeking to get pregnant, supporting an inference of animus. *See infra* at 13. Aetna's 12(b)(6) motion should be denied.

### A. Aetna's Infertility Policy Is Facially Discriminatory.

Aetna's contention that its Infertility Policy "treats all persons seeking infertility treatments the same" because "they all must satisfy the definition of medical infertility," Mot. at 10, completely misses the mark. Because the Infertility Policy's very "definition of medical infertility" imposes different standards and more onerous burdens for LGBTQ members in same-sex relationships than on members in heterosexual ones, the Policy is facially discriminatory.

On its face, Aetna's Infertility Policy differentiates between members who engage in "heterosexual sexual intercourse" with a partner and those who do not. Compl. ¶¶28–31. Under the Policy, a cisgender member in a heterosexual relationship is deemed "infertile," and thus eligible for covered fertility benefits, simply upon representing that the member has been unable to conceive after one year (or six months, depending on age) of "frequent [] heterosexual sexual intercourse" (pre-January 2023) or "frequent sexual intercourse" involving "egg-sperm contact" (post-January 2023), i.e., heterosexual sexual intercourse. *Id.* Such members are not required to provide any form of documentation of the sexual intercourse that satisfies this policy, nor must they incur *any* out-of-pocket costs, time their sexual intercourse with ovulation, meet any specific definition of "frequent," or otherwise ensure they engage in sexual intercourse under conditions that could result in pregnancy. *Id.* ¶¶33–35. By contrast, an LGBTQ member in a same-sex relationship cannot access fertility benefits unless they first pay out of pocket for and undergo 12 (or six, depending on age) cycles of arduous artificial insemination treatments—a number of cycles that is often contrary to medical advice, and a process that takes longer than 12 months and can be extremely expensive. *Id.* ¶¶4, 7, 28–31, 38–43, 50. Stated plainly, cisgender members in a heterosexual relationship are "taken at their word" that they are "infertile," while LGBTQ members in a same-sex relationship are automatically deemed *ineligible* for otherwise-covered fertility benefits upon identifying their sexual orientation status unless they first spend "additional time and thousands of dollars" *proving* their infertility to Aetna. *Id.* ¶4.

Although Aetna tries to argue this is "at best a disparate impact theory of discrimination,"[9] Mot. at 11 (emphasis omitted), a "sex-differentiated … standard that imposes unequal burdens" on different groups "is disparate treatment," not simply disparate impact. *Frank*, 216 F.3d at 854–55 (holding that imposing "different *and more burdensome* weight standards" for women to meet compared to men constitutes disparate treatment). Because the express terms of Aetna's Infertility Policy impose different and more burdensome standards for access to fertility treatment for people in LGBTQ relationships as compared to those who can have frequent "heterosexual sexual intercourse" with their partners, it discriminates on its face.[10]

Aetna's contention that its Policy is facially neutral because it allows all members, regardless of sexual orientation, to meet its definition of infertility through either heterosexual sexual intercourse or artificial insemination is specious. "Proxy discrimination," or discrimination based on superficially neutral categories fundamentally tied to protected characteristics, "is a form of facial discrimination." *Davis*, 932 F.3d at 837 (quoting *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992)). Engaging in heterosexual sexual intercourse with

[9] The Court should decline Aetna's invitation to opine on whether a disparate impact theory of sex discrimination is cognizable under Section 1557, a question which has not been decided by either the Ninth Circuit or the U.S. Supreme Court. Plaintiff did not plead a disparate impact claim and had no need to do so because the policy she challenges is facially discriminatory.

[10] In its attempt to reframe Plaintiff's theory of discrimination, Aetna relies on out-of-circuit district court decisions that do not bind this Court, and which are readily distinguishable. First, Aetna points to *Polonczyk v. Anthem BlueCross & BlueShield*, 586 F.Supp.3d 648, 656 (E.D. Ky. 2022), in which a district court construed a plan's denial of coverage for certain facial surgeries as applying to all individuals and facially neutral, and thus held that the plaintiff needed additional evidence of intent or deliberate indifference to challenge the "discriminatory consequences" for transgender individuals. *But see Boyden*, 341 F.Supp.3d at 995 (rejecting assumption that cosmetic surgeries for cisgender patients are comparable to gender-affirming surgeries for transgender patients). Here, there is no way to construe the Infertility Policy as doing anything other than applying two distinct standards that treat plan members differently based on sexual orientation and gender identity. *Cf. Hammons*, 2023 WL 121741, at *9 (distinguishing *Polonczyk's* exclusion from a policy prohibiting hysterectomies only when performed for the purposes of gender-affirming care). Defendants' reliance on *Weinreb v. Xerox Business Services*, 323 F. Supp. 3d 501 (S.D.N.Y. 2018), is similarly misplaced. The plan at issue in that case covered the use of fentanyl products only for breakthrough cancer pain, a policy that made no reference to or express distinction based on sex. *Id.* at 516. The court thus held that a plaintiff, who had a sex-specific disease other than cancer and was denied fentanyl under this facially neutral policy, needed to plausibly allege that the insurer intended "to interpret and apply the guidelines in a discriminatory way." *Id.* at 521; *see also Briscoe v. Health Care Serv. Corp.*, 281 F.Supp.3d 725 (N.D. Ill. 2017) (granting motion to dismiss disparate impact claim). By contrast, Aetna's intent here is clear from the terms of the Infertility Policy itself.

a partner is "so closely associated" with sexual orientation "that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). Indeed, the Ninth Circuit recently reiterated that "classifying couples based on 'procreative capacity' instead of sexual orientation" is an unlawful proxy for discrimination on the basis of sexual orientation. *Hecox*, 2023 WL 5283127, at *10 (quoting *Latta v. Otter*, 771 F.3d 456, 467 (9th Cir. 2014)). The Supreme Court, too, has repeatedly recognized that discrimination against people based on the type of sexual intercourse they engage in *is* sexual orientation discrimination. *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings v. Martinez*, 561 U.S. 661, 689 (2010) ("Our decisions have declined to distinguish between status and conduct in this context."); *Lawrence v. Texas,* 539 U.S. 558, 575 (2003) ("When homosexual *conduct* is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual *persons* to discrimination." (emphasis added)). Aetna's discrimination between members who engage in heterosexual intercourse and those who cannot because of their sexual orientation or gender identity is a proxy for sexual orientation discrimination.

Nor can Aetna defend its Policy on the ground that it may also impose burdens on some heterosexual women. *See* Mot. at 10. "Discriminatory laws, policies, or actions will often have negative effects…on individuals who do not belong to the disfavored group," but that alone does not negate the fact that they are discriminatory. *Pac. Shores*, 730 F.3d 1142, 1160 ("The principle that overdiscrimination is prohibited undergirds all of constitutional and statutory anti-discrimination law…."). Here, that Aetna identifies other burdened groups or individuals does not change the fact that the Infertility Policy relies on a distinction between members who have "heterosexual sexual intercourse" with their partners and those who do not.

First, Aetna's reference to "[s]ingle heterosexual women who wish to become parents on their own" is entirely irrelevant to the discrimination analysis here. The relevant inquiry is whether the plaintiff is treated differently than *similarly situated* individuals. *See Bostock*, 140 S.Ct. at 1745; *Fain*, 618 F.Supp.3d at 325–26. For Plaintiff, a cisgender woman who is suffering discrimination based on her sexual orientation and the sex of her partner, the similarly situated

comparator is a woman whose partner is a man, not a woman without a partner at all. *Cf.*
*Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020) ("Like any
other sex-plus plaintiff, a sex-plus-age plaintiff must show unfavorable treatment relative to an
employee of the opposite sex who also shares the 'plus-' characteristic."). *Phillips v. Martin*
*Marietta Corp.*, 400 U.S. 542 (1971) (per curiam) is instructive. In that case, a company policy
that excluded women with young children but not men with young children from certain
positions was facially discriminatory, notwithstanding that the policy did not exclude women
*without* young children (thus treating women without young children and men without young
children the same). *Id.* at 544; *see also Johnson Controls, Inc.*, 499 U.S. at 199 (policy barring
only fertile women, but not fertile men or infertile women, from jobs entailing high levels of lead
exposure was facially discriminatory). Likewise, that Aetna may treat single women of varying
sexual orientations equally poorly does not cure its discriminatory treatment of members with
partners on the basis of their sexual orientation or gender identity.

Aetna's other examples of heterosexual women who may not be able to establish
eligibility for fertility benefits through heterosexual intercourse are equally inapposite. *See* Mot.
at 10. First, for couples who cannot engage in intercourse for certain medical reasons, Aetna's
policy *does* deem IUI to be necessary medical care for them without first requiring that they go
through 12 or six cycles of artificial insemination. *See* Decl. of Connie K. Chan iso Pl.'s Opp'n
("Chan Decl.") (CPB Section D(1)(d): "Aetna considers artificial insemination … to be
medically necessary for treatment of … medically refractory erectile dysfunction or vaginismus
preventing intercourse…."). Second, deployed military personnel and people in platonic
relationships are neither similarly situated to Plaintiff nor protected classes under Section 1557.
Moreover, Aetna offers no basis to conclude that it has any members in these groups seeking
coverage for fertility benefits, nor can this be inferred from anything Plaintiff has alleged.
Regardless, that Aetna contends it subjects some unspecified number of heterosexual women to
disfavored treatment does not make its Infertility Policy facially neutral, where the Policy
exclusively reserves the ability to obtain fertility treatment without out-of-pocket cost to people
who engage in "heterosexual sexual intercourse." *Cf. Pac. Shores*, 730 F.3d at 1160. In *Rice v.*

12

*Cayetano*, 528 U.S. 495 (2000), the Supreme Court rejected an argument analogous to Aetna's. Hawaii argued that a statute favoring descendants of inhabitants of the islands in 1778, who were Polynesian, was not a proxy for race, as it excluded Polynesian people descended from later arrivals along with other races. *Id.* at 514. The Court held that "simply because a class defined by ancestry does not include all members of the race does not suffice to make the classification race neutral." *Id.* at 516–17. Likewise, that Aetna's favored classification does not include all heterosexuals does not make it facially neutral.

Finally, Aetna's argument that its Infertility Policy neutrally applies "conventional medical criteria," Mot. at 11, does not change this analysis. It is irrelevant what Aetna "might call its discriminatory practice, how others might label it, or what else might motivate it" because it treated Plaintiff less favorably because of her sex. *Bostock*, 140 S.Ct. at 1744. *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 707–08 (1978), made clear that a policy informed by medical data that nevertheless treats women less favorably—there, a requirement that women contribute more to pension funds because of their longer average life expectancy— still discriminates because of sex. In any event, even if Aetna's assertion that its Infertility Policy was justified by medical standards were legally relevant to whether the Policy is facially discriminatory (it is not), that assertion should nonetheless be disregarded entirely because it relies on factual assertions regarding "conventional medical criteria" and Aetna's motivations which Plaintiff disputes, which are not found in the Complaint, and which are inappropriate for consideration on a motion to dismiss. Mot. at 5, n.5, 11-12. *See Austin v. Univ. of Or.*, 925 F.3d 1133, 1136 (9th Cir. 2019).

### B. Aetna's Enforcement of Its Policy Intentionally Discriminates Against LGBTQ Members.

Because Aetna's Infertility Policy is facially discriminatory, Plaintiff need not separately allege other facts showing that Aetna acted with invidious intent in order to establish a Section 1557 violation. *See supra* at 8–9. But even if one were to pretend, as Aetna does, that the Infertility Policy is facially neutral, Plaintiff has still pled a plausible case of intentional discrimination. *See Pac. Shores*, 730 F.3d at 1158–59 (explaining courts must engage in

"'sensitive' multi-factor inquiry" into circumstantial and direct evidence to determine whether an action was motivated by discriminatory intent) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977)); *cf. Austin*, 925 F.3d at 1136 (Title IX plaintiff need only satisfy Rule 8(a)'s liberal pleading standard).

Plaintiff alleges that cisgender members in a heterosexual relationship are "taken at their word" that they are "infertile," while LGBTQ members in a same-sex relationships must submit documentation proving that they meet Aetna's definition of infertility. Compl. ¶4; *see Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886) (unequal application of neutral policy is evidence of invidious intent); *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 970 (9th Cir. 2017) (Mem.) (same). Plaintiff also alleges Aetna is aware its discriminatory Policy effectively excludes most LGBTQ members from accessing fertility benefits and causes LGBTQ members profound and disproportionate harm. Compl. ¶¶6, 8; *see Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 464–65 (1979) (foreseeable disproportionate consequences relevant evidence of purposeful discrimination); *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009) (evidence of impact sufficient to create discriminatory inference of intent). Indeed, in February 2021, the New York Department of Financial Services, the state agency that regulates Aetna in New York, issued a bulletin stating explicitly that an insurance policy requiring LGBTQ individuals to "incur costs … that heterosexual individuals do not incur" as a precondition for fertility treatments constitutes "discrimination due to their sexual orientation or gender entity," in violation of state law.[11] Yet rather than revise its Policy, Aetna simply reworded the Policy in an attempt to better insulate itself from discrimination claims. *See* Compl. ¶¶8, 31–32, 42–50, 70–75, 101; *see also Arlington Heights*, 429 U.S. at 267 (history of express discrimination is relevant evidence of invidious purpose). Plaintiff has adequately pled animus,

---

[11] *See* Lisette Johnson, Ins. Circular Letter No. 3, *Health Insurance Coverage of Infertility Treatments Regardless of Sexual Orientation or Gender Identity*, N.Y. Dep't of Fin. Servs. (Feb. 23, 2021), <https://www.dfs.ny.gov/industry_guidance/circular_letters/cl2021_03>. Aetna's accusations of "bootstrapping" are thus wholly unfounded. Mot. at 12. Aetna was not merely "accused of discrimination" by Plaintiff and others, *id.*; rather, a regulatory authority had determined its Infertility Policy was discriminatory long before Plaintiff ever submitted her appeals or any legal challenges to the Policy had been filed.

even though it is not necessary to succeed on her claim.

## II. Aetna's Rule 12(b)(7) Motion Should Be Denied Because Encore Is Not a Necessary Party, Let Alone an Indispensable One.

To meet its burden under Rule 12(b)(7), Aetna must first establish that Encore is a necessary party under Rule 19(a), either because (1) "the court cannot accord complete relief among existing parties" in its absence, Fed. R. Civ. P. 19(a)(1)(A), or (2) Encore has claimed a legally protected interest relating to the subject of the action, and proceeding with the suit in Encore's absence will (a) "impair or impede [Encore's] ability to protect" that claimed interest, or (b) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B). Only if Encore is necessary should the Court then consider whether it is feasible to join Encore. *See Alto*, 738 F.3d at 1126. Finally, only if Encore is both necessary and joinder is infeasible must the Court then "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see Alto*, 738 F.3d at 1126.

Aetna's motion fails at step one. Encore is not necessary to afford Plaintiff the relief she seeks against Aetna, and Encore has not claimed any interest in this litigation, let alone a legally protected one. Because Encore is not a necessary party under either subpart of Rule 19(a)(1), Aetna's Rule 12(b)(7) motion must be denied, and the Court need not reach the considerations under Rule 19(b). *See Alto*, 738 F.3d at 1126; *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 970 (9th Cir. 2008). Even if Encore were a necessary party, dismissal would still be improper because Encore may feasibly be joined and the balance of equities and the public interest favor allowing Plaintiff's claims to proceed.

### A.  Encore Is Not a Necessary Party Under Rule 19(a).

#### 1.  Encore Is Not Necessary to Afford Plaintiff Complete Relief for Her Claims Against Aetna Under Section 1557.

Aetna mischaracterizes Plaintiff's claim as an ERISA one seeking "payment of specific benefits under the Plan" and to "rewrite the terms of the Encore Plan," and argues that Encore is a necessary party because it is the ERISA plan sponsor. Mot. at 15. But Plaintiff does not assert an ERISA claim for benefits pursuant to 29 U.S.C. §1132(a)(1)(B), nor does she seek equitable

15

relief under ERISA pursuant to 29 U.S.C. §1132(a)(3). Rather, Plaintiff asserts a single claim against Aetna under Section 1557. Plaintiff seeks to recover from *Aetna*—not from the plan sponsor—the damages she incurred as a result of *Aetna*'s enforcement of its discriminatory Infertility Policy, as well as an injunction enjoining *Aetna* from continuing to violate Section 1557. Compl., Prayer for Relief ¶¶A-D.[12] Encore is not necessary for either form of relief.

First, Plaintiff seeks damages for Aetna's independent violations of Section 1557, not payment of benefits under the Plan. *See id.* ¶¶100–01, Prayer for Relief ¶¶C–D; *see, e.g.*, *Tovar v. Essentia Health*, 857 F.3d 771, 778 (8th Cir. 2017) (out-of-pocket medical expenses are "traceable to and redressable through damages" from TPA defendants); *Tovar*, 342 F.Supp.3d at 953–54, 956 (TPA liable for damages to plaintiff for being "denied access and receiving delayed access to medically necessary care"). There is no question that Plaintiff and the putative class may obtain complete relief as to Aetna without Encore, even if Encore might also be liable for discrimination. *See Disabled Rts.*, 375 F.3d at 879 (complete relief "is concerned with consummate rather than partial or hollow relief *as to those already parties*") (emphasis added); *Ward*, 791 F.3d at 1048 ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.") (quoting *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (per curiam)); *cf. Lewis v. Clarke*, 581 U.S. 155, 167 (2017) ("a party does not become a required party… under [Rule] 19 simply by virtue of indemnifying one of the named parties").

Aetna does not deny that it is subject to Section 1557, but argues that the language of the Master Services Agreement between itself and Encore ("MSA") vests final responsibility for the Plan with Encore. Mot. at 15, 16 n.14. Plaintiff, however, alleges that Aetna is responsible for designing the discriminatory Infertility Policy and incorporating it into the Plan, and on a motion to dismiss, Plaintiff's allegations must be accepted as true. *See* Compl. ¶¶21–26, 52–62; *Paiute-Shoshone Indians*, 637 F.3d at 996 n.1; *Carr v. United Healthcare Servs. Inc.*, No. C15-1105-MJP, 2016 WL 7716060, at *3–4 (W.D. Wash. May 31, 2016) (rejecting TPA's argument on

---

[12] "[P]rivate plaintiffs may secure injunctive or monetary relief" under Spending Clause statutes that prohibit discrimination, including Section 1557. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1568, 1571 (2022).

motion to dismiss that it had no control over plan, which controverted plaintiff's allegations).[13] Every court to consider the issue has held that, by its plain terms, Section 1557 subjects TPAs to liability for discriminatory benefit design in self-funded plans, even if the plan sponsor may also be liable. *See Tovar*, 857 F.3d at 778 (TPAs may be liable for discriminatory benefit design where the plan terms "originated with" the TPA, even if the plan sponsor "subsequently adopted the plan and maintained control over its terms"); *Tovar*, 342 F.Supp.3d at 954 (same); *Pritchard*, 2022 WL 17788148, at *6 (similar).

Further, even if the discriminatory plan terms did not originate with Aetna and its Infertility Policy, as Plaintiff alleges, Aetna is still liable under Section 1557 for its voluntarily undertaken role as a TPA in administering and enforcing discriminatory coverage terms. *See* Compl. ¶¶52–63. Aetna is no helpless bystander. Aetna voluntarily decided to disregard its legal obligations under Section 1557 and administer and enforce plan terms that discriminate against LGBTQ individuals. *See Pritchard*, 2022 WL 17788148, at *8–9 ("[W]hether Blue Cross provided the Exclusionary language or not is immaterial because Blue Cross has an independent duty to comply with Section 1557."). Regardless of whether the discriminatory Plan design originated with Aetna, Plaintiff has stated a Section 1557 claim against Aetna, and Encore is not necessary to afford Plaintiff and the putative class the damages they seek.

Second, the declaratory and injunctive relief Plaintiff seeks is specifically and narrowly targeted at enjoining only *Aetna's* actions. Plaintiff seeks a declaration that Aetna "violated Plaintiff's and the Classes' rights under Section 1557 of the ACA by virtue of its discriminatory Infertility Policy …," Compl. ¶102, Prayer for Relief ¶A, and an injunction enjoining "[Aetna] from implementing and enforcing Aetna's discriminatory Infertility Policy and from designing, marketing, selling, supplying, issuing, underwriting, or administering plans that include,

---

[13] Aetna implies that its Infertility Policy merely "tracked the definition of infertility in the Encore Plan," Mot. at 5, rather than the other way around, as Plaintiff alleges. But nothing in the record contravenes Plaintiff's allegation that Aetna is the origin of the content of the Infertility Policy, and it strains credulity to suggest that Aetna's Infertility Policy—which is on its website and applies broadly to Aetna-administered plans nationwide, *see* Chan Decl. ¶2 & Exh. A—in fact derived from a definition of infertility originating with Encore, just one of Aetna's innumerable self-insured customers.

incorporate, or rely on any policy that denies equal fertility treatment coverage to individuals who cannot become pregnant through sexual intercourse with their partner because of sexual orientation or gender identity," *id.*, Prayer for Relief ¶B. None of this relief requires Encore's cooperation, and Plaintiff does not seek to enjoin Encore or reform the terms of the Plan. *See Carr*, 2016 WL 7716060, at *1, 4 (plan sponsor not necessary where plaintiff "crafted her relief request such that she may obtain the relief she requests without [the plan sponsor] as a party"). Mere speculation that Aetna, if so enjoined, may choose to terminate its MSA with Encore, or that Encore may choose to terminate the MSA and seek out a different TPA willing to administer discriminatory plan terms, does not make the requested relief against Aetna "partial or hollow." *Disabled Rts.*, 375 F.3d at 879–80 (possibility that defendant may choose to breach its contract with absent party to comply with injunction did not render absent party necessary); *Physics, Materials & Applied Mathematics Rsch. LLC v. Yeak*, No. CV-20-00379-TUC-JCH, 2022 WL 3286585, at *5 (D. Ariz. Aug. 11, 2022) (similar); *see Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) ("possibility" that future officials could seek to enforce challenged policy "does not mean that complete relief is not possible for the plaintiffs, who seek to enjoin only the named defendants [i.e., current officials]"; "[i]f in the future the plaintiffs believe that other officials are acting in violation of federal law, they may bring another action against those officials").

### 2. Encore Has Not Claimed Any Interest in This Litigation, Nor Has Aetna Identified Any Legally Protected Interest Encore Could Claim.

Aetna also argues that Encore is a necessary party under Rule 19(a)(1)(B) because "proceeding without Encore 'may … as a practical matter impair or impede [its] ability to protect' its legal interests." Mot. at 15.[14] But Aetna entirely ignores the "initial requirement" for compulsory joinder under Rule 19(a)(1)(B), namely, "that the absent party *claim* a legally protected interest relating to the subject matter of the action." *Bowen*, 172 F.3d at 689 (quotation

---

[14] Aetna does not argue that failure to join Encore could expose Aetna, an "existing party" in the case, "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Any such argument Aetna may try to make on reply is thus waived.

18

marks and citation omitted; emphasis in original); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043–44 (9th Cir. 1983) (absent party not "necessary" in part because it "never asserted a formal interest in either the subject matter of this action or the action itself"). Aetna offers no evidence that *Encore* itself has claimed an interest here. Encore's failure to assert an interest precludes any argument that it is a necessary party to this action under Rule 19(a)(1)(B). *See, e.g.*, *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020).[15]

In any event, the interests Aetna improperly attempts to assert on Encore's behalf are not "legally protected" interests entitled to protection under Rule 19. To be legally protected, the claimed interest must "be more than a financial stake, and more than speculation about a future event." *See Makah Indian Tribe*, 910 F.2d at 558. This question "normally involves an inquiry into the possibility of the absent party being collaterally estopped in another proceeding." *U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994).

Aetna asserts that "Encore faces the risk of follow-on litigation based on rulings in this case." Mot. at 18. But this risk is no different than the interest Encore might have in a different case asserting Section 1557 claims against a different health insurer or TPA alleging that terms similar to those in the Encore Plan are facially discriminatory. Encore is not in privity with Aetna, and any judgment against Aetna in this case will have no preclusive effect on Encore. *See Ward*, 791 F.3d at 1054 (no legally protected interest where absent party "will not be bound [in subsequent proceedings] by the district court's interpretation" of absent party's contract with consumers) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971)). Indeed, adjudicating Aetna's liability under Section 1557 will not require adjudicating the entirely separate issue of whether Encore (which Plaintiff has no reason to believe, and which Aetna has not suggested, is subject to Section 1557) may lawfully offer its employees an ERISA

---

[15] *See also, e.g.*, *Physics, Materials & Applied Mathematics Rsch*, 2022 WL 3286585, at *6–7 (United States not a necessary party where "no evidence" it had claimed an interest); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV 14-3053-MWF (AFMx), 2018 WL 11241771, at *12–13 (C.D. Cal. Apr. 11, 2018) (denying Rule 12(b)(7) motion).

benefits plan that discriminates on the basis of sex.[16] The mere risk of follow-on litigation—in which Encore will have an opportunity to defend itself—is not the type of interest Rule 19 protects.[17]

Aetna's reliance on cases holding that parties to a contract are necessary to an action seeking to set aside that contract is likewise misplaced. *See* Mot. at 17–18. This suit "is not 'an action to set aside … a contract.'" *Disabled Rts.*, 375 F.3d at 881 (quoting *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002)). Rather, it is an action to enforce Aetna's compliance with Section 1557. As in *Disabled Rights*, nothing in the MSA between Aetna and Encore "requires discrimination on the basis of" sex. *See* 375 F.3d at 881. To the contrary, the MSA allows for ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████" Dkt. 40-2, Exh. A to the Decl. of Robert Goldbeck, MSA §23.02(C). The possibility that an element of the Agreement could be deemed unlawful was clearly anticipated by both Encore and Aetna.[18]

Even if Aetna were to terminate its agreement with Encore (which it need not do to comply with Plaintiff's requested injunction), and even if Encore were unable to find another TPA for its plan, that outcome implicates only a financial interest, which the Ninth Circuit has

---

[16] In *Disabled Rts.*, 375 F.3d at 865–67, the plaintiff sued two private entities that staged a rodeo at a publicly owned arena for violations of Title III of the Americans with Disabilities Act ("ADA"). 375 F.3d at 865–67. Defendants argued that the University System lessor was a necessary party because "judgment in Disabled Rights' favor would amount to a declaration that University System is operating a facility in violation of the ADA." *Id.* at 882. The Ninth Circuit rejected this argument, noting that the University System and private entity defendants were subject to different statutory provisions: "As their respective statutory obligations are not identical, University System is not a necessary party to an adjudication of the extent of the private defendants' compliance with Title III." *Id.* at 882–83.

[17] *Hammons v. Wells Fargo Bank, N.A.*, No. 15-CV-04897-RS, 2015 WL 9258092, at *7 (N.D. Cal. Dec. 18, 2015) and *Weiss v. Perez*, 602 F.Supp.3d 1279, 1294 (N.D. Cal. 2022) do not support Aetna's argument. Both cases discussed the risk that *defendant*, an existing party, could face subsequent litigation subjecting it to the risk of "incurring multiple obligations," rendering the absent party necessary under Rule 19(a)(1)(B)(ii). Aetna has made no such argument here. *See supra* at 18 n.14.

[18] If Plaintiff prevails on her Section 1557 claim against Aetna, only a portion of the MSA will be affected—the obligation to comply with Aetna's discriminatory Infertility Policy and deny claims for fertility coverage made by plan members in LGBTQ relationships. The contract as a whole need not be terminated. *See* MSA §23.02(C).

squarely held is insufficient to establish a "legally protected interest" for purposes of Section 19(a)(2). *See Disabled Rts.*, 375 F.3d at 883 (possibility that "a judgment against Events or Cowboys could dissuade other private entities subject to Title III from entering into agreements with University System for use of the Center" and that "University System stands to lose a valuable source of income" did not give rise to "legally protected interest").[19]

Because Encore is not a necessary party under Rule 19(a)(1), the Court should deny Aetna's motion "at step one." *See Alto*, 738 F.3d at 1126; *Disabled Rts.*, 375 F.3d at 883.[20]

### B. Even If Encore Were a Necessary Party, Dismissal Would Be Improper Because Encore Can Feasibly Be Joined.

Even if Aetna had carried its burden of showing that Encore is necessary under Rule 19(a), the proper result would be to order joinder, not dismissal, because the Court plainly has personal jurisdiction over Encore, and venue in this District is proper. Under California's long-arm statute, which is coextensive with federal due process requirements, a court may exercise specific personal jurisdiction over a non-resident defendant if (1) the defendant "purposefully direct[s] his activities" at "the forum or resident thereof," or "purposefully avails himself of the privilege of conducting activities in the forum"; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–02

---

[19] Aetna argues not only that this financial interest renders Encore a necessary party, but also that *every* plan sponsor has the same interest that "would equally be implicated" by an injunction prohibiting Aetna from enforcing its Infertility Policy. Mot. at 16 n.14. Not only is this class certification argument premature on a motion to dismiss, but it is a misconstruction of Rule 19 that could in practice allow any defendant to avoid class-wide liability—even for a written policy that violates federal law—by entering into enough contracts agreeing to apply the illegal policy to make joinder impossible. This absurd result reinforces the conclusion that the financial interest Encore has here is not the type of protected interest covered by Rule 19.

[20] Aetna's contention that "this case is similar to *Takeda v. Northwestern National Life Insurance Co.*, 765 F.2d 815 (9th Cir. 1985)," Mot. at 18, is far-fetched. In *Takeda*, the plan sponsor was deemed a necessary party because the plaintiff sought payment of benefits under the plan, it was "not clear" from plaintiff's allegations whether the plan sponsor or the claims administrator "made the decisions about which plaintiffs complain," the plan sponsor claimed an interest in the case, and the two parties were "sufficiently close" as to create a significant risk of collateral estoppel. *Id.* at 819–21. Here, Plaintiff is not seeking plan benefits, she has expressly alleged that Aetna is responsible for designing the discriminatory Policy under Section 1557, Encore has not asserted *any* interest in this case, and Aetna has made no argument that it is in privity with Encore; indeed, Aetna asserts not that Encore should be *joined* to this action if feasible but that it should be *substituted* for Aetna. *See* Mot. at 16 n.14.

(9th Cir. 2004) (citation omitted); *see* Fed. R. Civ. P. 4(k)(1)(A).

All three jurisdictional requirements are met here. If required to join Encore, Plaintiff will be able to establish that Encore employs Plaintiff's wife in California and has a designated agent for service of process in California registered with the California Secretary of State, thereby purposefully availing itself of the privilege of conducting business in California. Chan Decl. ¶¶3–4; *see, e.g.*, *Mewawalla v. Middleman*, 601 F.Supp.3d 574, 595 (N.D. Cal. 2022) (citing cases). Plaintiff's Section 1557 claim against Aetna arises from the Plan to which she is a beneficiary by virtue of her wife's employment by Encore in California, thereby arising from Encore's California-related activities. Compl. ¶¶13, 52–53. Where a plaintiff's claim arises from a defendant's activities purposefully directed to California, the exercise of jurisdiction is presumptively reasonable and comports with fair play and substantial justice. *See Sher v. Johnson*, 911 F.2d 1357, 1364–65 (9th Cir. 1990).[21] And because "a substantial part of the acts complained of occurred in the Northern District of California," Compl. ¶11, venue in this District is likewise proper. *See* 28 U.S.C. §1391(b)(2).[22] Accordingly, if the Court were to determine that Encore is a necessary party for any reason, the proper result would be to order joinder of Encore, not to dismiss the case. *See* Fed. R. Civ. P. 19(a)(2).[23]

### C.  Even If Joinder of Encore Were Not Feasible, Equity and Good Conscience Preclude Dismissal Under Rule 19(b).

Even if it were not feasible to join Encore, "equity and good conscience" would render it improper to dismiss this action under Rule 19(b). The Rule 19(b) inquiry "is a practical one and fact specific … and is designed to avoid the harsh results of rigid application." *Makah Indian Tribe*, 910 F.2d at 558. Courts balance: "(1) prejudice to any party or to the absent party; (2)

---

[21] Because all requirements for specific personal jurisdiction are satisfied, it is irrelevant whether "Encore is registered in Delaware and maintains its primary office in Illinois" and the "Encore Plan was created in Illinois"—facts that Aetna simply asserts without evidence. Mot. at 15–16.

[22] Aetna cites a provision in the MSA between Encore and Aetna specifying "that 'sole and exclusive venue' shall lie in Delaware," Mot. at 16, but that provision is inapplicable to Plaintiff, who is not a party to the MSA and is not asserting any rights thereunder.

[23] At minimum, if there is any doubt, Plaintiff should be granted leave to amend her complaint to allege facts establishing personal jurisdiction over Encore. *See, e.g.*, *Wilson v. Metals USA, Inc.*, No. CIV S-12-0568 LKK, 2012 WL 5932990, at *9–10 (E.D. Cal. Nov. 27, 2012).

whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not

complete, can be awarded without the absent party; and (4) whether there exists an alternative

forum." *Kescoli v. Babbitt*, 101 F.3d 1304, 1310–11 (9th Cir. 1996); *see* Fed. R. Civ. P. 19(b).

Here, the factors weigh heavily against dismissal. The first factor is largely duplicative of

Rule 19(a)(1)(B)(i). *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024–25 (9th Cir.

2002). As explained, this is a civil rights lawsuit, not an ERISA action seeking to recover plan

benefits, and Encore has not asserted any legally protected interests in this litigation that would

be prejudiced by nonjoinder. *See supra* at 16. Aetna's ERISA cases, none of which involve

claims under Section 1557 or analogous statutes, are thus inapposite.[24] Nor is this an action to

"set aside a contract," *see supra* at 20, and Aetna's reliance on contracts cases is likewise

misplaced.[25] The second and third factors also weigh against dismissal, because to the extent any

portion of the injunctive relief Plaintiff seeks could be construed as impacting Encore's legally

protected interests, any injunction could be shaped to lessen such prejudice. *See Makah Indian*

*Tribe*, 910 F.2d at 560 ("The Supreme Court has encouraged shaping relief to avoid dismissal.")

(citing *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111–12 (1968)).

Finally, Aetna offers no alternative forum, arguing that this case must be dismissed entirely; this

---

[24] *See Sypher v. Aetna Ins. Co.*, No. 13-10007, 2014 WL 1230028, at *1, 4 (E.D. Mich. Mar. 25, 2014) ("an ERISA case … seeking payment of long-term disability benefits"); *Cuevas v. Joint Benefit Tr.*, No. 13-CV-00045-JST, 2013 WL 3578496, at *1 (N.D. Cal. July 12, 2013) (involving an "action for violations of ERISA"); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F.Supp.3d 1110 (C.D. Cal. 2015) (holding that plaintiffs bringing ERISA claims may properly sue the plan or plan administrators, among other defendants); *cf. In re Lowenschuss*, 171 F.3d 673, 677 (9th Cir. 1999) (holding pension plan trustee could intervene in bankruptcy action that implicated whether the plan was ERISA-qualified at all). *Baird v. Blackrock Institutional Tr. Co., N.A.*, No. 17-CV-01892-HSG, 2020 WL 7389772 (N.D. Cal. Feb. 11, 2020), another ERISA case, is also readily distinguishable. There, plaintiffs' breach-of-fiduciary-duty claims turned on the reasonableness of different fee structures defendant independently negotiated with each plan fiduciary, thus defeating class certification. *Id.* at *5, *10–12. Here, whether Aetna's Policy facially discriminates in violation of Section 1557 does not depend on any underlying negotiations with Encore, and in any event Plaintiff alleges Aetna incorporates the Policy by default into plans, without independent negotiation. Compl. ¶¶22, 26.

[25] *See Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) (an action "to void [a] lease"); *Kermanshah v. Kermanshah*, No. 08-CV-409, 2010 WL 1904135, at *3 (S.D.N.Y. May 11, 2010) (holding all parties to a contract necessary to an action by plaintiff—one contracting party—seeking to enjoin any reduction in his interests under the contract).

factor, too, weighs strongly against dismissal. *See id.*[26]

Dismissal would also be improper because this action falls within the "public rights" exception to joinder. *See Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1998). Under that doctrine, a necessary party will not be deemed "indispensable" if (1) the litigation "transcend[s] the private interests of the litigants and seek[s] to vindicate a public right" and (2) the litigation does "not destroy the legal entitlements of the absent parties," even if it "may adversely affect the absent parties' interests." *Kescoli*, 101 F.3d at 1311 (quotation marks omitted); *see, e.g.*, *Conner*, 848 F.2d at 1442, 1460-61 (third-party lessees not indispensable to action seeking compliance with National Environmental Policy Act and Endangered Species Act in particular leases, even though injunction requiring compliance might deprive them of their right to specific performance or create delays in implementation, because contracts themselves "were not invalidated and further actions construing rights under them [were] not precluded"). The public interest exception applies here because Plaintiff is seeking to vindicate a public right to "access to and coverage of health care in a nondiscriminatory manner" under Section 1557. *Notice of Proposed Rulemaking, Nondiscrimination in Health Programs and Activities*, 87 Fed. Reg. 47,824, 47,825 (Aug. 4, 2022). This action will also not destroy Encore's rights. Even if an injunction against Aetna did affect administration of the Plan, it would not invalidate any contracts or destroy Encore's ability to assert its rights vis-à-vis Aetna under the MSA.

**III.  ERISA Does Not Preempt Plaintiff's Section 1557 Claim.**

Aetna's argument that Plaintiff's Section 1557 claim is barred by §302 of ERISA (codified at 29 U.S.C. §1132(a)(1)(B)) ignores that ERISA *does not preempt other federal claims*. ERISA's text expressly provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States …." 29 U.S.C. §1144(d). Accordingly, as multiple courts have held, ERISA does not preempt Section 1557 claims. *See, e.g.*, *Pritchard*, 2022 WL 17788148, at *8 (requirement under ERISA that a TPA "make decisions in 'accordance with the documents and instruments governing the plan,'

---

[26] The *Takeda* court relied on the availability of state court as an alternative forum, 765 F.2d at 821, whereas here the claims are solely federal.

29 U.S.C. §1104(a)(1)(D), … must not be construed to 'invalidate or impair' Section 1557, 29 U.S.C. §1144(d).”); *Scott v. St. Louis Univ. Hosp.*, 600 F.Supp.3d 956, 960 (E.D. Mo. 2022); *Tovar*, 342 F.Supp.3d at 954 (“The Court will not construe ERISA to impair Section 1557.”).[27]

Aetna tries to distinguish these cases by misconstruing Plaintiff's claim as seeking to recover under the Plan, rather than challenging a discriminatory policy. *See* Mot. at 20. Again, Plaintiff does not contend that Aetna incorrectly administered the Plan, nor is Plaintiff seeking to recover benefits. Rather, Plaintiff claims that Aetna's definition of infertility denies her and other class members equal access to “coverage for fertility treatments [that would] *otherwise* [be] covered by their plans” but for their or their partner's sexual orientation or gender identity, in violation of Section 1557. Compl. ¶27 (emphasis added).[28] That claim is not ERISA-preempted.

**IV.  Defendants' Attempt to Dismiss Aetna Inc. Under Rule 12(b)(6) Is Improper.**

Aetna Inc. seeks dismissal based entirely on extraneous material not properly considered under Rule 12(b)(6). *See* Mot. at 20-21; *Khoja*, 899 F.3d at 998.[29] Plaintiff's allegations are all pled jointly against both Defendants. *See* Compl. ¶¶1, 52. Plaintiff states a claim against both. *See Taylor v. Accredited Home Lenders, Inc.*, 580 F.Supp.2d 1062, 1070-71 (S.D. Cal. 2008).

### CONCLUSION

For all the foregoing reasons, Aetna's motion to dismiss should be denied.

---

[27] Aetna cites no case holding that a *federal* claim, like Section 1557, is ERISA-preempted. Both *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 42–43 (1987) and *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 633 (9th Cir. 1990) addressed only preemption of state common law claims. *See* Mot. at 19. And in quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), Aetna omits that the full sentence reads: “[A]ny *state-law cause of action* that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.” 542 U.S. at 209 (emphasis added).

[28] Even if Plaintiff *were* seeking to recover benefits under the plan (and if other federal law claims could be preempted by ERISA, which they cannot), her claim would still survive. Even state law claims are not preempted by Section 502 unless “there is no other independent legal duty that is implicated by a defendant's actions.” *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011). Aetna cannot meet that standard—and notably does not even attempt to do so—as Section 1557 creates such an independent legal duty on Aetna.

[29] Plaintiff moves to strike the Declaration of Craig Alloca. *See, e.g.*, *City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1060 (N.D. Cal. 2012) (striking extraneous declarations). At minimum, if the Court were to consider the Alloca Declaration and convert Aetna's motion into one for summary judgment, Plaintiff should be granted an opportunity to take discovery before the Court rules. *See* Fed. R. Civ. P. 56(d).

Respectfully submitted,

Dated: September 1, 2023

ALTSHULER BERZON LLP
Barbara J. Chisholm
Danielle E. Leonard
Connie K. Chan
Robin S. Tholin

LIU PETERSON-FISHER LLP
Rebecca Peterson-Fisher
Jennifer L. Liu
C. Leah Kennedy

NATIONAL WOMEN'S LAW CENTER
Michelle Banker (admitted *pro hac vice*)
Alison Tanner (admitted *pro hac vice*)
Noel León (admitted *pro hac vice*)
Sudria Twyman (admitted *pro hac vice*)

By:     */s/ Connie K. Chan*
            Connie K. Chan

*Attorneys for Plaintiff and the Putative Class*