UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARA BERTON,<br><br>        Plaintiff,<br><br>v.<br><br>AETNA INC., et al.,<br><br>        Defendants. | Case No. 23-cv-01849-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTIONS TO SEAL**<br><br>Re: Dkt. No. 40, 41, 44 |

Before the Court is Defendants' motion to dismiss. Dkt. No. 40. The Court held a hearing on the motion. Dkt. No. 52. Defendants and Plaintiff also filed administrative motions to seal. *See* Dkt. Nos. 41, 44. For the following reasons, the Court DENIES Defendants' motion to dismiss, and GRANTS in part and DENIES in part the motions to seal.

**I.  BACKGROUND**

Plaintiff Mara Berton is a 32-year-old woman married to her wife, June Higginbotham. Compl. ¶ 5. Plaintiff alleges that she and her wife are enrolled in an employer health plan administered by Defendants Aetna Inc. and Aetna Life Insurance Company (collectively, "Defendants"). *Id.* ¶ 13. Plaintiff and her wife want to have children but cannot become pregnant through intercourse with one another. *Id.* ¶ 5. Plaintiff alleges that when she sought to become pregnant through intrauterine insemination ("IUI") – the most common form of artificial insemination – Defendants "enforced its discriminatory Infertility Policy" and denied her coverage for that treatment. *Id.* According to Plaintiff, she was denied coverage because she is "in a same-sex relationship." *Id.*

Plaintiff alleges that Defendants' Health Plan (the "Plan") provides members with unequal access to fertility benefits. *Id.* ¶ 19. Specifically, Plaintiff alleges that the Infertility Policy (the "Policy") discriminates on the basis of sexual orientation by placing additional burdens on couples

in same-sex partnerships. Under the Plan, a member cannot receive coverage for fertility treatments, such as IUI, until the member is determined to be infertile. Prior to January 2023, the Infertility Policy stated:

> For purposes of this policy, a member is considered infertile if he or she is unable to conceive or produce conception after 1 year of frequent, unprotected heterosexual sexual intercourse, or 6 months of frequent, unprotected heterosexual sexual intercourse if the female partner is 35 years of age or older. Alternately, a woman without a male partner may be considered infertile if she is unable to conceive or produce conception after at least 12 cycles of donor insemination (6 cycles for women 35 years of age or older).

Compl. ¶ 28. According to Plaintiff, this meant that Defendants provided two ways for members under the age of 35 to meet the definition of infertility. Members could show one year of unprotected heterosexual sex, or show 12 cycles of "donor insemination." *Id*. ¶ 29. Plaintiff alleges that this gave heterosexual couples the option to establish infertility in either of the two ways, while giving same-sex couples only one avenue to do so (participation in 12 cycles of donor insemination).

Plaintiff alleges that in January 2023, Defendants altered the language but not the substance of the definition of "infertile" in the Infertility Policy. The revised Policy provided:

> For purposes of this policy, a person is considered infertile if unable to conceive or produce conception after 1 year of egg-sperm contact when the female attempting conception is under 35 years of age, or after 6 months [of] egg-sperm contact when the female attempting conception is 35 years of age or older. Egg-sperm contact can be achieved by frequent sexual intercourse or through monthly cycles of timed sperm insemination (intrauterine, intracervical, or intravaginal). This definition applies to all individuals regardless of sexual orientation or the presence/availability of a reproductive partner.

*Id*. ¶ 30. Plaintiff contends that notwithstanding the removal of the word "heterosexual" and the reference to a "woman without a male partner" in the post-January 2023 Policy, the Infertility Policy continues to discriminate against LGBTQ members by imposing on them different and more onerous barriers to fertility treatment access than apply to heterosexual couples. *Id*. ¶ 32. According to Plaintiff, Defendants' Policy does not impose out of pocket costs on heterosexual couples, because they can demonstrate infertility by simply *representing* that they have had 12 months of frequent intercourse. But because same-sex couples cannot demonstrate infertility through intercourse, they must do so through proof that they have gone through 12 cycles of donor

2

1    insemination.  Plaintiff alleges that each cycle "costs at least hundreds of dollars" and requires the
2    patient to undergo intrusive procedures.  Compl. ¶¶ 40–42.
3       Plaintiff filed a one-count complaint on behalf of herself and those similarly situated.  Dkt.
4    No. 1.  Plaintiff's complaint alleges that Defendants discriminated in a health care program or
5    activity on the basis of sex in violation of Section 1557 of the Patient Protection and Affordable
6    Care Act.  Defendants now move to dismiss the complaint.  Dkt. No. 40.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### B. Rule 12(b)(7)

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). This rule is designed "to protect the interests of absent parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial determinations or the impairment of interests or rights." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991). Rule 19 requires a three-step inquiry: (1) whether the absent party is necessary under Rule 19(a) (i.e., required to be joined if feasible); (2) if so, whether it is feasible to order that absent party be joined; and (3) if joinder is not feasible, whether the case can proceed without the absent party or whether it must be dismissed. *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(7) for failure to join an indispensable party. The Court denies Defendants' motion on both grounds.

### A. Defendants' 12(b)(6) Motion

Defendants move to dismiss under Rule 12(b)(6) on two bases.[1] First, Defendants argue that Plaintiff fails to state a claim of intentional discrimination under Section 1557. *See* Mot. at 9. Second, Defendants argue that Aetna, Inc. is not a proper party and should be dismissed. *See id*. at. 20.

#### i. Discrimination Under Section 1557

Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116, prohibits covered health insurers from discriminating based on a number of characteristics, including sex. *Schmitt v. Kaiser Foundation Health Plan of Washington*, 965 F.3d 945, 950 (9th

---

[1] Defendants initially argued a third Rule 12(b)(6) basis for dismissal: that Plaintiff's claim was foreclosed because ERISA provides the exclusive grounds for relief. *See* Mot. at 19. However, Plaintiff's opposition makes clear that she "does not contend that [Defendants] incorrectly administered the Plan, nor is Plaintiff seeking to recover benefits" under the Plan. Opp. at 25. Given this clarification, Defendants appear to abandon their third argument and no longer seek to dismiss Plaintiff's claim under this theory since "Plaintiff is not seeking ERISA benefits." Reply at 10.

4

Cir. 2020). Section 1557 provides that "an individual shall not, on the ground prohibited under . . . . four enumerated statutes . . ., be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity" receiving federal funding, "including . . . contracts of insurance." *Id.* (internal brackets omitted). Section 1557 incorporates the anti-discrimination provision of Title IX, thus prohibiting discrimination on the basis of sex. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1208 (9th Cir. 2020). Discrimination based on sexual orientation is also unlawful under Title IX and Section 1557. *See Doe v. Snyder*, 28 F.4th 103, 113–15 (9th Cir. 2022) (finding that the Supreme Court's holding in *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731 (2020), that Title VII prohibits discrimination against employees because of their gay or transgender status also applies to Title IX and Section 1557 claims).

A plaintiff states a viable claim for sex discrimination under Title IX, and by extension Section 1557, by plausibly alleging that: (1) the defendant is a healthcare program that receives federal financial assistance; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of healthcare services; and (3) this treatment occurred on the basis of sex. *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020). The plaintiff must plead nonconclusory allegations plausibly linking the alleged discrimination to her protected status, in this case sexual orientation. *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

A plaintiff may also demonstrate that she was subjected to discriminatory treatment under Section 1557 by alleging that a policy, on its face, applies less favorably to one gender. *Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602, 608 (9th Cir. 1982). Where a claim of discriminatory treatment is based upon facial discrimination, a plaintiff "need not otherwise establish the presence of discriminatory intent." *Id*; *see also Serv. Women's Action Network v. Mattis*, 352 F. Supp.3d 977, 988 (N.D. Cal. 2018) (holding that where a case "involves a facially discriminatory policy that treats men and women differently," there is "no need to inquire into the deliberative process and discern intent and motive").

Plaintiff argues that her complaint adequately alleges that Defendants discriminated and continue to discriminate on the basis of sexual orientation by "designing, selling, and/or

5

administering health plans" which impose significantly more burdensome requirements on same-sex partnerships than opposite-sex partnerships in establishing infertility. Opp. at 7. Plaintiff contends that if she were heterosexual, Defendants' Plan would afford her a "cost-free avenue to coverage for fertility treatment." *Id*. Defendants argue that the Plan and Infertility Policy on their face do not draw any distinctions based on protected status and do not uniquely burden LGBTQ members. Reply at 3–4.

At this stage, the Court need only decide whether Plaintiff has pled sufficient facts to "state a claim upon which relief can be granted." The Court finds that she has. Plaintiff alleges that on its face, the Policy imposes inherently different and more demanding burdens on same-sex partners. Prior to January 2023, the Policy defined a person as infertile if they were unable to conceive after "1 year of frequent, unprotected heterosexual sexual intercourse." Compl. ¶ 28. Alternatively, a woman without a male partner was considered infertile if she was unable to conceive "after at least 12 cycles of donor insemination." *Id*. Plaintiff alleges that "Aetna altered the language but not the substance of its definition of 'infertile' in January 2023." *Id*. at ¶ 30. Under the revised definition, a person is considered infertile if they are "unable to conceive or produce conception after 1 year of egg-sperm contact." *Id*. The Policy outlines that "[e]gg-sperm contact can be achieved by frequent sexual intercourse or through monthly cycles of timed sperm insemination (intrauterine, intracervical, or intravaginal)." *Id*. Plaintiff's complaint alleges that the post-January 2023 Policy continues to "discriminate against LGBTQ Class Members by imposing on them different and egregiously more onerous barriers to fertility treatment access than it applies to individuals in heterosexual couples." *Id*. at ¶ 32. The face of the Policy allows individuals in heterosexual partnerships to show infertility without incurring any out-of-pocket costs, because they have the option of doing so through "frequent sexual intercourse." To make this showing, heterosexual couples are not required to "provide any form of documentation," nor do they have to satisfy "further requirements with respect to timing, frequency, or effectiveness of intercourse." *Id*. at ¶ 35. But same-sex partners have only one way to demonstrate infertility: they must go through expensive cycles of donor insemination, for which they are required to provide verifiable proof. *See id*. at ¶¶ 41–42. Plaintiff plausibly alleges that this differential treatment on

the basis of sexual orientation is facially discriminatory because it imposes an unequal burden on same-sex couples as compared to opposite-sex couples. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000) (holding that United Airlines' weight policy was facially discriminatory because it created a "sex-differentiated" standard that "impose[d] unequal burdens on men and women"). Accordingly, Plaintiff has adequately pled that she was discriminated against in a health care program or activity on the basis of sex in violation of Section 1557. *See Snyder*, 28 F.4th at 114 (applying *Bostock* and holding that discrimination on the basis of sexual orientation constitutes discrimination "because of sex").

Defendants contend that Plaintiff's characterization of the Policy is not faithful to the actual language in the Policy. Reply at 3. Defendants argue that "the policy makes no reference to 'cisgender members,' 'heterosexual relationships,' 'LGBTQ members,' or 'same-sex relationships,'" and does not base its definition "on a member's sex or sexual orientation." *Id*. at 3–4. But the exclusion of these terms is not determinative as to the Policy's real-world effect. *See Hecox v. Little*, 79 F.4th 1009, 1024 (9th Cir. 2020) (rejecting argument that because statute "uses 'biological sex' in place of the word 'transgender,' it is not targeted at excluding transgender girls and women"); *Latta v. Otter*, 771 F.3d 456, 467–68 (9th Cir. 2014) (holding that Idaho and Nevada laws that banned same-sex marriage discriminated on the basis of sexual orientation, even though the laws did so by classifying couples based on "procreative capacity" instead of sexual orientation). Even if the Policy does not explicitly refer to LGBTQ members, as a practical matter, as alleged it "applies less favorably" to same-sex partners. *Gerdom*, 692 F.3d at 608; *Comm. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007) ("A facially discriminatory policy is one which on its face applies less favorably to a protected group."); *E.E.O.C. v. Local 350, Plumbers and Pipefitters*, 998 F.2d 641, 645 (9th Cir. 1992) (noting that a facially discriminatory policy is one that treats similarly situated persons differently). Accordingly, at this stage, Plaintiff has adequately pled a Section 1557 claim and the motion to dismiss on this ground is DENIED.

### ii.    As Pled, Aetna Inc. is a Proper Party

Defendants also argue that because Aetna Inc. is a holding company that has no insurance

1    operations or products, is not licensed to sell insurance, and has no role in the administration of
2    Aetna health insurance plans, it should be dismissed from this suit.  Mot. at 20.  To support this
3    position, Defendants rely on a declaration from an Aetna Inc. executive who represents that Aetna
4    Inc. is not licensed to sell and does not sell insurance or insurance products.  Dkt. No. 40-1,
5    Allocca Decl. ¶¶ 10–11.

6    Generally, district courts may not consider material outside the pleadings when assessing
7    the sufficiency of a complaint under Rule 12(b)(6).  *Khoja v. Orexigen Therapeutics, Inc.*, 899
8    F.3d 988, 998 (9th Cir. 2018).  When the legal sufficiency of a complaint's allegations is tested by
9    a 12(b)(6) motion, "[r]eview is limited to the complaint" and "[a]ll factual allegations set forth in
10   the complaint are taken as true and construed in the light most favorable to [p]laintiffs."  *Lee v.*
11   *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citations
12   omitted).  Accordingly, the Court will not consider Defendants' declaration in ruling on the Rule
13   12(b)(6) motion.

14   Defendants also argue that even if the Court does not consider the declaration, Aetna Inc.
15   should be dismissed because "Plaintiff includes no specific factual allegations concerning Aetna
16   Inc." and "the vast majority of Plaintiff's allegations . . . could not possibly apply to Aetna Inc."
17   Reply at 15.  However, the complaint specifically alleges that the Plan is "an employer-funded
18   plan marketed, sold, and administered by Aetna Inc."  Compl. ¶ 52.  The complaint alleges that
19   this Plan is discriminatory and that both Aetna Inc. and Aetna Life Insurance are responsible for
20   the discriminatory nature of the Plan.  Given these allegations, the parties' factual dispute as to
21   whether Aetna Inc. actually administers the Plan is not properly resolved at this stage.  *Lee*, 250
22   F.3d at 688.  Accordingly, Defendants' motion to dismiss on this ground is also DENIED.

23   **B.     Defendants' 12(b)(7) Motion**

24   Defendant also argues that the complaint should be dismissed under Rule 12(b)(7) because
25   Plaintiff did not and cannot join an indispensable party, Encore (the sponsor of the self-funded
26   plan).  Plaintiff responds that dismissal is unwarranted because Encore is not a necessary party,
27   and that even if it were, it could feasibly be joined.  Opp. at 15.  At this stage, the Court agrees
28   with Plaintiff that Encore is not a necessary party.

8

To determine whether a case may proceed without an absent party, the Court asks: (1) is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?; (2) if so, is it feasible to order joinder of the absent party?; and (3) if joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed? *Salt River,* 672 F.3d at 1179.

### i. Necessary Party

Under Rule 19(a), a party is "necessary" if "in that person's absence, the court cannot accord complete relief among the existing parties" or "that person claims an interest relating to the subject of the action" such that it would "impair or impede the person's ability to protect the interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)–(B).

Defendants contend that Encore is a necessary party because the Court cannot accord complete relief among the existing parties. Reply at 11. Defendants argue that Plaintiff is seeking to enjoin Defendants from implementing and enforcing the Infertility Policy, and posit that this cannot be done without the Plan sponsor – Encore – given that it decides which benefits to offer. *See id.* To support this position, Defendants cite to the Master Services Agreement, which states that Encore "retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder."[2] Dkt. No. 40-2, Goldbeck Decl., Art. 3.01. Plaintiff, on the other hand, argues that she can obtain complete relief from Defendants without Encore. Opp. at 16. First, Plaintiff argues that she is solely seeking to enjoin Aetna from "designing, marketing, selling, supplying, issuing, underwriting, or administering" any plan that has discriminatory infertility policies, and that no order directed to Encore is needed for the Court to provide that relief. *Id.* at 16 – 17. Further, Plaintiff argues that she is seeking to recover damages from Aetna

---

[2] On a Rule 12(b)(7) motion, the Court may consider evidence outside of the pleadings. *Potter v. Chevron Prods. Co.*, 2018 WL 4053448, at *4 (N.D. Cal. Aug. 24, 2018) (citing *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *see also Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990) (noting that "the moving party has the burden of persuasion in arguing for dismissal").

9

1   as a result of its own enforcement of the Infertility Policy, which would not require Encore's

2   presence either. *Id*. at 15.

3     Complete relief "is concerned with consummate rather than partial or hollow relief as to

4   those already parties, and with precluding multiple lawsuits on the same cause of action." *Alto v.*

5   *Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) (quoting *Disabled Rights Action Comm. v. Las Vegas*

6   *Events, Inc.*, 375 F.3d 861, 879 (9th Cir.2004)). "To be 'complete,' relief must be meaningful

7   relief as between the parties." *Id*. (internal quotation marks omitted).

8     At a minimum, meaningful relief could be granted by ordering the current Defendants to

9   pay damages based on their own actions. Plaintiff seeks compensatory and punitive damages for

10  Defendants' alleged violation of Section 1557. Defendants do not appear to contend that a

11  damages award against them would be "hollow [or] meaningless." *Disabled Rights*, 375 F.3d at

12  880. And clearly, even without Encore as a party, the Court can order Defendants to pay damages.

13  While the Court may revisit this issue once a more complete factual record is developed, at the

14  pleading stage, the Court cannot say as a matter of law that Plaintiff necessarily would be unable

15  obtain complete relief without Encore as a party. Accordingly, the Court finds that Encore is not a

16  necessary party, and thus it does not need to decide whether joinder is feasible. *See Alto*, 738 F.3d

17  at 1126 ("Only if we determine that the Band is a required party do we proceed to the second Rule

18  19 inquiry: whether joinder is feasible.").[3]

19    Defendants' 12(b)(7) motion to dismiss is DENIED.

20  **IV.   MOTIONS TO SEAL**

21    **A.   Legal standard**

22    Courts generally apply a "compelling reasons" standard when considering motions to seal

23  documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*

---

[3] Defendants argue that Plaintiff cannot obtain complete injunctive relief without Encore. On this point, the Court admits that it is not entirely certain what an injunction solely against Aetna would accomplish, given that Aetna very likely cannot unilaterally alter the benefits to which Plaintiff is entitled under the Plan without Encore. But for pleading purposes, Plaintiff has done enough to establish that she can obtain meaningful relief. Plaintiff seeks to enjoin Defendants themselves from "designing, marketing, selling, supplying, issuing, underwriting, or administering" discriminatory plans. The specific contours of what exactly that relief would look like can be addressed at a later stage of the case.

*v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id*. (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id*. at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*.

The Court must "balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[ ] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law ... The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

### B. Defendants' Motion to Seal

Defendants seek to file under seal in whole or in part multiple exhibits attached to their motion to dismiss (Exhibit A to the Declaration of Robert Goldbeck ("Goldbeck Declaration") and portions of Exhibits A-F to the Declaration of Donna Lynch ("Lynch Declaration")). Dkt. No. 41. Because Defendants move to file exhibits attached to a dispositive motion, the Court will apply

1    the compelling reasons standard.

2          The Goldbeck Declaration attaches the Master Services Agreement ("MSA") between

3    Encore and Aetna.  Defendants seek to seal the entirety of the MSA, claiming that public

4    disclosure of the agreement would result in harm to them by providing other customers with

5    access to the specific terms of Aetna's agreement with Encore. *Id*. at 3.  But as Plaintiff points

6    out, Defendants extensively quote portions of the MSA in their publicly-filed motion to dismiss.

7    Civil Local Rule 79-5(a) requires a party to "avoid wherever possible sealing entire documents (as

8    opposed to merely redacting the truly sensitive information in a document)."  Given their own

9    public disclosure of certain provisions of the MSA, Defendants do not convincingly explain why

10   the entire MSA, including the provisions they already publicly disclosed as part of their

11   affirmative attack on the complaint, is appropriately sealed. *See Ehret v. Uber Tech., Inc.*, No. 14-

12   cv-00113, 2015 WL 12977024, at *3 (N.D. Cal. December 2, 2015) (denying motion to seal

13   because "there is little privacy interest [where] Plaintiff has already publicly filed exhibits").  And

14   more generally, Defendants have not explained why the whole document needs to be sealed, as

15   opposed to redacting any truly competitively sensitive information in it (such as, for example,

16   specific payment rates or amounts).  Defendants' motion to seal the entire MSA is thus denied.

17         Second, Defendants move to seal portions of the attachments to the Lynch Declaration.

18   The Lynch Declaration attaches correspondence between Plaintiff and Defendants relating to

19   Plaintiff's request for health benefits.  Mot. at 4.  Defendants argue that the targeted portions of the

20   documents to be redacted contain protected health information "because they identify the medical

21   provider from which Plaintiff sought fertility treatment," and also contain "Plaintiff's home

22   address, telephone number, and other personally-identifiable information in which she holds a

23   privacy interest." *Id*.  The Court agrees that the targeted healthcare and personally-identifiable

24   information identified by Defendants satisfies the compelling reasons standard. *See California*

25   *Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, No. 19-CV-02417-LHK, 2021 WL

26   1146216, at *3 (N.D. Cal. Feb. 12, 2021) ("Courts have repeatedly concluded that the need to

27   keep personal health information confidential outweighs the presumption in favor of public access

28   to court records."); *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2007 WL

3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("The Ninth Circuit has found that compelling reasons exist to keep personal information confidential to protect an individual's privacy interest and to prevent exposure to harm or identity theft."). Defendants' motion to seal the identified portions of the exhibits attached to the Lynch Declaration is granted.

Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART.

### C. Plaintiff's Motion to Seal

Plaintiff moves to seal a small part of her opposition to the motion to dismiss. *See* Dkt. No. 44. More specifically, Plaintiff seeks to redact a single sentence in her opposition which quotes the MSA to support her argument that the MSA "requires discrimination on the basis of sex." Dkt. 45 at 20. Civil Local Rule 79-5(e) provides that "[o]nly in rare circumstances should a party seek to file portions of a pleading or brief under seal." Given the Court's finding that the MSA should not be filed under seal, Plaintiff's motion is likewise DENIED.

### V. CONCLUSION

The Court **DENIES** Defendants' motion to dismiss for failure to state a claim and for failure to join a necessary party under. *See* Dkt. No. 40.

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to seal. Dkt. No. 41. The Court denies the motion with respect to the MSA but grants the motion with respect to redacting portions of Plaintiff's health records and personally identifiable information.

The Court **DENIES** Plaintiff's motion to seal. Dkt. No. 44.

The Court **DIRECTS** the parties to file public versions of all documents for which the proposed sealing has been denied within ten days from the date of this order. Alternatively, Defendants may file a renewed motion targeted to seal only specific, identified portions of the MSA containing truly sensitive information. *See* Civ. L.R. 79-5. Any renewed motion must not seek to seal portions of the MSA already publicly disclosed by Defendants in their motion to dismiss. Failure to timely file a renewed motion consistent with this order will result in the public filing of the entire unredacted MSA.

//
//
//

13

The Court further **SETS** a telephonic case management conference for March 19, 2024 at 2:00pm. The Court further **DIRECTS** the parties to submit a joint case management statement by March 12, 2024. All counsel shall use the following dial-in information to access the call:

Dial-in: 888-808-6929

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. All attorneys appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated:   2/29/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge