Barbara J. Chisholm (SBN 224656)
Danielle E. Leonard (SBN 208201)
Connie K. Chan (SBN 284230)
Robin S. Tholin (SBN 344845)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
Email:bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com
cchan@altshulerberzon.com
rtholin@altshulerberzon.com

Michelle Banker (admitted pro hac vice)
Alison Tanner (admitted pro hac vice)
Noel León (admitted pro hac vice)
**NATIONAL WOMEN'S LAW CENTER**
1350 I Street NW, Suite 700
Washington, DC 20005
Tel: (202) 588-5180
Email: mbanker@nwlc.org
atanner@nwlc.org
nleon@nwlc.org

Rebecca Peterson-Fisher (SBN 255359)
Jennifer L. Liu (SBN 279370)
**KATZ BANKS KUMIN LLP**
235 Montgomery St. Suite 665
San Francisco, CA 94104
Tel: (415) 813-3260
Fax: (415) 813-2495
Email: peterson-fisher@katzbanks.com
liu@katzbanks.com

Hugh Baran (admitted pro hac vice)
**KATZ BANKS KUMIN LLP**
111 Broadway, Suite 1702
New York, NY 10006
Tel: (646) 759-4501
Fax: (646) 759-4502
Email: baran@katzbanks.com

Marilyn Robb (admitted pro hac vice)
**KATZ BANKS KUMIN LLP**
11 Dupont Circle NW, Suite 600
Washington, DC 20036
Tel: (202) 299-1140
Fax: (202) 299-1148
Email: robb@katzbanks.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARA BERTON, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AETNA INC. and AETNA LIFE INSURANCE COMPANY,<br><br>    Defendants. | Case No. 4:23-cv-01849-HSG<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:   November 6, 2025, 2:00 p.m.<br>Location:   Courtroom 2<br>Filed:       September 30, 2025 |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... - 1 -

II.    OVERVIEW OF INVESTIGATION AND LITIGATION ................................... - 2 -

    A.  Denial of Aetna's Motion to Dismiss ........................................ - 3 -

    B.  Discovery and Investigation ..................................................... - 3 -

    C.  Settlement Negotiations ........................................................... - 3 -

III.   SUMMARY OF SETTLEMENT TERMS ...................................................... - 3 -

    A.  Overview .................................................................................. - 3 -

    B.  Definition of Settlement Classes and Explanation for Differences Between Settlement Class and Class Proposed in Complaint ................... - 4 -

        1.  National Injunctive Relief Class ..................................... - 4 -

        2.  California Damages Class ............................................... - 5 -

    C.  Injunctive Relief for the National Injunctive Relief Class .......................... - 7 -

    D.  Monetary Relief for the California Damages Class .................................... - 8 -

        1.  Default or Pro Rata Payments ......................................... - 9 -

        2.  Dollars for Benefits Payments ........................................ - 9 -

        3.  Special Harms Payments ................................................ - 9 -

        4.  Redistribution Payments ................................................ - 9 -

        5.  Comparison of Gross Settlement to Maximum Theoretical Recovery .................................................................... - 10 -

        6.  Scope of Release and Relationship to Complaint ........................ - 11 -

    E.  Attorneys' Fees, Service Awards, and Administration ............................. - 11 -

        1.  Attorneys' Fees and Litigation Costs ............................. - 11 -

        2.  Class Representative Service Award ............................. - 12 -

        3.  Settlement Claims Administrator and Special Master ................. - 12 -

        4.  Settlement Approval and Administration Schedule ...................... - 12 -

IV.    ARGUMENT ................................................................................................ - 13 -

    A.    The Proposed National Injunctive Relief Class and the Proposed California Damages Class Meet the Requirements of Rule 23(a) for Certification. ....................................................................................... - 14 -

        1.    Numerosity. ............................................................................... - 14 -

        2.    Commonality ............................................................................. - 14 -

        3.    Typicality .................................................................................. - 14 -

        4.    Adequate Representation ........................................................... - 15 -

    B.    The National Injunctive Relief Class Meets the Requirements of Rule 23(b)(2). ...................................................................................... - 16 -

    C.    The California Damages Class Meets the Requirements of Rule 23(b)(3). ................................................................................................ - 16 -

        1.    Predominance of Common Questions ....................................... - 16 -

        2.    Superiority ................................................................................. - 16 -

    D.    The Settlement Meets the Requirements for Preliminary Approval. ............................................................................................. - 17 -

        1.    The Settlement Is the Product of Non-Collusive Negotiations. ............................................................................. - 17 -

        2.    The Settlement Has No Obvious Deficiencies. ............................. - 17 -

        3.    The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representative or Segments of the Class. ......................................................................................... - 18 -

        4.    The Settlement Falls Within the Range of Possible Approval. ................................................................................... - 19 -

    E.    Class Recovery Compared with Maximum Theoretical Recovery and Explanation of Discounts. ...................................................... - 20 -

    F.    The Settlement Meets the Requirements for Final Approval. .................. - 21 -

        1.    Strength of the Plaintiff's Case. ................................................ - 21 -

        2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation. ................................................................... - 22 -

        3.    Risk of Maintaining Class Action Status Through Trial. ............. - 22 -

4.    Amount Offered in This Settlement and Comparable Cases. ........................................................................... - 22 -

5.    Extent of Discovery Completed and Stage of the Proceedings. ................................................................. - 24 -

6.    Experience and Views of Counsel; Comparable Outcomes. ................................................................. - 24 -

G.    The Proposed Notice and Settlement Procedure Are Appropriate. .......... - 24 -

V.    CONCLUSION ................................................................. - 25 -

# TABLE OF AUTHORITIES

## Cases

*Altamirano v. Shaw Indus., Inc.*
    No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015).............19, 20
*Amchem Prod., Inc. v. Windsor*
    521 U.S. 591, 620 (1997)...........................................................17
*Bayat v. Bank of the W.*
    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015).....................22
*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015).....................................................20
*Castillo v. Bank of Am., NA*
    980 F.3d 723 (9th Cir. 2020)........................................................14
*Churchill Vill., L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004)......................................................25
*Cummings v. Premier Rehab Keller, P.L.L.C.*
    596 U.S. 212 (2022).................................................................10
*De La Torre v. CashCall, Inc.*
    No. 08-CV-03174-MEJ, 2017 WL 2670699 (N.D. Cal. June 21, 2017).................14
*Deaver v. Compass Bank*
    No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015).................20
*DZ Reserve v. Meta Platforms, Inc.*
    96 F.4th 1223 (9th Cir. 2024)....................................................15, 17
*Gatchalian v. Atl. Recovery Sols., LLC*
    No. 22-CV-04108-JSC, 2023 WL 8007107 (N.D. Cal. Nov. 16, 2023).................14
*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998).......................................12, 14, 15, 16
*In re Bluetooth Headset Prod. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011).......................................................16
*In re Heritage Bond Litig.*
    546 F.3d 667 (9th Cir. 2008)......................................................13
*In re Lenovo Adware Litig.*
    No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018)...............16
*Jacob v. Pride Transp., Inc.*
    No. 16-CV-06781-BLF, 2018 WL 1411136 (N.D. Cal. Mar. 21, 2018).................14
*Lemus v. H & R Block Enters. LLC*
    2012 WL 3638550 (N.D. Cal. Aug. 22, 2012)........................................19
*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998)......................................................24
*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)......................................................15
*Marlo v. United Parcel Serv., Inc.*
    639 F.3d 942 (9th Cir. 2011).......................................................22
*Moore v. Verizon Commc'ns Inc.*
    No. C 09-1823 SBA, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014).....................12
*Nen Thio v. Genji, LLC*
    14 F. Supp. 3d 1324 (N.D. Cal. 2014)................................................18
*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*
    688 F.2d 615 (9th Cir. 1982).......................................................20
*Rannis v. Recchia*
    380 F. App'x 646 (9th Cir. 2010)....................................................14
*Ross v. U.S. Bank Nat. Ass'n*
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010).......................................19
*Satchell v. Fed. Express Corp.*

Nos. C03–2659 SI & C 03–2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)..18
*Shields v. World Aquatics*
Nos. 23-15092 & 23-15156, 2024 WL 4211477 (9th Cir. Sept. 17, 2024)………....17
*Taylor v. FedEx Freight, Inc.*
No. 1:13-cv-01137-DAD, 2016 WL 6038949 (E.D. Cal. Oct. 13, 2016)……………..19
*Tovar v. Essentia Health*
342 F. Supp. 3d 947 (D. Minn. 2018)………………………………………………19
*Tyson Foods, Inc. v. Bouaphakeo*
577 U.S. 442 (2016)………………………………………………………………16
*Vazquez v. Coast Valley Roofing, Inc.*
670 F. Supp. 2d 1114 (E.D. Cal. 2009)……………………………………………20
*In re VNGR Beverage, LLC Litig.*
No. 24-cv-03229-HSG, 2025 WL 1489714 (N.D. Cal. May 23, 2025)………………13
*Wade v. Univ. Med. Ctr. of S. Nev.*
No. 2:18-cv-1927-RFB-EJY, 2023 WL 9598746 (D. Nev. Feb. 13, 2023)………10, 21
*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011)………………………………………………………………..12
*York v. Starbucks Corp.*
No. CV 08-07919 GAF (PJWx), 2013 WL 12113220 (C.D. Cal. Oct. 29, 2013)……19

**Statutes**

42 U.S.C. § 18116(a)……………………………………………………………….1, 3

**Other Authorities**

*Lack of Racial and Ethnic Diversity in Cryopreserved Donor Sperm in the United States*
Gibbs, Lauren et al., Fertility and Sterility, Volume 120, Issue 4, e108………...……24
U.S. DIST. CT. N.D. CAL., PROCEDURAL GUIDANCE FOR
CLASS ACTION SETTLEMENTS (2024)……………………………………………..18

**Rules**

Fed. R. Civ. P. 12(b)(6)…………………………………..………………………………3
Fed. R. Civ. P. 12(b)(7)……………………………………………………………… 3
Fed. R. Civ. P. 23(a)(1)……………………………………………………………14
Fed. R. Civ. P. 23(a)(2)……………………………………………………………14
Fed. R. Civ. P. 23(a)(4)……………………………………………………………15
Fed. R. Civ. P. 23(b)(2)…………………………………………………………..5, 13, 16
Fed. R. Civ. P. 23(b)(3………………………………………………….6, 13, 16, 17
Fed. R. Civ. P. 23(c)(2)(B)……………………………………………………...25
Fed. R. Civ. P. 23(e)..........................................................................................2
Fed. R. Civ. P. 23(e)(2)……………………………………..………………………..13

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 6, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-entitled Court, Plaintiff MARA BERTON, on behalf of herself and others similarly situated ("Class Members"), will and hereby does move this Court pursuant to Federal Rule of Civil Procedure sections 23(a), (b)(2), (b)(3), and (e) for an order: (i) preliminarily approving the proposed class action settlement entered into between Plaintiff and Defendants Aetna Inc. and Aetna Life Insurance Co. ("Settlement"), a copy of which is attached as Exhibit A to the Declaration of Rebecca Peterson-Fisher, submitted herewith; (ii) provisionally certifying the settlement Classes; (iii) appointing Plaintiff as Class Representative of both Classes; (iv) appointing Plaintiff's Counsel as Class Counsel for both Classes; (v) appointing Atticus Administration LLC ("Atticus") as Settlement Administrator; (vi) appointing the Hon. Steven Gold as Special Master; directing the Settlement Administrator to provide notice to class members as set forth in the Settlement; (vii) setting a final fairness hearing to finally determine whether the proposed Settlement should be approved as a fair, reasonable, and adequate settlement of the claims encompassed by the Settlement and to determine whether to grant Class Counsel's forthcoming motion for attorney's fees and costs and a service award to Plaintiff; and (viii) granting such other and further relief as this Court deems just and proper. Defendants do not oppose this motion.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Mara Berton, Rebecca Peterson-Fisher, Connie Chan, and Alison Tanner in Support of Motion for Order Provisionally Certifying Settlement Class and Preliminarily Approving Class Settlement filed herewith, any reply memoranda or other papers Plaintiff may file, all pleadings, and oral arguments on the motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Mara Berton ("Class Representative" or "Named Plaintiff") seeks preliminary approval of a class action settlement ("the Settlement") with Defendants Aetna Inc. and Aetna Life Insurance Co. (collectively, "Aetna") that includes an estimated monetary recovery of $11,408 per person as well as important policy changes. Plaintiff's Complaint alleges a single cause of action for discrimination in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), on behalf of a California Damages Class and a National Injunctive Relief Class. The Complaint alleges that Aetna designed, sold, and administered health benefit plans that facially discriminated on the basis of sex, including sexual orientation and/or gender identity, in the provision of fertility benefits. Plaintiff alleges that Aetna  imposed different and significantly more burdensome requirements on plan members in LGBTQ+ relationships seeking to become pregnant than on cisgender members in heterosexual relationships pursuant to the definition of infertility set forth in Aetna's Clinical Policy Bulletin No. 327 ("CPB No. 327") (the "Definition of Infertility").[1] ECF 1 ¶¶ 1–7; *see also* ECF 70 at 4–7.  The proposed settlement ("Settlement") is an excellent result for both Classes, as it provides nationwide injunctive relief and virtually full monetary compensation.

The Settlement will ensure that going forward, LGBTQ+ couples on Aetna plans will be treated equitably with respect to coverage for infertility treatment in compliance with Section 1557.  The Settlement makes nationally enforceable a critical policy change achieved in a parallel New York class case: the classification of intrauterine insemination ("IUI") and intracervical insemination ("ICI") as standard diagnostic medical benefits covered on equal terms for all commercial plan members.  Further, the Settlement requires, for the first time, additional revisions to CPB 327 to specify that plan members in LGBTQ+ relationships are not required to undergo any greater number of ovulation cycles to qualify for in vitro fertilization (IVF) coverage, and that the limited availability of a plan member's chosen sperm may be

---

[1] "Definition of Infertility" means the definition of infertility in Aetna's CPB No. 327 or in mirroring self-funded plan definitions in effect when the Complaint was filed, which required individuals without a sperm-producing partner to undergo 6 or 12 cycles of IUI (i.e., "donor insemination" or "timed sperm insemination (intrauterine, intracervical, or intravaginal)"), depending on the individual's age, in order to establish unexplained infertility and qualify for healthcare coverage of infertility services. See, e.g., ECF No. 1 ¶¶ 28–32.

considered by Aetna's medical directors for the purpose of qualifying for IVF coverage. Decl. of Rebecca Peterson-Fisher in Support of Motion for Preliminary Approval ("Peterson-Fisher Decl.") Ex. A ¶¶ 62–63.[2] *see also* Tanner Decl. ¶ 54; Declaration of Mara Berton in Support of Motion for Preliminary Approval ("Berton Decl.") ¶ 8.

The Settlement also provides a nearly-full monetary recovery for Californians who incurred out-of-pocket expenses and other damages as a result of the Definition of Infertility. All California Damages Class Members are entitled to $10,000 if the California Damages Class size is 175 or less ("Default Payment")—which the Parties expect to be the case—or a pro rata share of a $1.75 million common fund if the class size exceeds 175 ("Pro Rata Payment"). Peterson-Fisher Decl. Ex. A ¶ 24, 48, 72; Tanner Decl. ¶ 60. Class Members will also have their claims reprocessed by Aetna and will receive a default "Dollars for Benefits" payment of $1,408 ("Dollars for Benefits Payment"), or higher Dollars for Benefits Payment up to the limit of their plan's coverage. *Id.* ¶ 71. Finally, Class Members who incurred higher out-of-pocket expenses or suffered other harms will be able to apply for additional payments from a $250,000 Special Harms Fund ("Special Harms Payment"). *Id.* ¶ 73. Separately, Aetna will pay for the costs of the settlement administrator and a Special Master, *id.* ¶¶ 97, 109, and (subject to Court approval) a Class Representative Service Award, and Class Counsel's attorneys' fees and costs, *id.* ¶¶ 108, 115.

The Settlement represents an outstanding result for the Classes. Plaintiff now moves under FRCP 23(e) for preliminary approval of the Settlement and conditional certification of the Settlement Classes. For the reasons set forth below, the Settlement should be preliminarily approved, Class Members should be provided notice of the Settlement and an opportunity to object or request exclusion, and the Court should set a date for a Final Approval hearing.

## II.     OVERVIEW OF INVESTIGATION AND LITIGATION

Plaintiff sued Aetna on April 17, 2023, seeking prospective relief on behalf of a Rule 23(b)(2) National Injunctive Relief Class and damages on behalf of a Rule 23(b)(3) California Damages Class. ECF 1 at ¶ 76. Plaintiff asserted a single cause of action for discrimination in healthcare on the basis of sex in violation of Section 1557 of the ACA, 42 U.S.C. § 18116 (a). *Id.*

---

[2] All exhibits are to the Peterson-Fisher Declaration unless otherwise specified. Commercial plans include all plans that rely on and utilize Aetna's CPB NO. 327 and Aetna Life Insurance Company's claims processing systems and procedures. Ex. A ¶ 20.

¶¶ 95–102.

### A. Denial of Aetna's Motion to Dismiss

On July 24, 2023, Defendants moved to dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(6) and 12(b)(7). ECF 40. On February 29, 2024 the Court denied Defendants' motion in full, concluding that: (1) Plaintiff plausibly stated a claim under Section 1557, finding she had plausibly alleged Aetna's policy was facially discriminatory; (2), (2) Plaintiff's health plan's sponsor is not a necessary party, and, (3) as pled, Aetna Inc. is a proper party. ECF 70. Aetna answered Plaintiff's Complaint on March 14, 2024. ECF 75.

### B. Discovery and Investigation

Between May 2024 and February 2025, Plaintiff conducted substantial discovery, including interrogatories and requests for production of documents, in response to which Aetna produced thousands of pages of responsive materials. Peterson-Fisher Decl. ¶ 28. Class Counsel also conducted their own investigation into the costs of the relevant fertility services to determine the out-of-pocket costs likely incurred by potential class members, obtaining information from 21 California clinics. *Id.* ¶ 29. In advance of mediation, to obtain an estimate of the number of Class Members, the Parties agreed to utilize the same methods to identify potential California Damages Class Members from Aetna's documents and databases as were developed in *Goidel.* *Id.* ¶ 31.

### C. Settlement Negotiations

Settlement negotiations were conducted vigorously and at arm's-length. *Id.* ¶ 33. The Parties participated in three full-day mediations with the Honorable Steven M. Gold, a well-known mediator who served as a United States Magistrate Judge for the Eastern District of New York. *Id.* The Parties reached an agreement in principle at the third mediation and executed a detailed term sheet on May 23, 2025. *Id.* ¶ 34. Thereafter, the Parties reviewed proposals from multiple settlement claims administrators, created the proposed notices and claims form, and jointly drafted a detailed long-form Settlement Agreement, Exhibit A. *Id.* ¶¶ 35–36.

### III. SUMMARY OF SETTLEMENT TERMS

### A. Overview

The Settlement provides nationwide injunctive relief for a National Injunctive Relief Class and monetary relief for a California Damages Class valued at approximately $11,408 per

California Damages Class Member. To be a member of either of the Classes, an individual must be in or have been in an Eligible LGBTQ+ Relationship at the time of seeking fertility services. The Settlement defines an Eligible LGBTQ+ Relationship as:

> a personal relationship (but not including a surrogacy relationship) involving two individuals who, at the time of seeking services, self-identify as 'LGBGT+,' meaning lesbian, gay, bisexual, transgender, queer, intersex, and/or nonbinary, consisting of one individual with a uterus and another individual incapable of producing viable sperm due to being assigned the female sex at birth, being intersex, or having been assigned the male sex at birth and having transitioned or being in the process of transitioning to the female gender.

*Id.* Ex. A ¶ 29.[3] Because Aetna does not as a general matter keep records of plan members' sexual orientation, the Settlement includes a claims-made process and notice will be sent directly to all individuals who Aetna's records reflect are potential class members, as well as published in media whose target audience is the LGBTQ+ community, including social media ad placements. *See id.* ¶ 38. For those individuals whose Aetna member files confirm that they made a claim for fertility benefits that was denied during the class period and were in an Eligible LGBTQ+ Relationship at the time they sought coverage for IUI/ICI ("Category A" class members), class members will automatically participate in the Settlement unless they timely opt out. All other potential California Damages Class members (Categories "B," "C," "D-A" and "D-B") will be required to establish their eligibility to participate in the Settlement by filing claims. Based on the claims rate in the *Goidel* settlement, Plaintiff estimates the ultimate class size will be between 100 and 175. *See* Tanner Decl. ¶ 60; Peterson-Fisher Decl. ¶ 80. California Damages Class Members will likely each receive at least $11,408, and may receive more if they incurred higher medical expenses or suffered significant other harm compensable under the ACA.

## B. Definition of Settlement Classes and Explanation for Differences Between Settlement Class and Class Proposed in Complaint

### 1. National Injunctive Relief Class

The Parties have agreed to seek the preliminary certification of the following injunctive

---

[3] "'Incapable of producing viable sperm' is intended to include circumstances in which, due to gender dysphoria, sperm production and/or intercourse resulting in egg-sperm contact are clinically inadvisable." *Id.* ¶ 29. Where any question is raised by the Settlement Administrator or either Party regarding whether a potential class member meets the criteria for an Eligible LGBTQ+ Relationship, the Parties agree to meet and confer and attempt to reach consensus as to the eligibility of that individual to participate in the Settlement. *Id.* If unable to reach consensus, the Parties agree to submit the dispute to the Special Master, whose decision shall be binding. *Id.*

1   settlement class pursuant to FRCP 23(b)(2):

> Individuals with uteruses in an Eligible LGBTQ+ Relationship who are currently or will be covered during the Class Period for the National Injunctive Relief Class by a commercial health plan provided or administered by Aetna Life Insurance Company in the United States that includes fertility benefits and (1) who meet the clinical criteria for fertility services under the currently operative or any subsequent version of CPB No. 327 other than the criteria challenged in this Civil Action and (2) who currently or will in the future want to obtain coverage for intrauterine ("IUI") or intracervical insemination ("ICI"), or request a form of IVF consistent with Advanced Reproductive Technology ("ART") coverage pursuant to Aetna's clinical policy requiring trials of less invasive therapeutic approaches as defined in CPB No. 327.

Ex. A. ¶ 37. The Class Period for the National Injunctive Relief Class is April 17, 2019, through four years after the date of judgment. *Id.* ¶ 38.

The Complaint defined the National Injunctive Relief Class as "All LGBTQ individuals with uteruses who are or will be Members of an Aetna health plan in the United States that includes fertility benefits and incorporates the Infertility Policy." ECF 1, ¶ 77. The Settlement's definition of "Eligible LGBTQ+ Relationship" clarifies that surrogates are not Class Members and appropriately limits the scope of the Class to exclude individuals who do not meet the other clinical criteria for coverage not challenged in this lawsuit. Peterson-Fisher Decl. ¶ 41. The Settlement is also limited to "commercial health plans," which includes all plans that rely on and utilize Aetna's CPB 327 and Aetna Life Insurance Company's claims processing systems and procedures. Ex. A ¶ 20. Finally, the Complaint's class definition assumed that Aetna would continue to use the Definition of Infertility in place at the time the Complaint was filed; however, during this litigation, Aetna further revised CPB 327 to be consistent with the American Society for Reproductive Medicine's definition of infertility and the terms of the *Goidel* settlement. Peterson-Fisher Decl. ¶ 42. Thus, the Settlement defines the National Injunctive Relief Class not by reference to the no-longer-operative Definition of Infertility but instead to include LGBTQ+ members whose Aetna plans offer fertility treatment coverage and who are seeking or will in the future seek fertility treatment. *Id.*

## 2.  California Damages Class

The Parties also have agreed to seek preliminary certification of the following damages settlement class pursuant to FRCP 23(b)(3) (the "California Damages Settlement Class"):

> All California Commercial Plan members: (1) who were covered during the California Damages Class Period and at the time of service by a plan that offered coverage for

infertility treatments; (2) for whom there is not a reason, other than the Definition of Infertility, why the individual did not qualify for coverage for infertility treatments obtained under the individual's healthcare plan; (3) who meet the criteria for Categories A, B, C, or D as set forth below; and (4) who, if members of Categories B, C, or D, file any Attestation and/or Claim Form Submission required by the Settlement Agreement to participate in the Settlement.

Category A:  Category A class members consist of California residents whose Aetna member files contain a denial of a precertification or claim request for one of an agreed-upon set of IUI/ICI codes and whose member files contain information to suggest they were a person with a uterus in an Eligible LGBTQ+ Relationship at the time they sought coverage for IUI/ICI.  Category A members will receive notice of the settlement and will be automatically entitled for all payments unless they opt out.

Category B:  Potential Category B California Damages Class Members consist of California residents whose Aetna member files contain a denial of a precertification or claim request for one of an agreed-upon set of IUI/ICI codes and whose Aetna member files do not indicate they were in a heterosexual relationship at the time they sought coverage. These individuals will receive notice and an opportunity to submit an Attestation certifying they were individuals with uteruses in an Eligible LGBTQ+ Relationship at the time they sought IUI/ICI coverage.  The people who submit an Attestation and meet the other eligibility criteria in this Agreement will be Category B California Damages Class Members entitled to receive settlement payments (as set forth in Part D below).

Category C:  Potential Category C Class Members who will receive direct notice are Aetna members who were either denied or approved for an agreed-upon set of IVF codes during the Class Period. In addition to direct notice to Potential Category C Class Members, the Parties will issue publication notice via an agreed-upon set of publications and/or social media sites. The people who respond with (1) an Attestation certifying they were individuals with uteruses in an Eligible LGBTQ+ Relationship at the time of seeking services during the Class Period, and (2) a Claim Form setting forth evidence satisfactory to the Parties of out-of-pocket costs incurred for IUI/ICI during the Class Period, will be Category C California Damages Class Members entitled to receive settlement payments.

Category D:  Potential Category D Class Members consist of California residents whose Aetna member files contain a denial of a precertification or claim request for one of an agreed-upon set of IUI/ICI codes and whose Aetna member files establish that the individual had a denial that was followed by an approval within 90 days, or was otherwise paid by Aetna. There are two subcategories of potential California Damages Class Members within D:

    i.    Category D-A is made up of individuals with uteruses whose Aetna member files contain information to suggest they were in an Eligible LGBTQ+ Relationship at the time they sought coverage;

   ii.    Category D-B is made up of individuals with uteruses whose Aetna member files do not indicate they were in a heterosexual relationship at the time they sought coverage.

Potential members of Category D will receive notice and an opportunity to submit a Claim Form setting forth satisfactory evidence of out-of-pocket costs incurred for IUI/ICI during the Class Period, and for potential members of D-B an Attestation confirming they were individuals with uteruses in an Eligible LGBTQ+ Relationship at the time of seeking services during the Class Period.  Individuals who demonstrate eligibility are Category D California Damages Class Members entitled to settlement payments.

*See id.* ¶ 43. The Class Period for the California Damages Class is April 17, 2019, through December 31, 2024. *Id.* ¶ 44.

The Complaint defined the California Damages Class as:

> All LGBTQ individuals with uteruses who, at any time in the last four years, are or were Members of an Aetna health plan in California that included fertility benefits and incorporated Aetna's Infertility Policy, and who incurred out-of-pocket expenses and/or other compensable damages as a result of Aetna's Infertility Policy.

ECF 1 ¶ 78.

A claims-made process is necessary to identify most Class Members. Peterson-Fisher Decl. ¶ 31; *see* Tanner Decl. ¶ 58. Aetna does not systematically keep records of plan members' sexual orientations, therefore, attestations that Class Members were in Eligible LGBTQ relationships when they sought services are necessary except where Aetna's records indicate sexual orientation (Category A Class Members). *See* Tanner Decl. ¶ 58(c); Peterson-Fisher Decl. ¶ 46. Further, individuals who were deterred from even submitting a request for precertification or a claim for coverage because of the Definition of Infertility and paid out-of-pocket are unaccounted for in Aetna's preauthorization and claim records. *See* Tanner Decl. ¶ 59. These "Category C Class Members" must submit an attestation and evidence of out-of-pocket expenses for at least one cycle of IUI or ICI to receive Settlement Awards. *See* Peterson-Fisher Decl. ¶ 46; Ex. A ¶ 70(c).

### C. Injunctive Relief for the National Injunctive Relief Class

The injunctive relief for the National Injunctive Relief Class will ensure that that no current or future Aetna commercial health benefits plan member with a uterus who is in an Eligible LGBTQ+ Relationship will be denied equitable access to coverage for fertility treatment. As part of the *Goidel* settlement, Aetna agreed to implement a new policy making IUI and ICI diagnostic and standard medical benefits under its fully insured commercial plans and to propose such changes to its self-funded commercial plans upon renewal or initiation ("the New IUI Policy"). Tanner Decl. ¶ 52. Under the New IUI Policy, no medical necessity determination is required for coverage for IUI and ICI, making coverage for the procedures available to all plan members without precertification. *Id.* However, the *Goidel* class was limited to New York residents, and its injunctive relief was only enforceable in New York. *Id.* ¶ 50.

The Settlement here requires Aetna to implement the New IUI Policy nationwide, *id.* ¶ 53, as well as make further nationwide changes to CPB 327 which ensure that individuals with uteruses

who are in Eligible LGBTQ+ Relationships at the time of seeking services are not required to undergo any greater number of ovulation cycles to qualify for IVF than individuals with uteruses who are in heterosexual relationships. Peterson-Fisher Decl. ¶ 49. Aetna will also revise CPB 327 to ensure that Aetna's medical directors can consider the limited availability of plan members' chosen sperm for purposes of qualifying for IVF coverage, alongside other relevant clinical criteria. *Id.* Finally, Aetna will further revise CPB 327 to ensure that that individuals who have previously met the criteria set forth in CPB No. 327 for Advanced Reproductive Technology ("ART," which includes IVF) coverage will not be required to undergo additional cycles of artificial insemination before qualifying for ART coverage for subsequent attempts at pregnancy. *Id.*

These changes will be made to all fully insured Aetna plans. Peterson-Fisher Decl. ¶ 50. Additionally, Aetna will propose the New IUI Policy to new or renewing self-funded commercial plan sponsors that otherwise provide coverage for infertility services. Ex. A ¶ 64. If such a plan sponsor requests to deviate from the New IUI Policy or maintains a plan that does not conform to the changes to CPB 327 outlined above, Aetna will request (unless a sponsor uses a contracting process rendering a request impractical) to include a clause in its contract with that self-funded plan sponsor that requires the self-funded plan sponsor to indemnify Aetna for any costs incurred related to the defense against, or judgment or settlement resolving, any claims brought in connection with that self-funded plan sponsor requiring individuals in Eligible LGBTQ+ Relationships to pay more or to wait longer for infertility services than individuals with a sperm-producing partner. *Id.* This provision is intended to deter self-funded plans from refusing to adopt Aetna's revised CPB 327. Peterson-Fisher Decl. ¶ 50.

**D.  Monetary Relief for the California Damages Class**

Class Members will receive meaningful compensation under the Settlement Agreement, in an amount anticipated to total at least $11,408 per person if the Class is fewer than 175 members. All Class Members will receive Default or Pro Rata Payments and Default Dollars for Benefits Payments (unless their claims have already been reprocessed and reimbursed), and those who provide evidence of greater expenses or other harm will receive Special Harms awards and/or higher Dollars for Benefits awards. If the Special Harms Common Fund is not exhausted, all Class

Members will also receive a pro rata Redistribution Payment. Below, we describe each component of this financial relief in detail.

### 1.  Default or Pro Rata Payments

The Default or Pro Rata Payments (depending on final class size) are intended to compensate Class Members for out-of-pocket expenditures (1) for fertility treatment that would have been avoided and/or covered but for the Definition of Infertility, and (2) for delay in receiving treatment. If there are 175 or fewer California Damages Class Members, each Class Member will receive a Default Payment of $10,000. Ex. A ¶¶ 24, 72. If more than 175 eligible Class Members participate in the settlement, Aetna will establish a Primary Common Fund equal to $1,750,000 to be distributed *pro rata* to all Class Members, in which case, instead of a Default Payment, each Class Member will receive a Pro-Rata Payment equal to $1,750,000 divided by the total number of Class Members. *Id.* ¶ 48, 72.

### 2.  Dollars for Benefits Payments

California Damages Class Members will also receive Default Dollars for Benefits Payments of $1,408, to be paid directly by Aetna, on top of the Default/Pro Rata Payment. *Id.* ¶ 71. Dollars for Benefits Payments are intended to compensate Class Members for the amount Aetna would have paid providers for their IUI treatments had they been covered. Peterson-Fisher Decl. ¶ 53. The Default Dollars for Benefits Payment is based on an estimate that Class Members on average underwent 4.5 cycles of IUI which were not covered.  *Id.*

### 3.  Special Harms Payments

Aetna will fund a Special Harms Common Fund equal to $250,000. Ex. A ¶¶ 56, 73, 110. The purpose of the Special Harms Common Fund is to compensate Class Members who experienced greater harm as a result of Aetna's allegedly unlawful Definition of Infertility than would be compensated by the Dollars for Benefits Payment and Default/Pro Rata Payment. Peterson-Fisher Decl. ¶ 54. Special Harms Payments will be determined by a Special Master according to the Allocation Plan. Ex. A ¶¶ 57, 73.

### 4.  Redistribution Payments

If money remains in the Special Harms Fund after all allocations have been made by the Special Master, those funds shall be redistributed to all California Damages Class Members on a

1   pro rata basis (the "Redistribution Payments").

2   **5. Comparison of Gross Settlement to Maximum Theoretical Recovery**

3   Although Plaintiff cannot estimate the maximum theoretical recovery for the California

4   Damages Class as a whole because the number of Class Members is presently unknown, the

5   Settlement is structured to provide each individual Class Member virtually all of their individual

6   maximum theoretical recovery.

7   Compensatory damages are recoverable under Section 1557. *See Cummings v. Premier*

8   *Rehab Keller, P.L.L.C.* 596 U.S. 212, 220–21 (2022). Class Members' individual maximum

9   theoretical recovery thus could include economic damages, compensation for delay in receiving

10  treatment, damages for pain and suffering, nominal damages, and other consequential damages.

11  *See Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 956 (D. Minn. 2018) (permitting Plaintiff's

12  son to seek damages for "being denied access and receiving delayed access to medically necessary

13  care" under Section 1557); *Wade v. Univ. Med. Ctr. of S. Nev.*, No. 2:18-cv-1927-RFB-EJY, 2023

14  WL 9598746, at *3–5 (D. Nev. Feb. 13, 2023) (holding a Section 1557 plaintiff can seek

15  consequential damages, damages for physical pain and suffering, and nominal damages).

16  All Class Members will receive compensation for economic damages. Because Class

17  Members did not have insurance coverage for IUI due to the Definition of Infertility, they could

18  not access the care they needed within the deductible or co-payment terms in their health benefits

19  plan. Instead, Class Members paid providers out-of-pocket and at market rates rather than group

20  rates negotiated by Aetna. Based on Class Counsel's investigation, *see* Peterson-Fisher Decl. ¶ 29,

21  Plaintiff estimates that the average cost for an unmedicated IUI cycle not covered by insurance at

22  a California clinic is $1,795 and the average cost for a medicated cycle is $3,656. *Id.* ¶ 53. If Class

23  Members on average underwent three unmedicated cycles and 1.5 medicated cycles, their damages

24  for out-of-pocket medical expenses would total $10,869. *Id.* ¶ 58. However, because some testing

25  and monitoring likely covered as diagnostic are bundled into the prices clinics estimate as the per-

26  cycle cost of IUI, the amount recoverable through this lawsuit is likely less than the $10,869 for

27  most Class Members. *Id.* ¶ 59. If there are 175 or fewer Class Members, the Settlement will award

28  each Class Member a minimum of $11,408, likely completely compensating the typical Class

Member's out-of-pocket medical expenses. *Id.* ¶ 61. Even if the Class size is 200 and Class

Members receive Pro Rata payments of $8,750, with the Dollars for Benefits payments they will each recover at least $10,158, close to a full recovery. *Id.*

Class Members who had greater out-of-pocket costs than average, significant delay or loss of the ability to parent, significant pain and suffering, or other consequential damages may seek a higher Dollars for Benefits Payment and/or a Special Harms Payment. Ex. A, App. B ¶ 7. The Special Master will allocate payments to Class Members from the Special Harms Common Fund in accordance with the Allocation Plan. Ex. A ¶¶ 57, 73. The Special Harms Common Fund is intended to ensure that Class Members with higher potential damages have a high likelihood of obtaining a full recovery through Special Harms Payments. Peterson-Fisher Decl. ¶ 63. Any unclaimed amounts remaining in the Special Harms Common Fund will not revert to Aetna but rather will be redistributed pro rata to all Class Members. *Id.* ¶ 55.

### 6.  Scope of Release and Relationship to Complaint

Category A Class Members who do not opt out and those who opt in to become Category B, C, or D Class Members shall be deemed to have released all claims or causes of action that were or could have been raised based on the factual allegations in the Complaint. Ex. A ¶¶ 126-27.

### E.  Attorneys' Fees, Service Awards, and Administration

### 1.  Attorneys' Fees and Litigation Costs

Plaintiff will move the Court for approval of an attorneys' fees award of $1,600,000 and reimbursement of up to $25,000 in costs. The Parties negotiated attorneys' fees and costs through the mediator only after agreeing on monetary and injunctive relief for the Classes. If approved by the Court, Aetna will pay attorneys' fees and costs separate from monetary relief for the Class. Class Counsel's collective lodestar, which will continue to increase during the remainder of approval proceedings and settlement administration, is approximately $2.47 million, yielding in a 0.64 multiplier, and Class Counsel's litigation costs $25,689. Peterson-Fisher Decl. ¶ 64. An award of attorneys' fees based on a discounted lodestar rather than a percentage of the common fund is appropriate here because the size of the class, and thus of the total monetary relief to be distributed, is unknown, *and* because the Settlement includes significant injunctive relief. *See Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2014 WL 588035, at *10 (N.D. Cal. Feb. 14, 2014) ("Caselaw from this District supports the conclusion that the claims-based nature of

1  this settlement weighs in favor of a lodestar approach."); *Hanlon v. Chrysler Corp.*, 150 F.3d

2  1011, 1029 (9th Cir. 1998), ("In employment, civil rights and other injunctive relief class

3  actions, courts often use a lodestar calculation[.]"), *overruled on other grounds by Wal-Mart*

4  *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

5  ### 2.  Class Representative Service Award

6  Plaintiff will also move for Court approval of a Service Award of $15,000 to Plaintiff

7  Berton in recognition of the services she rendered on behalf of the Class. Peterson-Fisher Decl.

8  ¶ 65. The Parties separately negotiated this amount only after agreement was reached as to the

9  monetary and injunctive relief for the Classes, and it will not impact any other Class Member's

10  recovery. *Id.* ¶¶ 34, 65; Ex. A ¶ 115. This enhancement is reasonable in view of the time and effort

11  spent and the risks undertaken by Plaintiff, which will be further detailed in Plaintiff's Motion for

12  Attorneys' Fees, Costs, and Service Award to be filed in advance of the final approval hearing.

13  Peterson-Fisher Decl. ¶ 65; Berton Decl. ¶ 7.

14  ### 3.  Settlement Claims Administrator and Special Master

15  The Settlement Claims Administrator will be Atticus Administration LLC ("Atticus"). *See*

16  Peterson-Fisher Decl. ¶ 66. The Special Master will be the Hon. Steven Gold (Ret.). *Id.* ¶ 54.  Aetna

17  will pay all costs of settlement administration, including the Settlement Claims Administrator's

18  fees and the costs of a Special Master, separate and apart from payments to California Damages

19  Class Members. Ex. A ¶¶ 95, 97. Accordingly, the cost of settlement administration will not impact

20  any Class Member's recovery. A declaration from Atticus regarding its qualifications to perform

21  the duties of Settlement Claims Administrator, including its data security policies and maintenance

22  of insurance, is submitted as Exhibit C to the Declaration of Rebecca Peterson-Fisher. *See*

23  Peterson-Fisher Decl., Ex. C (Declaration of Christopher Longley ("Longley Decl.")). Class

24  Counsel obtained quotes from four additional potential administrators and concluded that Atticus

25  offered the best value and appropriate safeguards for protecting private health information.

26  Peterson-Fisher Decl. ¶¶ 66–68. The cost of settlement administration is reasonable in light of the

27  multiple forms of notice to be provided and the number of potential class members. *Id.* ¶ 70.

28  ### 4.  Settlement Approval and Administration Schedule
A detailed schedule of the relevant dates and deadlines specified in the Settlement

1   Agreement is set forth in the Settlement Agreement at paragraph 134, Peterson-Fisher Declaration

2   at paragraph 71 and in the Proposed Order filed herewith. The period to opt-out or object is 180

3   days after the date of mailing of Class Notice. Ex. A ¶¶ 52, 134.

4      **IV.     ARGUMENT**

5          In determining whether to certify a settlement class, courts must find that class certification

6   is appropriate under Rule 23(a) and that one of the bases for certification under Rule 23(b) is met.

7   *In re VNGR Beverage, LLC Litig.*, No. 24-cv-03229-HSG, 2025 WL 1489714, at *3–4 (N.D. Cal.

8   May 23, 2025). To certify an injunctive relief settlement class under Rule 23(b)(2), the Court must

9   find that "the party opposing the class has acted or refused to act on grounds that apply generally

10  to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

11  respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To certify a damages settlement class

12  under Rule 23(b)(3), the Court must conclude that "questions of law or fact common to class

13  members predominate over any questions affecting only individual members, and that a class

14  action is superior to other available methods for fairly and efficiently adjudicating the

15  controversy." Fed. R. Civ. P. 23(b)(3).

16         The proposed settlement must also be "fair, reasonable, and adequate." Fed. R. Civ. Proc.

17  23(e)(2); *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). A settlement satisfies

18  this requirement if it: "(1) appears to be the product of serious, informed, non-collusive

19  negotiations; (2) does not grant improper preferential treatment to class representatives or other

20  segments of the class; (3) falls within the range of possible approval; and (4) has no obvious

21  deficiencies." *In re VNGR Beverage, LLC Litig.*, 2025 WL 1489714, at *5. "Where the parties

22  settle prior to class certification, the Ninth Circuit requires 'a more probing inquiry than may

23  normally be required under Rule 23(e).'" *De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ,

24  2017 WL 2670699, at *6 (N.D. Cal. June 21, 2017) (quoting *Hanlon*, 150 F.3d at 1026).

25         The proposed National Injunctive Relief Class meets the requirements for certification

26  under Rule 23(a) and (b)(2), and the proposed California Damages Class meets the requirements

27  for class certification under Rules 23(a) and (b)(3). The Settlement, which provides the Classes

28  with virtually complete relief, is fair, reasonable, and adequate. Accordingly, the Court should

grant Plaintiff's motion for preliminary approval in its entirety.

1

2

**A. The Proposed National Injunctive Relief Class and the Proposed California Damages Class Meet the Requirements of Rule 23(a) for Certification**

3

**1. Numerosity**

4       The numerosity requirement is satisfied when the "class is so numerous that joinder of all

5   members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, the numerosity requirement is

6   satisfied where a class includes at least 40 members." *Gatchalian v. Atl. Recovery Sols., LLC*, No.

7   22-CV-04108-JSC, 2023 WL 8007107, at *4 (N.D. Cal. Nov. 16, 2023) (citing *Rannis v. Recchia*,

8   380 F. App'x 646, 651 (9th Cir. 2010)). Class Counsel estimates that there are thousands of Aetna

9   members nationwide who are people with uteruses in LGBTQ+ relationships who will be affected

10  by the proposed injunctive relief settlement. Tanner Decl. ¶ 57. And with respect to the California

11  Damages Class, Aetna's records show that there are at least 48 Category A members of the

12  California Damages Class (who will be Class Members unless they opt out), as well as 165

13  potential Category B Class Members, 5,462 potential Category C Class Members, six potential

14  Category D-A Class Members, and 25 potential Category D-B Class Members. *Id.* ¶ 60.

15  Accordingly, both Classes are sufficiently numerous.

16

**2. Commonality**

17      Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." Fed.

18  R. Civ. P. 23(a)(2). A single question of law or fact that "resolves a central issue" is sufficient to

19  establish commonality. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020). Where it

20  is alleged that all class members were subject to a common, unlawful practice, the "central issue"

21  requirement is satisfied. *See Jacob v. Pride Transp., Inc.*, No. 16-CV-06781-BLF, 2018 WL

22  1411136, at *3 (N.D. Cal. Mar. 21, 2018). Here, Plaintiff alleges that Aetna's Definition of

23  Infertility—which was used nationally to make claim determinations under Class Members health

24  benefits plans, *see* ECF 1 ¶ 21—facially discriminated based on sex, including sexual orientation

25  and gender identity, in violation of Section 1557 of the ACA. This central issue is common to all

26  members of both Classes.

27

**3. Typicality**

28      Rule 23(a)(3)'s typicality requirement is satisfied if the named Plaintiff's claims are

"reasonably co-extensive with those of absent class members; they need not be substantially

identical." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon*, 150 F.3d at 1020). Plaintiff Berton is a cisgender woman who is married to a cisgender woman: a person with a uterus in an LGBTQ+ relationship with a person who does not produce sperm. *See* Berton Decl. ¶ 3. Plaintiff was denied IUI coverage based on Aetna's Definition of Infertility and, as a result, incurred out-of-pocket costs for IUI. *Id.* ¶¶ 4–6. Currently, any future attempted pregnancy would require Plaintiff to obtain fertility treatment coverage from Aetna. *Id.* ¶ 3. Accordingly, her claims are reasonably co-extensive with all other members of both Classes.

### 4. Adequate Representation

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (internal quotations omitted).

Plaintiff in this matter is represented by Class Counsel from three firms with substantial experience litigating class actions; they also have experience litigating claims under Section 1557. Peterson-Fisher Decl. ¶¶ 7, 9–11, 15–16, 20–21; Tanner Decl. ¶¶ 5–8, 14–15, 19–25, 36–37, 43–44, 49; Decl. of Connie Chan in Support of Motion for Preliminary Approval ("Chan Decl.") ¶¶ 4–6, 8–9. Class Counsel have been appointed class or collective counsel in numerous matters, and NWLC attorneys Tanner, Banker, and Leon are also class counsel in the *Goidel* matter. Peterson-Fisher Decl. ¶¶ 9, 11, 15-16, 20; Chan Decl. ¶¶ 6, 8–9; Tanner Decl. ¶¶ 37, 43–44, 49. Plaintiff's counsel have vigorously represented the Classes to date and will continue to adequately represent the Classes. *See* Peterson-Fisher Decl. ¶ 22; *Hanlon*, 150 F.3d at 1020 (adequacy requires that counsel will "prosecute the action vigorously on behalf of the class"). The settlement negotiations in this matter were not collusive; they were conducted by a neutral mediator over the course of three mediation sessions held over several months. *See* Peterson-Fisher Decl. ¶¶ 33, 69; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral mediator is "a factor weighing in favor of a finding of non-collusiveness"). Finally, Plaintiff has no antagonism or conflict of interest with the absent class members who were subjected to the

1   same allegedly discriminatory Definition of Infertility. *See* Berton Decl. ¶ 9.

2   **B.  The National Injunctive Relief Class Meets the Requirements of Rule 23(b)(2)**

3       An injunctive relief class is appropriate when the Rule 23(a) requirements are satisfied and

4   "the party opposing the class has acted or refused to act on grounds that apply generally to the

5   class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

6   class as a whole." Fed. R. Civ. P. 23(b)(2). Aetna's Definition of Infertility was incorporated into

7   its plans nationwide and used to determine whether to deny or grant preauthorization or claims for

8   fertility treatment. *See* ECF 1 ¶ 21. Thus, Aetna has acted "on grounds that apply generally to the

9   class," and certification of the National Injunctive Relief Class is appropriate.

10  **C.  The California Damages Class Meets the Requirements of Rule 23(b)(3)**

11      A damages class is appropriate where the predominance and superiority requirements of

12  Rule 23(a) are satisfied. Fed. R. Civ. P. 23(b)(3).

13      **1.  Predominance of Common Questions**

14      The predominance requirement is satisfied when "the common, aggregation-enabling,

15  issues in the case are more prevalent or important than the non-common, aggregation-defeating,

16  individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

17  "A common question … 'is one where the same evidence will suffice for each member to make a

18  prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *In re Lenovo*

19  *Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *5 (N.D. Cal. Nov. 21, 2018)

20  (quoting *Bouaphakeo*, 577 U.S. at 453). The common question of whether Aetna's Definition of

21  Infertility facially discriminated against plan members with uteruses and in LGBTQ+ relationships

22  by imposing significantly more burdensome requirements on them than on cisgender members in

23  heterosexual relationships predominates over any individual questions concerning class members.

24  Individual variation in the number and/or cost of the fertility treatments Class Members paid out-

25  of-pocket to undergo is relevant to damages, not liability, and therefore cannot defeat a showing

26  of predominance. *See DZ Reserve*, 96 F.4th at 1235–36.

27      **2.  Superiority**

28      "A class action is superior to other methods of litigation when it 'will reduce litigation

costs and promote greater efficiency' or when 'no realistic alternative exists.'" *Shields v. World*

*Aquatics*, Nos. 23-15092 & 23-15156, 2024 WL 4211477, at *4 (9th Cir. Sept. 17, 2024) (citation omitted). Because each California Damages Class Member's damages are relatively low, a single class proceeding is far more efficient and realistic than requiring individual claims. *See id.* (holding that costs of individually prosecuting claims of less than $10,000 in losses was "prohibitive").

The other Rule 23 factors also support certification. Those factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). There is no evidence of Class Members' interest in individually controlling separate actions. The only other related pending actions are a national action in the District of Connecticut seeking only damages (not injunctive relief), in which no class has yet been certified, *see* Peterson-Fisher Decl. ¶ 80, and the *Goidel* class action, in which the preliminarily certified Settlement Classes consist only of individuals covered by a health plan provided or administered by Aetna in New York. *See id.* ¶ 49. Moreover, any class member who wishes to pursue claims individually can opt out of the Settlement, if in Category A, or not submit a claim. *See* Ex. A ¶ 70. This district is a desirable forum because the Class Members are or were California residents during the class period. Finally, manageability is not a relevant consideration in the settlement context. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

## D. The Settlement Meets the Requirements for Preliminary Approval

### 1. The Settlement Is the Product of Non-Collusive Negotiations

The proposed settlement is the result of extensive arms-length negotiations informed by substantial investigation and discovery and careful evaluation of the risks of continued litigation. *See* Peterson-Fisher Decl. ¶ 69. The non-collusive nature of the settlement is supported by the fact that the Parties mediated with Hon. Steven Gold. *See Satchell v. Fed. Express Corp.*, Nos. C03–2659 SI & C 03–2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

### 2. The Settlement Has No Obvious Deficiencies

Courts typically examine the scope of release, the length of the opt-out and objection period, and the amount sought in attorneys' fees to determine whether obvious deficiencies are present. *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021); *Willner v. Manpower Inc.*, No. 11-CV-

02846-JST, 2015 WL 54349, at *2 (N.D. Cal. Jan. 2, 2015). The proposed settlement has no obvious deficiencies.

The scope of the California Damages Class's release is properly limited to only claims that were or could have been raised based on the factual allegations in the Complaint. Ex. A ¶ 128; *see Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (scope of release proper where limited to those based on facts set forth in complaint). Because there is no opportunity to opt out of the National Injunctive Relief Class, the settlement does not release any claims for damages for National Injunctive Relief Class Members (unless they are also California Damages Class Members). *See* Peterson-Fisher Decl. ¶ 70.

The response deadline to object or opt-out—180 days from the mailing of the notice, Ex. A ¶¶ 52, 134—is well above the 35-day minimum requirement in the Northern District's Procedural Guidance for Class Action Settlements. U.S. DIST. CT. N.D. CAL., PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS (2024) [hereinafter PROCEDURAL GUIDANCE]. A longer notice period is reasonable because a large number of Class Members (all those in Categories C, D-A, and D-B) will need to submit documents to participate in the California Damages Class Settlement, which may require them to obtain medical treatment records and/or billing records. Peterson-Fisher Decl. ¶ 70. Moreover, a 180-day notice period is appropriate because some Class Members will only learn of the Settlement through publication notice. Ex. A ¶ 84.

Finally, as for the proposed attorneys' fees award of $1,600,000, Aetna agreed to pay this amount long after substantive relief for the Classes had been negotiated and it will not reduce Class Members' recovery, indicating the settlement has no obvious deficiency relating to fees. *See York v. Starbucks Corp.,* No. CV 08-07919 GAF (PJWx), 2013 WL 12113220, at *7 n.1 (C.D. Cal. Oct. 29, 2013) (finding fees agreed upon after Class relief did not suggest collusion).

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representative or Segments of the Class

The proposed settlement does not grant improper preferential treatment to the Class Representative or to segments of the class. *See* Peterson-Fisher Decl. ¶ 71. All Class Members will

1  receive the Default or Pro Rata Payment and the Default Dollars for Benefits Payment,[4] Ex. A

2  ¶¶ 70, 71, and all Class Members will have the opportunity to submit a claim for higher amounts

3  from the Special Harms Common Fund and for a higher Dollars for Benefits payment, such that

4  Class Members with higher substantiated damages will get a higher recovery. *Id.* ¶¶ 71(ii), 73.

5      Service awards to named plaintiffs "do not render a settlement unfair or unreasonable."

6  *Altamirano v. Shaw Indus., Inc.,* No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July

7  24, 2015) (collecting cases). The proposed $15,000 service award to the Named Plaintiff, which

8  was likewise negotiated after class relief, is in line with service awards in similar cases, *see Lemus*

9  *v. H & R Block Enters. LLC*, 2012 WL 3638550, at *5–6 (N.D. Cal. Aug. 22, 2012) (approving

10  $15,000 service awards where the average class recovery was about $1,200); *Ross v. U.S. Bank*

11  *Nat. Ass'n*, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010) (approving $20,000 for four class

12  representatives where the total settlement fund was $1,050,000); *Taylor v. FedEx Freight, Inc.*,

13  No. 1:13-cv-01137-DAD, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (approving a $15,000

14  service award where named plaintiff contributed "well over" 80 hours of work to the case); *see*

15  *also* Peterson-Fisher Decl. ¶ 72, and reflects her considerable work in bringing and prosecuting

16  this lawsuit, including participating in three mediations, *see* Berton Decl. ¶ 7 and will not affect

17  any Class Member's recovery. *See* Peterson-Fisher Decl. ¶ 72.

### 4. The Settlement Falls Within the Range of Possible Approval

19      The proposed settlement falls within the range of possible approval. Courts evaluate this

20  criterion by comparing the plaintiff's expected recovery to the value of the settlement offer.

21  *Vazquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009). Additionally,

22  to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may

23  preview the factors that ultimately inform final approval: (1) the strength of the plaintiff's case;

24  (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

25  maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

26  extent of discovery completed and the stage of the proceedings; (6) the experience and views of

27  counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to

[4] Class Members whose claims have already been reprocessed and reimbursed by Aetna may not be eligible for a Dollars for Benefits payment.

the proposed settlement. *Altamirano*, 2015 WL 4512372, at *8.

With respect to the injunctive relief settlement, the relief agreed to represents a best-case scenario for injunctive relief, as it requires Aetna to apply its New IUI Policy, which was adopted as part of the *Goidel* settlement, on a nationwide basis, Ex. A ¶ 63, thereby preventing Aetna from rolling back the changes it made to CPB 327 as part of the *Goidel* settlement or reverting to the challenged Definition of Infertility in the future, *see* Tanner Decl. ¶ 56. Moreover, it requires other important changes to CPB 327 to treat LGBTQ+ couples equitably.

With respect to the California Damages Class settlement, it is well-settled that even if a cash settlement amounts to only a "fraction of the potential recovery," that does not in itself render the settlement inadequate or unfair. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982). Here, by Plaintiff's estimation, the proposed default monetary payment of $10,000 plus the default Dollars for Benefits payment of $1,408 represents approximately a <u>full</u> recovery for most Class Members. *See* Peterson-Fisher Decl. ¶ 73. The Settlement is plainly within the range of possible approval, given that courts in this district have found settlements providing well below half of the total potential recovery to be fair and reasonable. *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement that was between 27% and 11% of the total potential recovery); *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving settlement that was 10.7% of total potential liability exposure).

**E. Class Recovery Compared with Maximum Theoretical Recovery and Explanation of Discounts**

Had this action proceeded to trial, Plaintiff would have sought to recover for Class Members the following categories of damages: (1) out-of-pocket medical expenses; (2) physical pain and suffering damages; and (3) harms from delay or loss of ability to become parents. *See, e.g.*, *Wade*, 2023 WL 9598746, at *3–5. However, the second and third categories of damages, while theoretically available on a class-wide basis, are damages that not all Class Members may have incurred. *See* Peterson-Fisher Decl. ¶ 73. Accordingly, for purposes of evaluating theoretical maximum recovery, we focus on out-of-pocket medical expenses—specifically, costs for IUI treatment that Class Members had to bear due to Aetna's allegedly discriminatory policy.

As explained in section II(D)(4), the Default/Pro Rata Payment and Default Dollars for Benefits Payments will fully compensate most Class Members for their out-of-pocket medical expenses. *See also* Peterson-Fisher Decl. ¶ 73. As explained in the Tanner Declaration, Class Counsel believes it is highly unlikely the Class will exceed 175 individuals. Tanner Decl. ¶ 60, Class Members will likely receive nearly a full recovery from the Pro Rata Payment and Default Dollars for Benefits Payment, *see* Peterson-Fisher Decl. ¶ 73. In addition, those who had greater out-of-pocket costs than average may seek higher Dollars for Benefits Payments and/or Special Harms Payments. Ex. A ¶¶ 71(ii), 73. Finally, for those Class Members who experienced physical pain and suffering and/or lost the opportunity to become a parent because of Aetna's Definition of Infertility, they can apply for compensation for those damages from the $250,000 Special Harms Common Fund. *See* Peterson-Fisher Decl. ¶ 54. The Settlement therefore offers Class Members the opportunity for a full recovery, without discounts.

### F. The Settlement Meets the Requirements for Final Approval

#### 1. Strength of the Plaintiff's Case

Although Class Counsel believe Plaintiff has a strong case, they recognize the risks involved in continuing litigation, including the risks of class certification being denied, the risk of changes to this developing area of law, and the risk of recovering nothing or being unable to obtain class-wide injunctive relief. *See* Peterson-Fisher Decl. ¶ 76. Out-of-pocket costs for IUI treatment not covered by insurance can vary widely in California, making the calculation of class-wide damages challenging. *Id.* ¶¶ 28, 76. Plaintiff also faced real risks in being able to prove other types of compensatory damages on a class-wide basis. *Id.* ¶ 76. While the Court here denied Aetna's motion to dismiss—signaling the strength of Plaintiff's case on the merits—the Court noted potential challenges to fashioning effective nationwide injunctive relief as to Defendants in light of potential variations in plan design across jurisdictions and employers. *Id.* ¶ 77. This may have also made certification of a nationwide injunctive class challenging. *Id.* Furthermore, although Defendants do not oppose class certification for settlement purposes, Aetna would have opposed class certification otherwise. *Id.* The risks of losing class certification and/or failing to prove the extent of damages weigh heavily in favor of preliminary approval. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *3–4 (N.D. Cal. Apr. 15, 2015).

### 2.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

The proposed settlement confers a substantial benefit on Class Members, while further litigation would create significant risks and cause additional delay, expenses, and potential harm. If the Parties continued to litigate the case, they would need to conduct further document discovery and take depositions of Defendants' corporate representatives, Class Members, and other fact witnesses. Peterson-Fisher Decl. ¶ 78. Both Parties would likely need to retain experts. *Id.* If Plaintiff obtained class certification and survived summary judgment, a fact-intensive trial would be necessary. *Id.* Any judgment would likely be appealed, further extending the litigation. *Id.* Given the risk, expense, complexity, and delay that further litigation would entail, preliminary approval is especially appropriate. *See Bayat*, 2015 WL 1744342, at *4.

### 3.   Risk of Maintaining Class Action Status Through Trial

Even if Plaintiff had obtained certification of both Classes, Defendants could have sought, and the Court could have granted, decertification of the Classes in whole or in part at any point up through the trial date. *See generally Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification of class); Peterson-Fisher Decl.¶ 79. Accordingly, this factor also weighs in favor of preliminary approval.

### 4.   Amount Offered in This Settlement and Comparable Cases

This settlement compares favorably with the settlement reached in *Goidel*, which is the most comparable settlement given that it involves the same challenged Definition of Infertility as applied to an analogous class in New York. *See* Peterson-Fisher Decl. ¶¶ 80–81. That action secured a $2 million common fund for a class estimated at the time of preliminary approval to be approximately 200 class members, and a $2,300 per class member dollars-for-benefits payment.[5] *Id.* ¶ 80. Based on Aetna's records, Class Counsel believe that the California Damages Class is likely to be smaller than the estimated *Goidel* class. Tanner Decl. ¶¶ 60–61. Thus, all California Damages Class Members will likely receive the same $10,000 default monetary payment as *Goidel* class members. Ex. A ¶¶ 24, 48, 72. In *Goidel*, any amount in the Common Fund after all Class Members receive $10,000 may be distributed to those with higher out of pocket costs or who

---

[5] The motion for final approval filed September 26, 2025 in Goidel indicates a final class of 143 members. Tanner Decl. ¶ 61.

suffered other harm. In this case, Class Members with greater damages may recover from a separate Special Harms Common Fund. *Id.* ¶¶ 56–57, 73. Finally, eligible California Damages Class Members will receive a $1,408 Dollars for Benefits Payment. The Default Dollars for Benefits Payment in this case is lower than in *Goidel* only because the CMS reimbursement rates for the same procedures are lower in California and New York. Tanner Decl. ¶¶ 62–65. In both cases, Class Members who underwent care that would have been reimbursed for a greater amount than the Default may seek a higher Dollars for Benefits Payment. Ex. A ¶ 71(ii).

With respect to injunctive relief, this settlement builds on the success of the *Goidel* action. As a result of the *Goidel* settlement, on June 1, 2024, Aetna began to implement the New IUI Policy and revised CPB 327's definition of infertility and certain requirements to qualify for IVF. Tanner Decl. ¶ 52. But that settlement will only (following final approval in *Goidel*) be enforceable in New York. *Id.* ¶ 50. By making Aetna's New IUI Policy enforceable nationwide, the settlement for the National Injunctive Relief Class ensures that Class Members nationwide will continue to benefit from the New IUI Policy and changes to CPB 327. *Id.* ¶¶ 53, 55. Critically, this Settlement prevents Aetna from reversing course on equal access to fertility benefits for LGBTQ+ plan members even if it comes under pressure to do so. *Id.* ¶ 56.

In addition to making the New IUI Policy an enforceable guarantee nationwide, this Settlement goes further than the *Goidel* settlement by requiring meaningful additional revisions to the CPB. Revision of the CPB to specify that Aetna's medical directors may consider the limited availability of donor sperm in determining eligibility for IVF coverage for Aetna members who have not completed the otherwise requisite number of artificial insemination cycles is important relief for National Injunctive Relief Class Members. *Id.* ¶ 54. Many LGBTQ+ couples carefully select sperm donors based on specific characteristics and would prefer moving to IVF if continuing to attempt pregnancy through IUI could mean having to select a different donor. African-American, Hispanic, Native/Hawaiian/Pacific Islander and American Indian/Alaskan Native donors are all underrepresented among U.S. sperm donors,[6] making the availability of donor sperm a significant consideration for LGBTQ+ couples with these identities who wish to have more than

---

[6] *Lack of Racial and Ethnic Diversity in Cryopreserved Donor Sperm in the United States*, Gibbs, Lauren et al., Fertility and Sterility, Volume 120, Issue 4, 108.

one child with the same genetic heritage. *Id.*; *see* Berton Declaration at ¶ 8.

Because the settlement here offers substantial monetary relief and broad injunctive relief enforceable nationwide, it compares favorably to the relief achieved in *Goidel*.

### 5.  Extent of Discovery Completed and Stage of the Proceedings

Courts examine the extent of discovery completed and the stage of the proceedings with an eye to determining whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As set forth in detail in Section II(A) and the Peterson-Fisher Declaration, Plaintiff conducted significant fact and document discovery and investigation. *See* Peterson-Fisher Decl. ¶¶ 28–32, 82. Plaintiff also obtained from Aetna the numbers of identifiable individuals who were potential Category A, B, and C Class Members, which, considered together with claims administration data from the *Goidel* settlement, enabled Plaintiff to estimate the ultimate size of the California Damages Class and negotiate monetary relief accordingly. *See id.* ¶ 31; Tanner Decl. ¶¶ 58, 60. Plaintiff had ample information to assess the strength of the claims and the risks of continued litigation, and to make a reasoned assessment of the fairness of the proposed Settlement. Peterson-Fisher Decl. ¶ 82. Accordingly, this factor weighs in favor of preliminary approval.

### 6.  Experience and Views of Counsel; Comparable Outcomes

The proposed settlement was reached through vigorous arm's-length negotiation between lawyers with significant experience litigating class actions and claims under Section 1557. *See* Chan Decl. ¶¶ 4–6, 8–9; Peterson-Fisher Decl. ¶¶ 7, 9–11, 15–16, 20–21, 33–34; Tanner Decl. ¶¶ 5–8, 14–15, 19–25, 36–37, 43–44, 49. Based on Class Counsel's experience and their analysis of settlements in other similar cases, Class Counsel believes that the proposed settlement represents an excellent monetary result for the California Damages Class and an excellent injunctive result for the National Injunctive Relief Class, particularly in light of the risks of continued litigation. *See supra*. This factor also supports preliminary approval.

### G.  The Proposed Notice and Settlement Procedure Are Appropriate

Notice of a class action settlement "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

(internal quotations omitted). The detailed information in the Proposed Notices fully complies with Rule 23(c)(2)(B)'s requirements, and the Proposed Notices were designed to enhance their readability. Peterson-Fisher Decl. Ex. ¶ 86. Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances," by "mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B); *see* PROCEDURAL GUIDANCE ¶ 3.

Notice will be sent by direct mail. Peterson-Fisher Decl. ¶ 87. Notice will also be sent electronically via secure messages to Aetna members who utilize Aetna's secure online portal, and push notifications will be sent to those utilizing Aetna's mobile application.[7] *Id.* ¶ 88. Notices will also include information on how to obtain translation into other languages free of cost. *Id.* ¶ 87. Ads will be placed in publications read by the California LGBTQ+ community and a targeted social media campaign. Peterson-Fisher Decl. ¶¶ 87-88. This robust manner of giving notice has a likelihood of reaching most, if not all, Class Members. *Id.* ¶ 88. Class Members will be able to submit their claims either online or by mail. *Id.* ¶ 89.

## V.    CONCLUSION

Because the Settlement represents an excellent result for both Classes, and for all the foregoing reasons, Plaintiff respectfully requests that the Court grant her Motion for Order Provisionally Certifying Settlement Class and Preliminarily Approving Class Settlement.

---

[7] Sending messages via this secure online portal allows for notice to be distributed by electronic means while avoiding potential privacy concerns that could arise when sending messages about the sensitive health information involved in this case to a member's work email address. *See* Peterson-Fisher Decl. ¶ 88.

1    DATED:  September 30, 2025                    Respectfully submitted,

2                                                                **KATZ BANKS KUMIN LLP**

3                                                                /s/ Rebecca Peterson-Fisher
                                                                       Rebecca Peterson-Fisher
4                                                                Jennifer L. Liu
                                                                       235 Montgomery St. Suite 665
5                                                                San Francisco, CA 94104
                                                                       Tel: (415) 813-3260
6                                                                Fax: (415) 813-2495
                                                                       peterson-fisher@katzbanks.com
7                                                                liu@katzbanks.com

8
                                                                       Hugh Baran (admitted pro hac vice)
9                                                                111 Broadway, Suite 1702
                                                                       New York, NY 10006
10                                                               Tel: (646) 759-4501
                                                                       Fax: (646) 759-4502
11                                                               baran@katzbanks.com

12                                                               Marilyn Robb (admitted pro hac vice)
                                                                       11 Dupont Circle NW, Suite 600
13                                                               Washington, DC 20036
                                                                       Tel: (202) 299-1140
14                                                               Fax: (202) 299-1148
                                                                       robb@katzbanks.com

15
                                                                       **ALTSHULER BERZON LLP**
16
                                                                       Barbara J. Chisholm (SBN 224656) Danielle
17                                                               E. Leonard (SBN 208201) Connie K. Chan
                                                                       (SBN 284230)
18                                                               Robin S. Tholin (SBN 344845)
                                                                       177 Post Street, Suite 300
19                                                               San Francisco, CA 94108
                                                                       Tel: (415) 421-7151
20                                                               Fax: (415) 362-8064
                                                                       bchisholm@altshulerberzon.com
21                                                               dleonard@altshulerberzon.com
                                                                       cchan@altshulerberzon.com
22                                                               rtholin@altshulerberzon.com

23                                                               **NATIONAL WOMEN'S LAW CENTER**

24                                                               Michelle Banker (admitted pro hac vice)
                                                                       Alison Tanner (admitted pro hac vice)
25                                                               Noel León (admitted pro hac vice)
                                                                       1350 I Street NW, Suite 700
26                                                               Washington, DC 20005
                                                                       Tel: (202) 588-5180
27                                                               mbanker@nwlc.org
                                                                       atanner@nwlc.org
28                                                               nleon@nwlc.org

                                                                       *Attorneys for Plaintiff and the Proposed Classes*