UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARA BERTON,<br><br>        Plaintiff,<br><br>v.<br><br>AETNA INC., et al.,<br><br>        Defendants. | Case No. 23-cv-01849-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 132 |

Pending before the Court is Plaintiff's unopposed motion for preliminary approval of class action settlement. *See* Dkt. No. 132 ("Mot."). The Court held a hearing on the motion on November 6, 2025. Dkt. No. 135. For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Factual Allegations

This is a putative class action lawsuit in which Plaintiff Mara Berton alleges that Defendants Aetna Inc. and Aetna Life Insurance Company (collectively, "Aetna" or "Defendants") designed, sold, and administered health benefit plans that discriminated on the basis of sex, including sexual orientation and/or gender identity, by denying equal access to fertility treatments. *See* Dkt. No. 1 ("Compl.") ¶¶ 1, 18, 21. Plaintiff alleges that Aetna imposed more burdensome requirements on plan members in LGBTQ+ relationships seeking to become pregnant than on cisgender members in heterosexual relationships pursuant to the definition of infertility set forth in Aetna's Clinical Policy Bulletin No. 327 (the "Definition of Infertility"). *See id.* ¶¶ 3–4, 25–46. Specifically, Plaintiff alleges that heterosexual couples could demonstrate infertility while

simply representing that they have had several months of frequent unprotected intercourse, while LGBTQ+ couples needed to show proof of costly insemination attempts. *Id.* ¶¶ 33, 39, 46.

Plaintiff filed her complaint on April 17, 2023, alleging a single cause of action for discrimination in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), on behalf of a "California Damages Class" and a "National Injunctive Relief Class." *See id.* ¶¶ 95–102. Defendants filed a motion to dismiss, which the Court denied. Dkt. No. 40 (motion); Dkt. No. 70 (order).

### B. Settlement Agreement

On October 30, 2024, February 18, 2025, and March 4, 2025, the parties participated in three full-day mediations with Judge Steven M. Gold (Ret.). *See* Dkt. No. 132-4 ("Peterson-Fisher Decl.") ¶ 33. The parties ultimately entered into a settlement agreement. *See* Dkt. No. 132-5 ("Settlement Agreement," or "SA"). The key terms are as follows:

Damages Class Definition: The Damages Settlement Class is defined as:

> All California Commercial Plan members: (1) who were covered during the California Damages Class Period and at the time of service by a plan that offered coverage for infertility treatments; (2) for whom there is not a reason, other than the Definition of Infertility, why the individual did not qualify for coverage for infertility treatments obtained under the individual's healthcare plan; (3) who meet the criteria for Categories A, B, C, or D as set forth below; and (4) who, if members of Categories B, C, or D, file any Attestation and/or Claim Form Submission required by the Settlement Agreement to participate in the Settlement.

Category A: Category A class members consist of California residents whose Aetna member files contain a denial of a precertification or claim request for one of an agreed-upon set of IUI/ICI codes and whose member files contain information to suggest they were a person with a uterus in an Eligible LGBTQ+ Relationship at the time they sought coverage for IUI/ICI. Category A members will receive notice of the settlement and will be automatically entitled for all payments unless they opt out.

Category B: Potential Category B California Damages Class Members consist of California residents whose Aetna member files contain a denial of a precertification or claim request for one of an agreed-upon set of IUI/ICI codes and whose Aetna member files do not indicate they were in a heterosexual relationship at the time they sought coverage. These individuals will receive notice and an opportunity to submit an Attestation certifying they were individuals with uteruses in an Eligible LGBTQ+ Relationship at the time they sought IUI/ICI coverage. The people who submit an Attestation and

2

> meet the other eligibility criteria in this Agreement will be Category B California Damages Class Members entitled to receive settlement payments.
>
> Category C: Potential Category C Class Members who will receive direct notice are Aetna members who were either denied or approved for an agreed-upon set of IVF codes during the Class Period. In addition to direct notice to Potential Category C Class Members, the Parties will issue publication notice via an agreed-upon set of publications and/or social media sites. The people who respond with (1) an Attestation certifying they were individuals with uteruses in an Eligible LGBTQ+ Relationship at the time of seeking services during the Class Period, and (2) a Claim Form setting forth evidence satisfactory to the Parties of out-of-pocket costs incurred for IUI/ICI during the Class Period, will be Category C California Damages Class Members entitled to receive settlement payments.
>
> Category D: Potential Category D Class Members consist of California residents whose Aetna member files contain a denial of a precertification or claim request for one of an agreed-upon set of IUI/ICI codes and whose Aetna member files establish that the individual had a denial that was followed by an approval within 90 days, or was otherwise paid by Aetna. There are two subcategories of potential California Damages Class Members within D:
>
> i. Category D-A is made up of individuals with uteruses whose Aetna member files contain information to suggest they were in an Eligible LGBTQ+ Relationship at the time they sought coverage;
> ii. Category D-B is made up of individuals with uteruses whose Aetna member files do not indicate they were in a heterosexual relationship at the time they sought coverage.
>
> Potential members of Category D will receive notice and an opportunity to submit a Claim Form setting forth satisfactory evidence of out-of-pocket costs incurred for IUI/ICI during the Class Period, and for potential members of D-B an Attestation confirming they were individuals with uteruses in an Eligible LGBTQ+ Relationship at the time of seeking services during the Class Period. Individuals who demonstrate eligibility are Category D California Damages Class Members entitled to settlement payments.

SA ¶¶ 13, 70.

Injunctive Relief Class Definition: The Injunctive Relief Settlement Class is defined as:

> "Individuals with uteruses in an Eligible LGBTQ+ Relationship who are currently or will be covered during the Class Period for the National Injunctive Relief Class by a commercial health plan provided or administered by Aetna Life Insurance Company in the United States that includes fertility benefits and (1) who meet the clinical criteria for fertility services under the currently operative or any subsequent version of CPB No. 327 other than the criteria challenged in this Civil Action and (2) who currently or will in the future want to obtain coverage for intrauterine ("IUI") or intracervical insemination ("ICI"), or request a form of IVF consistent with Advanced Reproductive Technology ("ART") coverage pursuant to

3

> Aetna's clinical policy requiring trials of less invasive therapeutic approaches as defined in CPB No. 327."

SA ¶ 37.

Settlement Benefits: The Settlement Agreement provides for three different components of monetary compensation to the Damages Class. First, all Damages Class members will receive a Default or Pro Rata Payment, depending on the final class size. SA ¶ 72. If there are 175 or fewer Damages Class members, each class member will receive a Default Payment of $10,000. *Id.* ¶¶ 24, 72. If more than 175 eligible class members participate in the settlement, Defendants will establish a non-reversionary common fund of $1,750,000 to be distributed pro rata to all class members. *Id.* ¶¶ 48, 72.

Second, each Damages Class member who has not already been reimbursed for eligible procedures by Aetna or a secondary coverage provider will receive a Dollars for Benefits Payment. *Id.* ¶ 71. The Default Dollars for Benefits Payments are $1,408 for each class member, *id.* ¶ 71(i), and the settlement also provides a process for class members to receive higher Dollars for Benefits Payments if their coverage would have allowed greater reimbursement but for Aetna's Definition of Infertility, *id.* ¶ 71(ii).

Third, Aetna will make a $250,000 non-reversionary payment into a Special Harms Common Fund. *Id.* ¶¶ 56, 73, 110. Special Harms Payments will be available to compensate class members who experienced greater harm as a result of Aetna's allegedly unlawful Definition of Infertility than would be compensated by the Dollars for Benefits Payment and Default or Pro Rata Payment, as determined by a Special Master according to the Settlement's Allocation Plan. *Id.* ¶¶ 57, 73. If there is money remaining in the Special Harms Common Fund after payments are allocated by the Special Master, those funds will be redistributed to all California Damages Class Members on a pro rata basis. *Id.* ¶ 74.

To receive settlement benefits, class members in Categories B, C, and D must fill out and submit a claim form, online or in hard copy, providing an attestation that they were an individual with a uterus in an Eligible LGBTQ+ Relationship at the time they received an infertility service for which they sought, or could have sought, coverage from Aetna during the Damages Class Period. *Id.* ¶¶ 12, 16. Class members in Categories C and D will also be required to provide

4

evidence of out-of-pocket costs incurred for IUI/ICI during the Class Period. *Id.* ¶¶ 70(c), (d). All class members, including those in Category A, may request higher Dollars for Benefits Payments or Special Harm Payments and submit supporting documentation in the same claim form. *Id.* ¶ 16.

The Settlement Administrator will conduct an initial review of all claims to identify any missing information or other deficiencies. *Id.* ¶ 75(a). Defendants will then review claims from potential Category B, C, and D class members to determine whether Defendants believe they have submitted adequate evidence that they are class members. *Id*. ¶ 75(b). Additionally, Defendants will review claims to determine the amount to which they believe the class member is entitled. *Id.* ¶ 75(c). The Settlement also provides for a Special Master, Hon. Steven M. Gold (Ret.), to determine if potential class members have submitted adequate evidence of membership, to evaluate all Special Harm Submissions, and to allocate amounts from the Special Harms Common Fund to the Damages Class Members. *Id.* ¶¶ 59, 96. Aetna will pay the costs of the Settlement Administrator and the Special Master separate and apart from the payments used to fund the Settlement Fund. *Id.* ¶¶ 95, 97.

The Settlement Agreement also provides national injunctive relief. It requires Defendants to implement a new policy nationwide making IUI and ICI diagnostic and standard medical benefits under its fully insured commercial plans and to propose such changes to its self-funded commercial plans upon renewal or initiation. *Id.* ¶¶ 61, 64.[1] Defendants will request indemnification from any plan sponsor that does not conform to the new policy. *Id.* ¶ 64. Defendants will also revise Clinical Policy Bulletin No. 327 ("CPB 327") to ensure that Aetna's medical directors can consider the limited availability of plan members' chosen sperm for purposes of qualifying for IVF coverage, alongside other relevant clinical criteria. *Id. ¶* 63. Finally, Defendants will further revise CPB 327 to ensure that individuals who have previously met the criteria set forth in CPB 327 for Advanced Reproductive Technology ("ART," which includes IVF) coverage will not be required to undergo additional cycles of artificial insemination

---

[1] Defendants have agreed to implement this policy in *Goidel v. Aetna Life Insurance Co.*, S.D.N.Y. Case No. 1:21-cv-07619 (VSB), but the *Goidel* settlement will only be enforceable for a New York class. Dkt. No. 132-11 ("Tanner Decl.") ¶¶ 50, 52.

before qualifying for ART coverage for subsequent pregnancy attempts. *Id.* These changes will be made to all fully insured Aetna plans. Peterson-Fisher Decl. ¶ 50.

Release: Class members will release Defendants from:

> "[A]ll claims or causes of action that were or could have been raised by the Class Representative and/or the Class or any California Damages Class Member based on the factual allegations in the Complaint, including but not limited to alleging that Aetna or any of the Released Parties is liable under 42 U.S.C. § 18116(a) or any state law for discrimination on the basis of sex, sexual orientation, and gender identity during the California Damages Class Period."

SA ¶ 127.

This release covers "Aetna and all of its predecessors, successors, assigns, past, present or future, direct or indirect parents, subsidiaries, affiliated entities that rely on and utilize Aetna's CPB No. 327 and Aetna Life Insurance Company's claims processing systems and procedures, and their respective plan administrators, shareholders, directors, officers, employees, trustees, accountants, representatives, administrators, insurers, agents and attorneys with respect to any Commercial Plan covered by this Agreement." *Id.* ¶ 51.

Notice to class members will include the following language about this release: "Members of the settlement class will 'release' their claims as part of the settlement, which means they cannot participate in another lawsuit against Aetna for the same issues in this lawsuit. The full terms of the release can be found [here]." Dkt. No. 132-9 at 9. Notice to Category A class members, who are members of the class without submitting a claim form, further includes the following language:

> "You can opt out. If you do, you will not receive payment and cannot object to the settlement. However, you will not be bound or affected by anything that happens in this lawsuit and may be able to file your own case. You cannot exclude yourself from the policy changes called for by the proposed settlement."

*Id*. at 14. Notice to all other class members, who must submit a claim form to be part of the class, explains what to do if an individual does not want to be part of the settlement:

> "Do not send in a claim form. You will not receive any money and you will not be bound by anything that happens in this lawsuit and may be able to file your own case. You cannot exclude yourself from the policy changes called for by the proposed settlement."

*Id.* at 30.

6

Incentive Awards: According to the Settlement Agreement, Defendants agree to pay an incentive award to the named Plaintiff of $15,000. SA ¶ 115. If approved by the Court, this award will be paid separate and apart from the Default or Pro Rata Payments and the Special Harms Common Fund. *Id.*

Attorneys' Fees and Costs: The Settlement Agreement provides that Class Counsel will apply for attorneys' fees of $1,600,000 and for costs up to $25,000, which Defendants agree to pay. *Id.* ¶ 108.

Opt-Out Procedure: Class members must object to the Settlement Agreement or opt out (via regular mail only) within 180 days after the date of mailing of Class Notice. *Id.* ¶¶ 52, 116, 118.

## II.     PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *See id.* at 349. Second, a plaintiff must establish that at least one of the bases for certification under Rule 23(b) is met. Where a plaintiff seeks to certify a class under Rule 23(b)(2), it must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). And where a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id.* However, this concern is not present when certifying a settlement class. *Id.* at 556–57.

In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id.* at 557.

### A. Rule 23(a) Certification

The Court finds that all the requirements of Rule 23(a) are met for both the Proposed National Injunctive Relief Class and the Proposed California Damages Class:

- **Numerosity.** Joinder of the thousands of estimated Injunctive Relief Class Members nationwide would be impracticable. *See* Tanner Decl. ¶ 57. Plaintiff also expects the Damages Class to be between 100 and 175 people based on Defendants' records and experience in the *Goidel* litigation. *See id.* ¶¶ 60–61. This is sufficiently numerous for certification.
- **Commonality.** Common questions of law and fact include whether Defendants' Definition of Infertility discriminated based on sex, including sexual orientation and gender identity, in violation of Section 1557 of the ACA. *See* Mot. at 21.
- **Typicality.** Plaintiff's claims are both factually and legally similar to those of the putative class because, like Plaintiff, all class members are people with uteruses in LGBTQ+ relationships and members of plans incorporating Defendants' Definition of Infertility. *See* Mot. at 14–15.
- **Adequacy of Representation.** The Court is unaware of any actual conflicts of interest in this matter, and no evidence in the record suggests that either Plaintiff or counsel have a conflict with other class members. Plaintiff's counsel have been appointed class counsel in numerous federal and state class actions. *See* Peterson-Fisher Decl. ¶¶ 9–11, 15–16; Dkt. No. 132-2 ("Chan Decl.") ¶¶ 5, 8–9; Tanner Decl. ¶¶ 37, 43, 49. The Court finds that proposed Class Counsel and Plaintiff have prosecuted this action vigorously on behalf of the class to date and will continue to do so.

### B. Rule 23(b)(2)

The Court also finds that the requirements of Rule 23(b)(2) are met for the National Injunctive Relief Class because Defendants' Definition of Infertility was allegedly incorporated into their plans nationwide and used to determine whether to deny or grant preauthorization or

8

claims for fertility treatment across the class, making final injunctive relief or corresponding declaratory relief appropriate respecting the class as a whole. *See* Compl. ¶ 21; Mot. at 23.

### C. Rule 23(b)(3)

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met for the California Damages Class:

- **Predominance.** The Court concludes that common questions predominate here because the common question of whether Defendants' Definition of Infertility imposed more burdensome requirements for plan members in LGBTQ+ relationships seeking fertility treatment than it did for cisgender members in heterosexual relationships, and thus whether it facially discriminated in violation of Section 1557, predominates over any individual questions.
- **Superiority.** A class action in this case enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (finding superiority where named plaintiff's claim was for less than $10,000). Further, this forum is appropriate, and manageability is not a relevant consideration in the settlement approval context.

### D. Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as Class Representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in antidiscrimination cases and class actions. *See* Peterson-Fisher Decl. ¶¶ 4–21; Chan Decl. ¶¶ 4–9; Tanner Decl. ¶¶ 19–25, 29–49. Accordingly, the Court appoints Katz Banks Kumin LLP, Altshuler Berzon LLP, and National Women's Law Center as Class Counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

### III. PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

#### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes*, 944 F.3d at 1049 (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain

provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quotation and citation omitted).

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

Plaintiff will request up to $1,600,000 in attorneys' fees and up to $25,000 in costs, which Plaintiff states is a 0.64 multiplier of Class Counsel's current lodestar. Mot. at 18. The parties agreed to these fees through the mediator after agreeing on monetary and injunctive relief, and Defendants will not object. *Id.*; SA ¶ 108. Defendants have apparently agreed to pay attorneys' fees and costs separate from the monetary relief for the class. Mot. at 18.[2] And the proposed settlement is non-reversionary: Any remaining money in the Special Harms Common Fund after allocation will be redistributed to the class on a pro rata basis, SA ¶¶ 50, 74, and unclaimed payments will be made to the California Controller's Unclaimed Property Division "such that California Damages Class Members may claim their awards . . . at a later date," *id.* ¶ 80.

Because the Settlement Agreement contains a clear sailing provision, the Court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *In re Bluetooth Headset*, 654 F.3d at 948. The Ninth Circuit "has signed off on two methods for determining reasonable attorneys' fees in class actions: the 'lodestar' method and the 'percentage-of-recovery' method." *In re Cal. Pizza Kitchen Data*

---

[2] The Court cannot find a provision in the Settlement Agreement that explicitly mentions this, but nothing in the agreement permits a deduction from the monetary relief for fees. The Court will confirm this was the case at final approval.

11

1  *Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025).  Because "injunctive relief is inherently difficult
2  to monetize," *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021), courts tend to use the lodestar
3  method in class actions that result in injunctive relief.  *See Hanlon*, 150 F.3d at 1029; *Lilly v.
4  Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015)
5  ("Because the settlement resulted in injunctive relief, the lodestar method is the appropriate
6  measure for calculating attorneys' fees.").  The "[b]enefit to the class is the '[f]oremost'
7  consideration" in assessing the reasonableness of attorneys' fees.  *Kim*, 8 F.4th at 1181 (quotation
8  omitted); *see also In re Cal. Pizza Kitchen*, 129 F.4th at 679 (holding that the "touchstone" for the
9  attorneys' fees "analysis is 'the benefit to the class'—class counsel can only reap rewards if they
10 have delivered results for class members" (quotation omitted)).

11 The Court does not find the proposed award so disproportionate as to raise concerns at this
12 preliminary approval stage.  Given Plaintiff's representations, it appears that the monetary relief
13 will likely be between $1,250,000 and $2,000,000.  SA ¶ 110; Tanner Decl. ¶¶ 60–61.  More
14 significantly, Plaintiff appears to have achieved one of her primary goals of extending the policy
15 changes from *Goidel* to a nationwide class and ensuring Defendants' policies provide equal
16 treatment to LGBTQ+ couples.  At this stage, these apparently significant benefits to the class
17 withstand the Court's scrutiny.

18 In addition, the Court does not find that the Settlement Agreement's clear sailing provision
19 creates an inference of collusion or conflict that warrants invalidating the settlement as a whole.
20 The parties represent that the Settlement Agreement is "a result of arm's length negotiations,"
21 Peterson-Fisher Decl. ¶ 69, and the Agreement was facilitated through extensive discussions
22 overseen by a neutral mediator, thereby reducing the likelihood of fraud or collusion.  *See Estorga
23 v. Santa Clara Valley Transp. Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *6 (N.D. Cal.
24 Dec. 11, 2020).

25 Nevertheless, the Court is cognizant of its obligation to review class fee awards with rigor,
26 and at the final approval stage the Court will scrutinize the circumstances and determine what fee
27 award is appropriate in this case.  At that point, the Court must "(1) explain[ ] why the value of the
28 injunctive relief's benefits to individual class members was readily quantifiable and worth [the

estimated value] or (2) exclude[ ] the injunctive relief from the valuation of the settlement and explain[ ] why attorneys' fees . . . were justified." *Kim*, 8 F.4th at 1181 (quotations omitted).  The Court will independently assess the reasonableness of Plaintiff's fee request, evaluating Plaintiff's billing records, the benefits obtained for the class, and the risks of further litigation.  *See Hanlon*, 150 F.3d at 1029.

### ii. Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class members.  The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations."  *In re Bluetooth Headset*, 654 F.3d at 947.  Under Rule 23(e), the Settlement Agreement must "treat class members equitably relative to each other."  Fed. R. Civ. P. 23.  For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives."  *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

The Court finds that the Agreement satisfies this standard for purposes of preliminary approval.  First, all class members will receive the Default or Pro Rata Payment and the Default Dollars for Benefits Payment, SA ¶¶ 70, 71, and all class members will have the opportunity to submit a claim for higher amounts from the Special Harms Common Fund and for a higher Dollars for Benefits Payment, such that class members with higher substantiated damages will get a higher recovery, *id.* ¶¶ 71(ii), 73.

Second, the Settlement Agreement authorizes Class Counsel to apply for an incentive award for the Class Representative of up to $15,000.  *Id.* ¶ 115.  The Court will ultimately determine whether the representative is entitled to such an award and the reasonableness of the amount requested.  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Plaintiff must provide sufficient evidence to allow the Court to evaluate this award "individually, using 'relevant

factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quotation omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Since the proposed incentive award here is not per se unreasonable and is comparable to the recovery for the average class member, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement Within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8 (quotation omitted). This requires the Court to evaluate the strength of Plaintiff's case.

The Settlement Agreement provides comprehensive injunctive relief. It makes nationally enforceable the important policy change achieved in *Goidel*: the classification of IUI and ICI as standard diagnostic medical benefits covered on equal terms for all commercial plan members. *See* SA ¶¶ 61, 64. This settlement ensures that Defendants will not roll back the changes they made to CPB 327 and provides enforceable relief to a national class. The Settlement Agreement also grants further relief by ensuring that individuals who have previously met the criteria set forth in CPB No. 327 for ART coverage will not be required to undergo additional cycles of artificial insemination before qualifying for ART coverage for subsequent pregnancy attempts and that the limited availability of a plan member's chosen sperm may be considered by Defendants' medical directors for the purpose of qualifying for IVF coverage. *Id.* ¶¶ 62–63; *see also* Tanner Decl. ¶ 54. These substantial benefits place this settlement well within the range of possible approval, particularly when weighed against the risks of further litigation.

A comparison of monetary relief in the Settlement Agreement to the expected recovery at trial also supports the reasonableness of the settlement at this stage. Plaintiff's counsel estimates, based on investigation of the average costs of IUI cycles and the estimated average number of cycles class members underwent, that the average cost of out-of-pocket medical expenses for class members totaled $10,869. Peterson-Fisher Decl. ¶¶ 53, 58–59. Given that some of these costs likely include testing and monitoring covered as diagnostic, Plaintiff's counsel estimates that the damages recoverable through this lawsuit are likely less than $10,869 for most class members. *Id.* ¶ 60. Based on Plaintiff's estimates of the class size, the Settlement Agreement therefore provides roughly a full recovery for class members. Although the total number of class members is uncertain, the Settlement Agreement provides for a minimum of $11,408 per class member if the total class is less than 175 people. *Id.* ¶ 61. If the class size is larger than 175 people, class members will receive a pro rata share of a $1,750,000 common fund, plus a minimum of $1,408 per class member in the Dollars for Benefits Payment. *Id.* ¶¶ 52–53, 61. Class members will have the opportunity to submit a claim for greater recovery from the Special Harms Common Fund and for a higher Dollars for Benefits Payment, such that the settlement will not undercompensate class members with higher substantiated damages. SA ¶¶ 71(ii), 73. Thus, unless the class size is much larger than expected, class members will receive close to a full monetary recovery.

Finally, Plaintiff argues that continuing the litigation would create significant risks and result in substantial delay, expenses, and potential harm to class members. Mot. at 28–29 (discussing specific risks, including challenges for damages and injunctive class at class certification stage). Given these risks and the fact that the settlement amount enables class members to receive nearly a full recovery, the Court finds that the settlement amount is reasonable and weighs in favor of granting preliminary approval.

//
//
//
//
//

### iv. Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the Settlement Agreement. *See* Mot. at 24–25. The Court finds no obvious deficiencies and therefore finds that this factor weighs in favor of preliminary approval.[3]

\*   \*   \*

Having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval. The proposed order should thoroughly address all of the topics set forth in the Northern District's Procedural Guidance for Class Action Settlements.[4] The parties should also review this Court's recent orders granting final approval of class action settlements and draft their proposed order accordingly.[5]

### IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

---

[3] At oral argument, the Court expressed concern with some language in the Settlement Agreement that suggested that the Special Master would determine who did and didn't qualify as a class member. As requested, the parties submitted an amended agreement, which clarifies that the Special Master's role is limited to resolving eligibility determinations by confirming if a claimant has provided sufficient information to verify their membership in the class. *See* Dkt. No. 138-1.

[4] *See* Procedural Guidance for Class Action Settlements, https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (updated Sept. 5, 2024).

[5] *See, e.g.*, *Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2025 WL 2998163 (N.D. Cal. Oct. 24, 2025); *Pardi v. Tricida, Inc.*, No. 21-CV-00076-HSG, 2025 WL 2988737 (N.D. Cal. Oct. 23, 2025); *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2025 WL 1266927 (N.D. Cal. May 1, 2025).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator, Atticus Administration, will send the class notice. SA ¶¶ 9, 85. Notice will be sent by direct mail. Peterson-Fisher Decl. ¶ 87. Notice will also be sent electronically via secure messages to Aetna members who utilize Aetna's secure online portal, and push notifications will be sent to those utilizing Aetna's mobile application. *Id.* ¶¶ 86–89. Ads will also be placed in publications whose target audience is the California LGBTQ+ community, including social media ad placements. *Id.* Class members will be able to submit their claims either online or by mail. *Id.* ¶ 89.

The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1047 (quotation omitted). Sending messages via Aetna's secure online portal is particularly well-calculated to provide notice by more effective electronic means while avoiding potential privacy concerns that could arise when sending messages about the sensitive health information involved in this case to a member's work email address. *See* Peterson-Fisher Decl. ¶ 88.

As to the substance of the notice, the parties have provided a copy of claim forms, *see* Dkt. No. 132-10, and the proposed class notices, *see* Dkt. No. 132-9, for all categories of class members. All of the notices explain the nature of the action and claims, define the class, and inform class members about what payment they will receive and how to opt out of or object to the Settlement Agreement. *See* Dkt. No. 132-9. Additionally, the proposed notices comply with the Northern District of California Procedural Guidance for Class Action Settlements, inform the

classes about the allocation of attorneys' fees, costs, and service award, and provide specific information regarding the date, time, and place of the final approval hearing.

To better enable class members to review the anticipated motion for attorneys' fees and the motion for any additional award to Plaintiff, Class Counsel shall include language in the notices: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiff's award; and (2) informing class members how to access the motion and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court finds that with these changes, the proposed notices provide the best notice practicable under the circumstances and fully comply with due process and Federal Rule of Civil Procedure 23.

## V. CONCLUSION

The Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement, Dkt. No. 132. The Court appoints Atticus Administration as the Settlement Administrator and Hon. Steven M. Gold (Ret.), of JAMS ADR as Special Master,[6] and directs them to comply with the terms of the Settlement Agreement.[7] The parties are further **DIRECTED** to implement the proposed class notice plan and procedure, described below. The parties are also **DIRECTED** to submit a stipulation and proposed order containing the same schedule, filled in with actual dates, by December 31, 2025.

| | |
|---|---|
| Defendants to provide necessary data to Administrator for Class Notice | 5 days after Preliminary Approval Order |
| Class Notice to be mailed | 14 days after Preliminary Approval Order |

---

[6] The Court incorporates by reference Judge Gold's fee schedule. *See* Dkt. No. 132-5, Appendix C.

[7] The Court may only appoint a special master after "the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455." Fed. R. Civ. P. 53(b)(3)(A). The Court **DIRECTS** Plaintiff to file this affidavit by December 31, 2025.

18

| Motion for Attorneys' Fees, Costs, Service Award due | May 25, 2026 |
|---|---|
| Response Deadline | 180 days after Class Notice is mailed |
| Special Harm submissions sent to Special Master where validity of claims for eligibility purposes is determined | 15 days after Response Deadline |
| Deadline to notify class members/potential class members of deficiencies | 30 days after Response Deadline |
| Last day for corrections to deficient submissions | 60 days after Response Deadline |
| Last day for Special Master to determine disputes re: validity of claims for eligibility purposes; preliminary Special Harms Allocations to parties/Administrator | 75 days from Response Deadline |
| Administrator to report final class size to the parties, deadline for Aetna to determine Dollars for Benefits Payments | 80 days from Response Deadline |
| Deadline for final Special Harms Allocation determinations, resolution of contested Dollars for Benefits Payments, redistribution payments to be determined | 95 days after Response Deadline |
| Final Approval Motion due | October 12, 2026 |
| Fairness Hearing | November 12, 2026 |
| Funding Date | 30 days after Effective Date |
| Payment date for settlement awards, Dollars for Benefits Payments, service award, attorneys' fees and costs | 10 business days after Funding Date |
| Payment date for Dollars for Benefits Payments | 60 days after the Effective Date |
| Check-cashing deadline | 180 days after initial issuance, at least 90 days for re-issued checks |

Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award is due on May 25, 2026. Plaintiff's Final Approval Motion is due on October 12, 2026. The Court will hold a Fairness Hearing on November 12, 2026, at 2:00 p.m., in Courtroom 2 on the 4th floor of the Oakland

Courthouse, 1301 Clay Street, Oakland, CA 94612.

**IT IS SO ORDERED.**

Dated: 12/17/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge